**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| AMERICAN BUSINESS FINANCIAL | ) | Case No. 05-10203 (MFW) |
| SERVICES, INC., et al., | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| GEORGE L. MILLER, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary No. A-06-50826 (MFW) |
| v. | ) | |
| | ) | |
| GREENWICH CAPITAL FINANCIAL | ) | |
| PRODUCTS, INC., OCWEN LOAN | ) | |
| SERVICING, LLC, WELLS FARGO | ) | |
| BANK, N.A., LAW DEBENTURE | ) | |
| TRUST COMPANY OF NEW YORK, | ) | |
| THE BERKSHIRE GROUP LP, | ) | |
| MICHAEL W. TRICKEY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**OPINION**[1]

Before the Court is the Motion of Ocwen Loan Servicing, LLC ("Ocwen") for dismissal of the above-captioned complaint against it.  For the reasons set forth below, the Court will grant the motion in part.

_____

[1] In this Opinion, the Court makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, which is made applicable to adversary proceedings under Rule 9014.  Fed. R. Bankr. P. 7052 (a) ("Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 . . . .").

I.    <u>BACKGROUND</u>

I.    <u>BACKGROUND</u>

American Business Financial Services, Inc. ("the Debtor")
and its subsidiaries operated as a financial services
organization that originated and serviced mortgage loans
primarily to credit-impaired borrowers.  The Debtor raised
capital by selling pools of these loans to special purpose
entities created for securitization (the "Securitization SPEs").
The Securitization SPEs sold the pools of loans to mortgage loan
trusts ("Securitization Trusts").  To raise cash for the purchase
of the loans, the Securitization Trusts sold notes or trust
certificates secured by the trust assets to investors.  In
exchange for the loans sold to the Securitization SPEs and
Trusts, the Debtor received cash and certificates of beneficial
interests in the Trusts that entitled it to receive certain cash
flows generated by the Trusts (the "I/O Strips").  The Debtor
also retained the right to service the pools of securitized loans
for a fee.

On January 21, 2005, the Debtor and certain of its direct
and indirect subsidiaries filed voluntary petitions for relief
under chapter 11 of the Bankruptcy Code.  On January 24, 2005,
the Debtor filed a Motion seeking debtor-in-possession financing,
pursuant to which Greenwich Capital Financial Products, Inc.
("Greenwich")[2] agreed to provide a senior, secured, super-

---

[2]  Clearwing Capital, LLC and Chrysalis Warehouse Funding,
LLC (collectively, "Clearwing") and The Patriot Group, LLC

priority $500 million credit facility (the "DIP Facility") to the Debtor.  The DIP Facility was secured by substantially all the Debtor's assets, including the I/O Strips which had a book value of $391 million.  On March 10, 2005, the Court entered a Final Order approving the DIP Loan.  Under the DIP Loan Agreement, the Debtor was required to sell the fee-producing future servicing rights.

Less than a month later, on April 4, 2005, the Debtor publicly announced that a reorganization was not possible.  On the same day, the Court approved the terms and conditions of a sale of the Debtor's fee-producing future servicing rights to Ocwen for approximately $21 million.  To consummate the sale, Ocwen and the Debtor executed a Servicing Rights Transfer Agreement (the "Transfer Agreement") on or about April 13, 2005, and a Servicing Agreement on May 1, 2005.

On May 13, 2005, Greenwich declared a default on the DIP Loan.  As a result, the bankruptcy case was converted to chapter 7 and George L. Miller was appointed trustee (the "Trustee").

On July 20, 2005, the Trustee and Greenwich entered into a Conditional Consent and Undertaking (the "Consent Agreement") whereby the Trustee agreed to sell certain whole loan assets of the Debtor (which were collateral of Greenwich) pursuant to

---

("Patriot") also had a $1 million participation in the DIP Loan. As part of a settlement, their participation interests were assigned to the chapter 7 Trustee.

3

section 363 of the Bankruptcy Code.  Under the Consent Agreement, the Trustee would receive $300,000 of the sale proceeds for the benefit of the Debtor's estates.  The Trustee, on behalf of the Debtor, agreed to release Greenwich from any and all claims.  On August 19, 2005, the Court approved the Consent Agreement and the sale of the whole loan assets to Credit-Based Asset Servicing and Securitization, LLC for $29,626,846.

Thereafter, Greenwich foreclosed on thirteen I/O Strips which it sold by public auction on June 28, 2006, pursuant to Article 9 of the Uniform Commercial Code.  The I/O Strips were sold to Ocwen[3] for $5.1 million.

On September 13, 2006, the Trustee filed a Complaint against Greenwich, Ocwen, Michael W. Trickey, The Berkshire Group, LP ("Berkshire"), and Wells Fargo Bank, N.A. and Law Debenture Trust Company of New York (collectively, the "Indenture Trustees"). The Trustee asserts the following twelve claims against Ocwen: (1) turnover; (2) fraudulent transfer avoidance and recovery under the Bankruptcy Code; (3) fraudulent transfer avoidance and recovery under state law; (4) request for an accounting; (5) breach of fiduciary duty; (6) aiding and abetting a breach of fiduciary duty; (7) breach of contract; (8) common law fraud; (9) civil conspiracy; (10) conversion; (11) objections to and subordination of its claims; and (12) declaratory relief.

---

[3] Prior to the sale, Ocwen was the servicer of the loans related to these I/O Strips under the Transfer Agreement.

4

A Motion to dismiss the Complaint was filed by Ocwen on November 10, 2006.  The Trustee opposes Ocwen's Motion.  Briefing on Ocwen's Motion is complete, and the matter is now ripe for decision.

II.  <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) & 157(b)(1).  Many of the counts are core matters pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (E), (H), (K), & (O).

III. <u>DISCUSSION</u>

Ocwen moves for dismissal of the claims against it under Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure, which are made applicable to adversary proceedings by Rules 7012(b) and 7009 of the Federal Rules of Bankruptcy Procedure, respectively.  Specifically, Ocwen argues that the Trustee's Complaint fails to state a claim for which relief can be granted and fails to plead fraud with particularity.

    A.  <u>Standard of Review</u>

      1.  <u>Rule 12(b)(6) Dismissal</u>

A Rule 12(b)(6) motion serves to test the sufficiency of the factual allegations in the plaintiff's complaint.  <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993).  To succeed on a

Rule 12(b)(6) motion to dismiss, the movant must establish "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); City of Phila. v. Lead Indus. Ass'n, Inc., 994 F.2d 112, 118 (3d Cir. 1993).  "In deciding a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff." Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004).  All reasonable inferences are drawn in favor of the plaintiff. Kost, 1 F.3d at 183.  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  See also Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000); In re OODC, LLC, 321 B.R. 128, 134 (Bankr. D. Del. 2005) ("Granting a motion to dismiss is a 'disfavored' practice.").

     2.   Rule 8(a)

Rule 8(a) of the Federal Rules of Civil Procedure requires only that a Complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  The statement must provide the defendant with fair notice of the claim filed against it. See, e.g., Williams v. Potter, 384 F. Supp. 2d 730, 733 (D. Del. 2005) ("Vague and conclusory factual allegations do not provide fair notice to a

defendant.") <u>citing</u> <u>United States v. City of Phila.</u>, 644 F.2d
187, 204 (3d Cir. 1980).

    3.  <u>Rule 9(b) Dismissal</u>

Where a complaint asserts a claim for fraud, however, the
standard for pleading is higher.  The complaint must set forth
facts with sufficient particularity to apprise the defendant of
the charges against him so that he may prepare an adequate
answer.  <u>In re Global Link Telecom Corp.</u>, 327 B.R. 711, 718
(Bankr. D. Del. 2005).  To provide fair notice the complainant
must go beyond merely parroting statutory language.  <u>Id.</u>  <u>See
also</u> <u>In re Circle Y of Yoakum, Texas</u>, 354 B.R. 349, 356 (Bankr.
D. Del. 2006).  A bankruptcy trustee, as a third party outsider
to the debtor's transactions, is generally afforded greater
liberality in pleading fraud.  <u>Global Link</u>, 327 B.R. at 717.

    B.  <u>Ocwen's Motion to Dismiss</u>

    1.  <u>Fraud</u>

Ocwen moves for dismissal of the fraud and aiding and
abetting fraud claims against it.  Ocwen argues that the Trustee
has not set forth a claim for fraud arising from their
contractual relationship and there were no factual allegations
provided in support of the fraud claim.  <u>Orix Credit Alliance,
Inc. v. R.E. Hable Co.</u>, 682 N.Y.S.2d 160, 161 (N.Y. App. Div.
1998) ("[A] viable claim of fraud concerning a contract must
allege misrepresentations of present facts (rather than merely of

future intent) that were collateral to the contract and which
induced the allegedly defrauded party to enter into the
contract."); J.E. Morgan Knitting Mills, Inc. v. Reeves Bros.,
Inc., 663 N.Y.S.2d 211, 211 (N.Y. App. Div. 1997) (dismissing a
fraud claim because "[t]he fraud alleged [was] based on the same
facts . . . underl[ying] the contract claim and [was] not
collateral to the contract and no damages [were] alleged that
would not be recoverable under a contract measure of damages").
See also Fed. R. Civ. P. 8(a) and 9(b).  The Trustee contends
that he has pled more than sufficient facts to support both
claims.

Although the parties agreed that New York law would govern
the Transfer Agreement,[4] the tort of fraud is governed by
Delaware law because the Court has a significant relationship to
the transaction, having approved the Transfer Agreement and the
sale of the I/O Strips.  See Travelers Indem. Co. v. Lake, 594
A.2d 38, 47-48 (Del. 1991) (applying the law of the jurisdiction
with the most "significant relationship" to the occurrence and
the parties).

To establish a claim for common law fraud in Delaware, a
party must plead: (1) a false representation or omission of fact
when there exists a duty of disclosure; (2) knowledge of the
falsity or reckless disregard of the truth; (3) intent to induce

---

[4]  Transfer Agreement at § 7.02.

the plaintiff's action or forbearance; (4) justifiable reliance; and (5) a resulting injury.  Abry Partners V, L.P. v. F & W Acquisition LLC, 891 A.2d 1032, 1050 (Del. Ch. 2006).

In the Complaint the Trustee alleges that Ocwen committed fraud by entering into the Transfer Agreement and assuming the servicing contracts when it never intended to pay the agreed price ($21 million).  (Complaint at ¶¶ 55-57.)  The Trustee further alleges that Ocwen conspired with Greenwich to chill the bidding for the future servicing rights and agreed to assist Greenwich in its conversion of the Debtor's property, including the I/O Strips.  (Id. at ¶ 56.)  Specifically, the Trustee alleges Ocwen failed to service the loans properly resulting in a decrease in the value (selling price) of the I/O Strips.  The Trustee also alleges that Ocwen chilled the bidding process for the thirteen I/O Strips by failing to release pertinent financial information to other potential bidders.  (Complaint at ¶¶ 54-57, 61, 80-89.)

The Trustee also alleges that Ocwen committed fraud through its Chief Investment Officer, Trickey.  (Complaint at ¶¶ 70-72.)  In his brief (but not the Complaint), the Trustee alleges that Trickey represented that he was an independent advisor monitoring Ocwen's servicing of the loan portfolios on the Debtor's behalf while Trickey actually acted on Ocwen's behalf to conceal Ocwen's

failure to service and collect the loans properly.  (Complaint at ¶¶ 73-79.)

Ocwen's alleged representation that it intended to pay the $21 million purchase price, if false, would suffice to satisfy the first element of a fraud claim.  Further, the allegations regarding Ocwen's actions to depress the value of the I/O Strips and chill the bidding could support a claim of fraud.

With respect to the allegations of fraud relating to Tricky's conflict, the Trustee does not allege that Ocwen made any misrepresentations to the Trustee but only that Greenwich and the Indenture Trustees made representations concerning Trickey's relationship to Ocwen.  (Complaint at ¶¶ 73-79.)  The Court could, however, conclude from the alleged facts that Ocwen knew of the falsity, Ocwen intended to induce action on the part of the Debtor, the Debtor relied on the representations, and an injury occurred (i.e., the value received for the I/O Strips at the auction was suppressed).  Here, the Trustee has done more than merely parrot the elements of common law fraud.  See, e.g., Fed. R. Civ. P. 9(b) (providing that a pleading must state fraud with particularity).

Accordingly, the Court concludes that the Trustee has provided Ocwen fair notice of the claim of fraud against it. Global Link, 327 B.R. at 718 (explaining that a complaint must set forth facts alleging fraud with sufficient particularity to

10

provide the defendant fair notice of the charges against him so that he may prepare an adequate answer).  Consequently, the Court will not dismiss the fraud claim against Ocwen.

 2.   <u>Aiding and Abetting Fraud</u>

The Trustee also alleges that Ocwen aided and abetted Greenwich in committing fraud upon the Court.  Specifically, he alleges that Greenwich obtained the DIP Facility through fraud upon the Court for the purpose of converting the Debtor's property.  (Complaint at ¶¶ 2, 23-31, 37-50.)  He further alleges that Ocwen aided Greenwich in obtaining ownership of the Debtor's property.

Under New York law, to establish a claim for aiding and abetting a fraud, a plaintiff must show: (1) fraud; (2) knowledge of the fraud; and (3) substantial assistance in the commission of the fraud.  <u>Gabriel Capital, L.P. v. NatWest Fin., Inc.</u>, 94 F. Supp. 2d 491, 500 (S.D.N.Y. 2000).

As discussed in the Companion Opinion relating to Greenwich's Motion to dismiss, the Court has concluded that the Trustee has failed to state a claim for common law fraud against Greenwich with sufficient particularity.  (<u>See</u> Greenwich Opinion at 9-13.)  Because the aiding and abetting claim against Ocwen is dependent on the fraud claim against Greenwich, the Court concludes that the claim must fail as well.  Consequently, the

11

Court will dismiss the aiding and abetting fraud claim against Ocwen.

### 3.    Breach of Fiduciary Duty

The Trustee's breach of fiduciary duty count against Ocwen alleges:

> 125.  Paragraphs 1 through 124 above are incorporated herein by reference, as though set forth in full.
> . . . .
> 128.  In its capacity as a loan servicer for property of the Debtor, Ocwen owed fiduciary duties to the Debtor, including duties of honesty, and fair dealing.

(Complaint at ¶¶ 125 and 128.)  The Trustee alleges that Ocwen failed to service the loan portfolios properly which resulted in a substantial devaluation of the I/O Strips.  (Complaint at ¶¶ 69-89.)  The Trustee also alleges that Ocwen withheld financial information pertaining to the I/O Strips from potential bidders thereby preventing the bidders from properly valuing the property.  (Id.)

Ocwen argues that the breach of fiduciary duty claim fails to state a claim for relief for two reasons:  (1) the I/O Strips were not property of the Debtor because during the relevant time period they were in the possession and under the control of the Indenture Trustees and Greenwich; and (2) under New York law, a servicer does not owe the holder of notes (i.e., residual interests) a fiduciary duty.

The Trustee responds that a fiduciary relationship existed because Ocwen had control of confidential financial information

12

concerning the mortgage loans and thus the I/O Strips.  He
further asserts that Ocwen abused the relationship and withheld
the information to devalue the I/O Strips and suppress bidding in
order to purchase the I/O Strips at a price of $5.1 million,
substantially lower than what the Trustee alleges was its true
value (in excess of $20 million).

The Court does not agree with Ocwen's first point, namely
that the I/O Strips were not property of the Debtor.  Ocwen cites
no authority for the asserted proposition that collateral in the
possession and control of indenture trustees and a secured
creditor is no longer property of the record owner.

The Court does not agree with the Trustee's contention,
however, that Ocwen owed the Debtor a fiduciary duty.  Because
the parties agreed that New York law governs the Servicing
Agreement, New York law applies to this claim.  (See Servicing
Agreement at § 10.15.)

"Under New York law, a fiduciary relationship exists when
one person 'is under a duty to act for or to give advice for the
benefit of another upon matters within the scope of the
relation'."  Reznor v. J. Artist Mgmt., Inc., 365 F. Supp. 2d
565, 574 (S.D.N.Y. 2005) citing Mandelblatt v. Devon Stores,
Inc., 521 N.Y.S.2d 672, 676 (N.Y. App. Div. 1987).  New York also
recognizes a fiduciary relationship "where one party reposes
confidence in another and reasonably relies on the other's

superior expertise or knowledge." WIT Holding Corp. v. Klein,
724 N.Y.S.2d 66, 68 (N.Y. App. Div. 2001).

None of the facts alleged in the Complaint indicate that
Ocwen was under "a duty to act for or to give advice for the
benefit of" the Debtor. Reznor, 365 F. Supp. 2d at 574. There
is also no allegation that the Debtor reposed special confidence
in Ocwen and reasonably relied on Ocwen's superior expertise or
knowledge. WIT Holding Corp., 724 N.Y.S.2d at 68. Without such
allegations, Ocwen as a loan servicer did not owe any fiduciary
duties to the Debtor, a note holder. Argonaut P'ship L.P. v.
Bankers Trustee Co., Nos. 96 CIV.1970 (LLS), 00 CIV. 4244 (LLS),
2001 WL 585519, at *3 (S.D.N.Y. May 30, 2001) (concluding that
the servicer of loans owed no fiduciary duties to the note
holders and the indenture trustees when the servicing agreement
indicated a conventional business relationship).

Consequently, the Court will dismiss the breach of fiduciary
duty count. The Court, however, will allow the Trustee to amend
the Complaint to add further facts to support this count. Fed.
R. Civ. P. 15(a) ("[A] party may amend the party's pleading only
by leave of court or by written consent of the adverse party; and
leave shall be freely given when justice so requires."); Circle
Y, 354 B.R. at 356 (dismissing fraud claims but granting leave to
amend to add specific facts concerning alleged fraud).

14

4.  <u>Aiding and Abetting a Breach of Fiduciary Duty</u>

Ocwen contends that the Trustee fails to state a claim for aiding and abetting a breach of fiduciary duty because the allegations in the count are conclusory.  The Court disagrees with Ocwen because sufficient relevant facts were incorporated into that count.  (Complaint  at ¶ 131.)

A claim of aiding and abetting a breach of fiduciary duty requires a factual statement of (1) the existence of a fiduciary relationship; (2) a breach of that duty; (3) knowing participation by the non-fiduciary; and (4) damages.  <u>McGowan v. Ferro</u>, 859 A.2d 1012, 1041 (Del. Ch. 2004).

The Trustee alleges in the Complaint that to the extent Ocwen has not breached its own fiduciary duty it, it has aided and abetted another Defendant, Greenwich, in breaching its fiduciary duty and damages have resulted.  (Complaint at ¶¶ 126, 132-33.)  The factual allegations in the Complaint also detail actions by Ocwen and Greenwich to assist each other in the conversion of the I/O Strips and cash flows related to those interests.  (Complaint at ¶¶ 43, 53-89.)

As discussed in the Greenwich Opinion, the Court concludes that the Trustee has stated a claim against Greenwich for breach of the fiduciary duty to dispose of the Debtor's collateral in a commercially reasonable manner.  (<u>See</u> Greenwich Opinion at 14-16.)  The Court concludes that the allegations detailing Ocwen's

participation in the breach of that duty are sufficient to withstand a motion to dismiss.  Consequently, the Court will not dismiss the aiding and abetting the breach of fiduciary duty claim against Ocwen.

     5.   <u>Fraudulent Transfer</u>

The Trustee alleges that Ocwen's purchase of the thirteen I/O Strips at the public auction is avoidable under both state and federal fraudulent transfer laws.  Ocwen moves for dismissal of these claims.

     a.   <u>Section 549(a) of the Bankruptcy Code</u>

Ocwen argues: (1) under the Final DIP Order approved by the Court, the Debtor expressly waived the right to bring a fraudulent conveyance action; and (2) Greenwich, as the DIP Lender, received the Court's authorization in the Final DIP Order to sell the I/O Strips at auction.  The Trustee counters: (1) the entire DIP Financing transaction was procured by fraud upon the Court and is null and void; and (2) even if the Final DIP Order is valid, that Order did not authorize Ocwen and Greenwich to conduct a sham auction which was commercially unreasonable.

The Court disagrees with Ocwen's first argument.  Ocwen was not a signatory to the Final DIP Order.  The Final DIP Order barred fraudulent transfer claims only against the DIP Lenders related to or arising from the DIP financing transaction.  (<u>See</u>

Final DIP Order at 42.)  Because Ocwen was not a signatory, Ocwen cannot assert the provisions of that Order as a defense.

Further, the Court agrees with the Trustee's second contention.  In entering the Final DIP Order, the Court did not authorize Greenwich (or anyone else) to commit fraud or to breach a fiduciary duty.  It specifically did not authorize Greenwich to conduct a commercially unreasonable sale of the collateral with impunity.  Accordingly, if the Trustee can prove that the auction was conducted fraudulently or was not commercially reasonable and resulted in the sale of the I/O Strips for less than reasonably equivalent value, the transfer is avoidable as unauthorized under section 549(a).

Accordingly, the Court concludes that the Trustee has stated a claim for relief under section 549(a) and the Court will not dismiss this count.

b.  <u>State Law</u>

Ocwen argues that the Court should dismiss the state law claim because the Debtor waived its avoidance rights under the Final DIP Order.  Ocwen argues that New York law does not recognize (as constructively fraudulent) transfers by secured lienholders (i.e., Greenwich) because satisfaction of an antecedent debt is fair consideration.  <u>See, e.g.</u>, <u>In re Sharp Int'l Corp.</u>, 403 F.3d 43, 54-55 (2d Cir. 2005); N.Y. Debt. & Cred. Law § 273 (McKinney 2001) ("Every conveyance made and every

17

obligation incurred by a person who is or will be thereby
rendered insolvent is fraudulent as to creditors without regard
to his actual intent if the conveyance is made or the obligation
is incurred without a fair consideration.").

The Trustee argues that the entire DIP Financing transaction
was null and void.  For the reasons discussed above, the Court
concludes that the waiver provision in the Final DIP Order does
not apply to Ocwen.  Additionally, Ocwen (the buyer of the I/O
Strips) has cited no authority for the proposition that it may
assert defenses that Greenwich (the seller) may assert.
Consequently, the Court concludes that Ocwen's purchase of the
I/O Strips was unrelated to any antecedent debt the Debtor had
with Greenwich.

Ocwen further contends that the Trustee has not stated a
claim for constructive or intentional fraudulent transfer because
the Trustee has not pled fraud with particularity.  N.Y. Debt. &
Cred. Law § 276 (McKinney 2001) ("Every conveyance made and every
obligation incurred with actual intent, as distinguished from
intent presumed in law, to hinder, delay, or defraud either
present or future creditors, is fraudulent as to both present and
future creditors."); Sharp Int'l Corp., 403 F.3d at 56 ("[A]ctual
intent to hinder, delay, or defraud . . . must be pled with
specificity, as required by Fed. R. Civ. P. 9(b)." (internal
quotations and citations omitted)).

18

The Trustee counters by simply arguing that it has stated a claim for fraudulent conveyance under New York and Delaware law. See N.Y. Debt. & Cred. Law §§ 273 & 276 (detailing the requirements of a constructive and intentional fraudulent conveyance); Del Code Ann. tit. 6 §§ 1304 & 1305 (detailing Delaware's fraudulent conveyance law).

The Court concludes that the Trustee's allegations that the auction of the I/O Strips was a sham and not commercially reasonable resulting in the receipt of less than reasonably equivalent value will suffice to state a claim for constructive fraudulent transfer.  N.Y. Debt. & Cred. Law §§ 273.  For the reasons given in the Greenwich Opinion, however, the Court concludes that the Trustee has failed to state a claim for an intentionally fraudulent conveyance with particularity. (Greenwich Opinion at 19-23.)   See also N.Y. Debt. & Cred. Law § 276; Del Code Ann. tit. 6, §§ 1304 & 1305.

Accordingly, the Court will dismiss the intentional fraudulent transfer claims under state law against Ocwen for failure to state a claim with sufficient particularity.  The Court will allow the constructive fraudulent transfer claim to remain and will also allow the Trustee to amend the Complaint with respect to the intentional fraud claim.  Fed. R. Civ. P. 15(a).

19

6.    <u>Breach of Contract</u>

The Trustee alleges that Ocwen breached the Transfer and Servicing Agreements by, <u>inter alia</u>, improperly transferring collected prepayment penalties to Greenwich.  Ocwen argues that the Trustee failed to state a claim for relief because (1) the Trustee does not allege that he performed his obligations under the Transfer Agreement and (2) neither the Trustee nor the Debtor were parties or third-party beneficiaries to the Servicing Agreement.  <u>See, e.g.</u>, <u>TeeVee Toons, Inc. v. Gerhard Schubert GmbH</u>, No. 00 Civ. 5189 (RCC), 2006 WL 2463537, at *3 (S.D.N.Y. Aug. 23, 2006) ("As a general rule, absent status as an intended third-party beneficiary, one may sue on a contract only if one is a party to that contract.").

a.    <u>Transfer Agreement</u>

The Trustee disagrees that he must plead a breach of contract claim in accordance with New York law and not the procedural rules of a federal court sitting in Delaware.  The Trustee further contends that he has alleged performance of the contract.

While the Transfer Agreement is governed and construed in accordance with New York law,[5] the pleading requirements are governed by the procedural rules of a federal court sitting in Delaware.  <u>See, e.g.</u>, <u>Am. Energy Techs., Inc. v. Colley & McCoy</u>

---

[5]    (Transfer Agreement § 7.02.)

20

Co., No. CIV. A. 98-398 MMS, 1999 WL 301648, at *2 (D. Del. Apr. 15, 1999) ("Choice of law provisions in contracts are generally understood to incorporate only substantive law, not procedural law . . . ."); Process and Storage Vessels, Inc. v. Tank Serv., Inc., 541 F. Supp. 725, 730 n.5 (D. Del. 1982) ("Unequivocal procedural issues, like pleading requirements, service of process, and trial administration, generally continue to be governed by the law of the forum.").

Neither party has cited a case nor has the Court found a case of a federal court sitting in Delaware in which the court stated the minimum pleading requirements for a breach of contract claim under New York law sufficient to withstand a Rule 12(b)(6) motion to dismiss. A federal court sitting in Pennsylvania, however, has required the pleading of the elements provided by New York law. See, e.g., Glaberman Assocs., Inc. v. J. Kinderman & Sons, No. CIV. A. 98-3711, 1999 WL 98588, at *3 (E.D. Pa. Feb. 25, 1999) citing Universal Marine Med. Supply, Inc. v. Lovecchio, 8 F. Supp. 2d 214, 221 (E.D.N.Y. 1998) (stating the four elements of a breach of contract claim under New York law).

Accordingly, the Court concludes that the Trustee was required to plead performance on his part. Udell v. Berkshire Life Ins. Co. of Am., No. CV032721 SJFKAM, 2005 WL 1243497, at *5 (E.D.N.Y. May 25, 2005) (noting that in New York the statement of a claim for breach of contract must allege (1) the existence of a

contract; (2) the plaintiff performed his obligations under the contract; (3) the defendant failed to perform; and (4) damages flowing from the breach).

The Trustee argues that he pled performance in paragraph 55 of the Complaint.  That paragraph states:  "On or about April 13, 2005, Ocwen entered into an agreement to purchase the Future Servicing Rights (the "Servicing Rights and Transfer Agreement") and assumed the servicing contracts with most of the Securitization Trusts."  (Complaint at ¶ 55.)  The Court cannot see any allegation that the Debtor or the Trustee performed their obligations under the contract from the language in this paragraph.

Therefore, the Court concludes that the Trustee has failed to state a claim for breach of the Transfer Agreement. Consequently, the Court will dismiss the claim but will grant the Trustee leave to amend to more specifically allege performance by the Debtor or the Trustee.  Fed. R. Civ. P. 15(a).

b.    Servicing Agreement

The Trustee alleges that Ocwen breached the Servicing Agreement.  (Complaint at ¶ 135.)  Ocwen seeks dismissal on the basis that neither the Debtor or the Trustee are parties or third party beneficiaries to the Servicing Agreement.

The Trustee expressly alleges in paragraph 63 of the Complaint that Ocwen and the Securitization Trusts were parties

22

to the Servicing Agreement after Ocwen entered into the Transfer
Agreement.  (Complaint at ¶ 63.)  (See also Transfer Agreement at
§ 2.01 (providing that the Debtor was transferring, assigning,
and conveying the servicing rights to Ocwen).)  Because the
Debtor and the Trustee were no longer parties to the Servicing
Agreement after the assignment, they only have standing to assert
a breach of contract if they are third party beneficiaries.
TeeVee Toons, 2006 WL 2463537, at *3.  In this regard, section
10.13 of the Servicing Agreement provides: "The parties agree
that each of the Owner Trustee, the Unaffiliated Seller and the
Note Insurer is intended and shall have all rights of a third-
party beneficiary of this Agreement."  (Servicing Agreement at §
10.13.)  Appendix I to the Agreement defined "Unaffiliated
Seller" to include "ABFS 1999-1, Inc., a Delaware Corporation."
(Service Agreement, Appendix I.)  ABFS 1999-1, Inc., is a wholly
owned subsidiary of the Debtor.

Ocwen responds that the Trustee cannot assert third party
beneficiary rights in this case because (1) the Trustee asserts
rights as the owner of the I/O Strips but it was not intended
that the Unaffiliated Seller (the Debtor's subsidiary) would have
any claim for diminution in value of the I/O Strips; and (2) a
parent does not automatically stand in the shoes of its
subsidiary.  See, e.g., Solutia Inc. v. FMC Corp., 385 F. Supp.
2d 324, 337 (S.D.N.Y. 2005) (concluding that "mere intent to

23

confer third-party rights is insufficient; there must be a
benefit that is explicit and direct"); <u>United Int'l Holdings,
Inc. v. Wharf (Holdings) Ltd.</u>, 988 F. Supp. 367, 372 (S.D.N.Y.
1997) (stating that "a more productive test for third-party
beneficiary status would be whether benefits flowed directly to
the [parent] from performance of the contract.  Where performance
is to be rendered directly to a third party under . . . an
agreement, that third party is conclusively deemed an intended
beneficiary of the agreement.")

The Court agrees with Ocwen.  The Trustee has not asserted
that the wholly owned subsidiary of the Debtor (as a third-party
beneficiary) had any right to sue Ocwen for diminution in value
of the I/O Strips owned by its parent.  Additionally, the Trustee
has not alleged any facts to support the Debtor's standing to
assert the rights of its wholly owned subsidiary.

Accordingly, the Court concludes that the Trustee has failed
to state a claim for breach of contract against Ocwen.
Consequently, the Court will dismiss this count in the Complaint
but will allow the Trustee to amend.  Fed. R. Civ. P. 15(a).

     7.   <u>Turnover</u>

The Trustee also seeks turnover of the thirteen I/O Strips
allegedly converted and the "holdback, prepayment penalties and
other sums wrongfully paid to or retained by . . . Ocwen."
(Complaint at ¶¶ 101, 103.)  Ocwen moves for dismissal of the

24

turnover claim on the same basis as Greenwich did, namely, that it is premature. See, e.g., In re Student Fin. Corp., 335 B.R. 539, 554 (D. Del. 2005) (concluding that a statement of a turnover claim under section 542 requires an allegation that the property has already been avoided or is the undisputed property of the debtor); In re Hechinger Inv. Co. of Del., Inc., 282 B.R. 149, 161 (Bankr. D. Del. 2002.)

For the reasons set forth in the Greenwich Opinion, the Court concludes that the turnover claim is premature. (See Greenwich Opinion at 24-25.) Consequently, the Court will dismiss the turnover claim for failure to state a claim for which relief can be granted.

8.   Conversion

Ocwen contends that it did not convert the thirteen I/O Strips because it rightfully purchased them at auction and the Trustee has not alleged that he demanded the return of the property.

Both New York and Delaware law have similar elements for a conversion cause of action. Compare In re Ticketplanet.com, 313 B.R. 46, 69 (Bankr. S.D.N.Y. 2004) ("Under New York law, conversion is any unauthorized exercise of control by one who is not the owner which interferes with a superior possessory right of another in property.") with Arnold v. Soc'y for Sav. Bancorp, Inc., 678 A.2d 533, 536 (Del. 1996) ("Conversion is an act of

25

dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it.").

Ocwen argues that the sale of the I/O Strips resulted from Greenwich's valid foreclosure on the collateral and was authorized by the Court.  See, e.g., Ticketplanet.com, 313 B.R. at 69 (holding that a foreclosure on property of the debtor which was authorized by the court pursuant to a lift stay order was not a conversion).  The Trustee alleges, however, that the sale was actually a "sham" and wrongful.  If these allegations are proven, the Court concludes that Ocwen's purchase may have been a conversion.

Nevertheless, the Trustee fails to state in the Complaint that a demand was made for the return of the property.  Schloss v. Danka Bus. Sys. PLC, No. 99 Civ. 0817 (DC), 2000 WL 282791, at *7 (S.D.N.Y. Mar. 16, 2000) (concluding that "to maintain an action for conversion, plaintiff must allege that a demand for the return of property was made and that a refusal to comply with this demand followed.").

Therefore, the Court concludes that the Trustee has failed to state a claim for conversion.  Consequently, the Court will dismiss the conversion claim against Ocwen but will allow the Trustee to amend.  Fed. R. Civ. P. 15(a).

9.   <u>Civil Conspiracy</u>

Ocwen argues that the Court must dismiss the civil conspiracy claim because no such tort exists under New York law. The Trustee responds that he has stated a claim for civil conspiracy under both Delaware and New York law.  <u>Compare Nicolet, Inc. v. Nutt</u>, 525 A.2d 146, 149-50 (Del. 1987) (stating that the elements of a conspiracy claim under Delaware law are: "(1) [a] confederation or combination of two or more persons; (2) [a]n unlawful act done in furtherance of the conspiracy; and (3) [a]ctual damage." ) <u>with Alexander & Alexander of New York, Inc. v. Fritzen</u>, 68 N.Y.2d 968, 969 (N.Y. 1986) (concluding that "[a]llegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort.").

The Court disagrees with the Trustee.  Both New York and Delaware recognize a cause of action for conspiracy, but it does not stand alone and requires proof of an underlying wrong or tort.  <u>See, e.g.</u>, <u>Satin v. Satin</u>, 414 N.Y.S.2d 570, 570 (N.Y. App. Div. 1979) ("There is no tort of civil conspiracy in and of itself.  There must first be pleaded specific wrongful acts which might constitute an independent tort."); <u>Ramunno v. Cawley</u>, 705 A.2d 1029, 1039 (Del. Super. Ct. 1998) (same).  Moreover, a plaintiff must plead civil conspiracy with particularity. <u>Kalmanovitz v. G. Heileman Brewing Co.</u>, 595 F. Supp. 1385,

27

1401 (D. Del. 1984) ("Only allegations of conspiracy which are
particularized, such as those addressing the period of the
conspiracy, the object of the conspiracy, and certain actions of
the alleged conspirators taken to achieve that purpose, will be
deemed sufficient.").

Here, the Trustee pleads as follows under the conspiracy
count:

> 141. Paragraphs 1 through 140 are incorporated herein
> by reference, as though set forth in full.
>
> 142. The Defendants conspired with each other, and
> others, in an effort to perpetrate, facilitate, and aid
> and abet the frauds and other wrongs alleged herein.
>
> 143. The Defendants took substantial overt acts, as
> aforesaid, in furtherance of the conspiracy alleged
> herein and are liable for the damage and harm to the
> Debtor.
>
> 144. As a result of the Defendant's conspiracy, the
> Debtor suffered the damages previously alleged.

(Complaint at ¶¶ 141-44.) The plaintiff in the Kalmanovitz case
pled civil conspiracy in a fashion similar to the Trustee's
allegations in this case. The District Court in Kalmanovitz held
that the pleading was insufficient to state a claim for civil
conspiracy. 595 F. Supp. at 1400-01.

The Court concludes that because the object and time period
of the conspiracy and the conduct of the conspirators are not
pled with particularity, the Trustee has failed to state a claim
for civil conspiracy. Consequently, the Court will dismiss the
conspiracy count but will grant the Trustee leave to amend to

state the claim with particularity.  Fed. R. Civ. P. 15(a).

    10.  <u>Equitable Subordination and Objections</u>

    Ocwen argues that the equitable subordination count fails to
state a claim for relief because it does not allege that Ocwen
possesses an "allowed claim."  <u>See</u> 11 U.S.C. § 510(c) (providing
for equitable subordination of an "allowed claim").  Ocwen also
seeks dismissal of the Trustee's request that the Court "declare
null and void the sale and transfer of the 13 I/O Strips" because
the Trustee identifies no basis for the unwinding of the past
transaction in this count.  (Complaint at ¶ 150.)

    The Court disagrees with Ocwen in part and concludes that
the Trustee has stated a claim for equitable subordination.
Ocwen has cited no decisional authority requiring that a claim
must be allowed before an equitable subordination action may be
commenced.  Rather, in many instances the claim is disputed as
well.  For equitable subordination to be granted there need only
be proof of inequitable conduct and a resulting injury to
creditors or unfair advantage to the claimant.  <u>See, e.g.</u>,
<u>Citicorp Venture Capital, Ltd. v. Comm. Of Creditors Holding</u>
<u>Unsecured</u>, 160 F.3d 982, 986-87 (3d Cir. 1998) (discussing the
required proof for an equitable subordination claim).  Further,
the Trustee has alleged throughout the Complaint that Ocwen
engaged in inequitable conduct, such as failure to service the
loan portfolios properly and breach of contract. (Complaint at ¶¶

53-89.)  Accordingly, the Court concludes that the Trustee has
stated a claim for equitable subordination.

The Court agrees with Ocwen, however, that the Trustee's
request to declare the sale of the thirteen I/O Strips null and
void fails to state a claim for relief under this count because
the requested remedy is not supported by an underlying theory of
liability, including equitable subordination.  The Trustee did
not respond to Ocwen's argument and the Court concludes that it
must dismiss this as a claim for relief unsupported by legal
authority.  See, e.g., Rodriquez v. Stevenson, 243 F. Supp. 2d
58, 70 (D. Del. 2002) (dismissing claim because there was no
"legal basis for the relief requested").

Consequently, the Court will not dismiss the equitable
subordination claim itself, but will dismiss the request to
declare the sale of the I/O Strips a nullity under this count.

11.  Accounting

Ocwen argues that the accounting claim for relief fails
because there was no fiduciary or trust relationship between
Ocwen and the Trustee or the Debtor and the Trustee cannot
establish that money damages are not a sufficient remedy.  Krause
v. Forex Exch. Mkt., Inc., No. 05-601854, 2006 WL 2271274, at *4
(N.Y. Sup. Ct. Mar. 1, 2006) (slip opinion) (holding that "there
is no basis for an accounting . . . absent a fiduciary duty or an
inadequate remedy at law."); Bezuszka v. L.A. Models, Inc., No.

30

04 Civ. 7703 (N.B.), 2006 WL 770526, at *17 (S.D.N.Y. Mar. 24, 2006) ("Under . . . New York [law]. . . , a plaintiff seeking an accounting, which is an equitable remedy, must allege both a fiduciary relationship between the plaintiff and defendant and a breach of that fiduciary duty by the defendant."); S.O. Textiles Co., Inc. v. A & E Prods. Group, 18 F. Supp. 2d 232, 242 (E.D.N.Y. 1998) (concluding that a purely commercial relationship does not give rise to a fiduciary duty). See also Bouley v. Bouley, 797 N.Y.S.2d 221, 223-24 (N.Y. App. Div. 2005) (concluding that there was no fiduciary relationship and the plaintiff was only entitled to money damages because the "defendant [held no] money or property with respect to which he owes a duty of accounting to plaintiff.").

The Trustee responds that the duty to account stems from Ocwen's alleged breach of contract, breach of fiduciary duties, and participation in a civil conspiracy to convert the Debtor's property.

The Court agrees with Ocwen.  Absent an express contractual provision, a fiduciary relationship, or a valid claim for conversion requiring Ocwen to account to the Trustee or Debtors, Ocwen is not required to account.  As discussed above, the Trustee has failed to state a claim against Ocwen for breach of fiduciary duty and conversion.  Nor has the Trustee cited any specific contractual obligation to provide an accounting.

Accordingly, the Court concludes that the Trustee has failed to
state a claim for an accounting.  Consequently, the Court will
dismiss the accounting claim against Ocwen, but will allow the
Trustee to amend his Complaint.  Fed. R. Civ. P. 15(a).

## 12.  Declaratory Relief

Ocwen contends that the Court must dismiss the claim for
declaratory relief as duplicative of the relief sought in the
other counts.  Sofi Classic S.A. de C.V. v. Hurowitz, 444 F.
Supp. 2d 231, 249 (S.D.N.Y. 2006) (dismissing claim for
declaratory relief after concluding that "the claim [was]
duplicative in that it [sought] no relief that is not implicitly
sought in the other causes of action.").

The Court agrees with Ocwen in part.  The Court will dismiss
the request for declaratory relief related to the claims against
Ocwen which are dismissed by the Court, but will leave the count
as to the claims which remain.  At this stage of the proceedings,
the Court cannot determine if adequate relief can be afforded to
the Trustee on the remaining counts without granting additional
declaratory relief.

## 13.  Consequential and Punitive Damages

Ocwen argues that the Transfer Agreement bars the alleged
claim for $70 million in consequential and punitive damages.
Section 7.04 of the Transfer Agreement provides:

> Notwithstanding anything contained herein to the
> contrary, the parties agree that none of the parties

shall be liable to any other party for any special,
consequential or punitive damages whatsoever, whether
in contract, tort (including negligence and strict
liability), or any other legal or equitable principle,
provided, however, that such limitation shall not be
applicable with respect to third party claims made
against a party.

(Transfer Agreement § 7.04 (emphasis added).)  Ocwen also asserts

that the Trustee fails to allege a high degree of moral turpitude

to justify a punitive damage award.  Walker v. Sheldon, 179

N.E.2d 497, 499 (N.Y. 1961) (noting that punitive damages were

historically awarded when "the defendant's conduct evinced a high

degree of moral turpitude and demonstrated such wanton dishonesty

as to imply a criminal indifference to civil obligations.").

The Trustee responds that the determination of damages

requires a fact-intensive inquiry which is not appropriate at the

motion to dismiss stage.  See, e.g., Appliance Giant, Inc. v.

Columbia 90 Assocs., LLC, 779 N.Y.S.2d 611, 613 (N.Y. App. Div.

2004) ("Damages for breach of contract include general (or

direct) damages, which compensate for the value of the promised

performance, and consequential damages, which are indirect and

compensate for additional losses incurred as a result of the

breach . . . .");  Niagara Mohawk Power Corp. v. Stone & Webster

Eng'g Corp., No. 88-CV-819, 1992 WL 121726, at 28-29 (N.D.N.Y.

May 23,1992) (concluding that whether damages were direct or

consequential was a factual question and the court could not

decide the issue until trial).  The Trustee further asserts that

public policy bars any limitation of liability for intentional torts.  <u>Kalisch-Jarcho, Inc. v. City of New York</u>, 58 N.Y.2d 377, 385 (N.Y. 1983).

The Court agrees with the Trustee.  Although the Transfer Agreement included an exculpatory clause, the clause cannot preclude an award of damages for any intentional torts alleged against Ocwen.  <u>Kalisch-Jarcho</u>, 58 N.Y.2d at 385.  Further, the Court concludes that a classification of an alleged damage as direct or indirect or the determination of the degree of moral turpitude required to sustain a punitive damage award is not appropriate at this stage.  <u>Niagara Mohawk Power</u>, 1992 WL 121726, at 28-29.


IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that Ocwen's Motion to Dismiss will be granted in part.

An appropriate Order is attached.



Dated: February 13, 2007          BY THE COURT:


Mary F. Walrath
United States Bankruptcy Judge


34