**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

IN RE:                              ) Chapter 7
                                    )
AMERICAN BUSINESS FINANCIAL         ) Case No. 05-10203 (MFW)
SERVICES, INC., et al.,             )
                                    ) (Jointly Administered)
              Debtors.              )
_____ )
                                    )
GEORGE L. MILLER, TRUSTEE,          )
                                    )
              Plaintiff,            )
                                    ) Adversary No. A-06-50826 (MFW)
         v.                         )
                                    )
GREENWICH CAPITAL FINANCIAL         )
PRODUCTS, INC., OCWEN LOAN          )
SERVICING, LLC, WELLS FARGO         )
BANK, N.A., LAW DEBENTURE           )
TRUST COMPANY OF NEW YORK,          )
THE BERKSHIRE GROUP LP,             )
MICHAEL W. TRICKEY,                 )
                                    )
              Defendants.           )
_____ )

**OPINION**[1]

Before the Court are the Motion of Michael W. Trickey ("Trickey") and the Berkshire Group, LP ("Berkshire") for dismissal of the above captioned complaint against them.  For the reasons set forth below, the Court will grant the motion in part.

---

[1] In this Opinion, the Court makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, which is made applicable to adversary proceedings under Rule 9014.  Fed. R. Bankr. P. 7052 (a) ("Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 . . . .").

I.    <u>BACKGROUND</u>

American Business Financial Services, Inc. ("the Debtor")
and its subsidiaries operated as a financial services
organization that originated and serviced mortgage loans
primarily to credit-impaired borrowers.  The Debtor raised
capital by selling pools of these loans to special purpose
entities created for securitization (the "Securitization SPEs").
The Securitization SPEs sold pools of loans to mortgage loan
trusts ("Securitization Trusts").  To raise cash for the purchase
of the loans, the Securitization Trusts sold notes or trust
certificates secured by the trust assets to investors.  In
exchange for the loans sold to the Securitization SPEs and
Trusts, the Debtor received cash and certificates of beneficial
interests in the Trusts that entitled it to receive certain cash
flows generated by the Trusts (the "I/O Strips").  The Debtor
also retained the right to service the pools of securitized loans
for a fee.

On January 21, 2005, the Debtor and certain of its direct
and indirect subsidiaries filed voluntary petitions for relief
under chapter 11 of the Bankruptcy Code.  On January 24, 2005,
the Debtor filed a Motion seeking debtor-in-possession financing,
pursuant to which Greenwich Capital Financial Products, Inc.

("Greenwich")[2] agreed to provide a senior, secured, super-
priority $500 million credit facility (the "DIP Facility") to the
Debtor.  The DIP Facility was secured by substantially all the
Debtor's assets, including the I/O Strips which had a book value
of $391 million.  On March 10, 2005, the Court entered a Final
Order approving the DIP Loan.  Under the DIP Loan Agreement, the
Debtor was required to sell the fee-producing future servicing
rights.

    Less than a month later, on April 4, 2005, the Debtor
publicly announced that a reorganization was not possible.  On
the same day, the Court approved the terms and conditions of a
sale of the Debtor's fee-producing future servicing rights to
Ocwen Loan Servicing, LLC ("Ocwen") for approximately $21
million.  To consummate the sale, Ocwen and the Debtor executed a
Servicing Rights Transfer Agreement (the "Transfer Agreement") on
or about April 13, 2005, and a Servicing Agreement on May 1,
2005.

    On May 13, 2005, Greenwich declared a default on the DIP
Loan.  As a result, the bankruptcy case was converted to chapter
7 and George L. Miller was appointed trustee (the "Trustee").

---

    [2]  Clearwing Capital, LLC and Chrysalis Warehouse Funding,
LLC (collectively, "Clearwing") and The Patriot Group, LLC
("Patriot") also had a $1 million participation in the DIP Loan.
As part of a settlement, their participation interests were
assigned to the chapter 7 Trustee.

On July 20, 2005, the Trustee and Greenwich entered into a Conditional Consent and Undertaking (the "Consent Agreement") whereby the Trustee agreed to sell certain whole loan assets of the Debtor (which were collateral of Greenwich) pursuant to section 363 of the Bankruptcy Code.  Under the Consent Agreement, the Trustee would receive $300,000 of the sale proceeds for the benefit of the Debtor's estates.  The Trustee, on behalf of the Debtor, agreed to release Greenwich from any and all claims.  On August 19, 2005, the Court approved the Consent Agreement and the sale of the whole loan assets to Credit-Based Asset Servicing and Securitization, LLC for $29,626,846.

Thereafter, Greenwich foreclosed on thirteen I/O Strips which it sold by public auction on June 28, 2006, pursuant to Article 9 of the Uniform Commercial Code.  The I/O Strips were sold to Ocwen[3] for $5.1 million.

On September 13, 2006, the Trustee filed a Complaint against Greenwich, Ocwen, Trickey, Berkshire, and the Indenture Trustees.[4]  The Trustee asserts the following claims against Berkshire and Trickey: (1) fraudulent transfer avoidance and recovery under the Bankruptcy Code; (2) fraudulent transfer avoidance and recovery under state law; (3) breach of fiduciary

---

[3]  Prior to the sale, Ocwen was the servicer of the I/O Strips under the Transfer Agreement.

[4]  The Indenture Trustees are Wells Fargo Bank, N.A. and Law Debenture Trust Company of New York.

4

duty; (4) aiding and abetting a breach of fiduciary duty; (5) common law fraud; (6) civil conspiracy; (7) objections to and subordination of their claims; and (8) declaratory relief.

A Motion to dismiss the Complaint was filed by Berkshire and Trickey on November 17, 2006.  The Trustee opposes the Motion. Briefing on the Motion is complete.  The matter is now ripe for decision.


II.  <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) & 157(b)(1).  Many of the counts are core matters pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (E), (H), (K), & (O).


III. <u>DISCUSSION</u>

Berkshire and Trickey move for dismissal of the claims against them under Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure, which are made applicable to adversary proceedings by Rules 7012(b) and 7009 of the Federal Rules of Bankruptcy Procedure, respectively.  Specifically, they argue that the Trustee's Complaint fails to state a claim for which relief can be granted and fails to plead fraud with particularity.

A.   <u>Standard of Review</u>

    1.   <u>Rule 12(b)(6) Dismissal</u>

A Rule 12(b)(6) motion serves to test the sufficiency of the factual allegations in the plaintiff's complaint.  <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993).  To succeed on a Rule 12(b)(6) motion to dismiss, the movant must establish "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>City of Phila. v. Lead Indus. Ass'n, Inc.</u>, 994 F.2d 112, 118 (3d Cir. 1993).  "In deciding a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff."  <u>Carino v. Stefan</u>, 376 F.3d 156, 159 (3d Cir. 2004).  All reasonable inferences are drawn in favor of the plaintiff.  <u>Kost</u>, 1 F.3d at 183.  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  <u>See also</u> <u>Maio v. Aetna, Inc.</u>, 221 F.3d 472, 482 (3d Cir. 2000); <u>In re OODC, LLC</u>, 321 B.R. 128, 134 (Bankr. D. Del. 2005) ("Granting a motion to dismiss is a 'disfavored' practice.").

    2.   <u>Rule 8(a)</u>

Rule 8(a) of the Federal Rules of Civil Procedure requires only that a complaint contain a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R.

Civ. P. 8(a).  The statement must provide the defendant with fair

notice of the claim filed against it.  <u>See, e.g.</u>, <u>Williams v.

Potter</u>, 384 F. Supp. 2d 730, 733 (D. Del. 2005) ("Vague and

conclusory factual allegations do not provide fair notice to a

defendant.") <u>citing</u> <u>United States v. City of Phila.</u>, 644 F.2d

187, 204 (3d Cir. 1980).

### 3.    Rule 9(b) Dismissal

Where a complaint asserts a claim for fraud, however, the

standard for pleading is higher.  The complaint must set forth

facts with sufficient particularity to apprise the defendant of

the charges against him so that he may prepare an adequate

answer.  <u>In re Global Link Telecom Corp.</u>, 327 B.R. 711, 718

(Bankr. D. Del. 2005).  To provide fair notice the complainant

must go beyond merely parroting statutory language.  <u>Id.</u>  <u>See

also</u> <u>In re Circle Y of Yoakum, Texas</u>, 354 B.R. 349, 356 (Bankr.

D. Del. 2006).  A bankruptcy trustee, as a third party outsider

to the debtor's transactions, is generally afforded greater

liberality in pleading fraud.  <u>Global Link</u>, 327 B.R. at 717.

### B.    Berkshire and Trickey's Motion to Dismiss

#### 1.    Breach of Fiduciary Duty

Berkshire and Trickey contend that the Trustee fails to

state a claim for breach of fiduciary duty against them because

(1) the Trustee has not pled that any fiduciary relationship

existed between them and the Trustee; and (2) the Trustee has not

pled causation and damages.

The Trustee responds that he has alleged sufficient facts to

state a claim against Berkshire and Trickey for breach of

fiduciary duty.  The Trustee alleges the following facts in the

Complaint:

> 72.  In reliance upon the representations of the
> Indenture Trustees and Greenwich, the Trustee took
> Trickey into his confidence, had Trickey represent and
> act on the Trustee's behalf in dealing with Ocwen to
> resolve the Trustee's concerns with respect to the
> proper servicing of the Mortgage Loans and I/O Strips,
> and paid Berkshire more than $68,000 (of a $175,000
> bill) from the limited available funds of the estate.
>
> 73.  At all times material hereto, the Trustee was
> misled by the Indenture Trustees, Greenwich, Berkshire,
> Trickey and Ocwen into believing that Trickey was
> acting as watch-dog for the Trustee and protecting the
> interests of the Debtor and its creditors, when in fact
> the opposite was true.  In reality, Trickey was the
> proverbial "wolf in sheep's clothing."
>
>                 . . . .
>
> 75.  As a result of the deteriorating condition of the
> I/O Strips, the Trustee began an investigation of
> Trickey, and the services he was allegedly providing in
> overseeing Ocwen and "managing" the I/O Strips.
>
> 76.  The investigation revealed that Trickey was not
> acting to protect the Debtor in managing the I/O
> Strips, but to the contrary, was the Chief Investment
> Officer of Ocwen acting in a manner contrary to the
> interests of the Debtor.
>
> 77.  The Trustee informed Greenwich and the Indenture
> Trustees of the misrepresentation concerning the status
> and loyalties of Trickey, as well as the conflict of
> interest of their chosen "manager" of the I/O Strips,
> only to learn that both Greenwich and the Indenture
> Trustees had been aware of the relationship since at

least April, 2005, and had intentionally concealed that
information from the Trustee.

(Complaint at ¶¶ 72-73, 75-77.)

Under Delaware law, a fiduciary relationship is a "special
relationship" in which "one person reposes special trust in
another or where a special duty exists on the part of one person
to protect the interests of another." Wal-Mart Stores, Inc. v.
AIG Life Ins. Co., 901 A.2d 106, 113 (Del. Super. Ct. 2006)
(internal quotations and citation omitted)). "Such a
relationship would require 'confidence reposed by one side and
domination and influence exercised by the other'." Bae Sys. N.
Am., Inc. v. Lockheed Martin Corp., No. Civ. A. 20456, 2004 WL
1739522, at *8 n.62 (Del. Ch. Aug. 3, 2004) citing Gross v. Univ.
of Chi., 302 N.E.2d 444, 453-54 (Ill. App. Ct. 1973). The
Trustee's allegation that he "took Trickey into his confidence
[and] had Trickey represent and act on the Trustee's behalf in
dealing with Ocwen to resolve the Trustee's concerns with respect
to the proper servicing of the Mortgage Loans and I/O Strips" is
sufficient to support an inference that the Trustee "repose[d]
special trust in [Trickey and Berkshire] or . . . a special duty
exist[ed] on the part of [Trickey and Berkshire] to protect the
interests of [the Trustee and the Debtor's estates]." Wal-Mart,
901 A.2d at 113.

Berkshire and Trickey also argue that the Trustee failed to
plead that the alleged breach of fiduciary duty by them caused

any damage.  Krim v. ProNet, Inc., 744 A.2d 523, 529 n.20 (Del.
Ch. 1999) (explaining that a plaintiff pleading a claim against
corporate fiduciaries for breach of the duty of disclosure must
"plead causation and identify actual quantifiable damages . . .
if plaintiff seeks more than nominal damages.") citing O'Reilly
v. Transworld Healthcare, Inc., 745 A.2d 902, 917-18 (Del. Ch.
1999).

     This case is factually distinct from the cases cited by
Berkshire and Trickey, however, because the Trustee does not
allege a breach of fiduciary duty for failure to disclose.  See
Krim, 744 A.2d at 528-29 (involving breach of corporate
directors' duty to disclose certain information when seeking
stockholder action); O'Reilly, 745 A.2d at 917-18 (same).

     Nonetheless, the allegations in the Trustee's Complaint do
support his claim that the alleged deterioration in value of the
I/O Strips, increased delinquency rates, and elimination of cash
flow resulting from Ocwen's alleged failure to service the assets
properly were damages caused by Trickey's failure to protect the
interests of the estate through oversight of Ocwen's servicing
activities.  (Complaint at ¶ 74-76.)

     Therefore, the Court concludes that the Trustee has stated a
claim against Berkshire and Trickey for breach of fiduciary duty.
Consequently, the Court will not dismiss this count.

2.    <u>Aiding and Abetting a Breach of Fiduciary Duty</u>

Berkshire and Trickey move for dismissal of the aiding and abetting a breach of fiduciary duty claim asserting that the Trustee has failed to allege that any of the other Defendants owed the Trustee or the Debtor a fiduciary duty.

The Court rejects this argument because, as noted in the Opinions regarding the Motions to dismiss filed by Greenwich and Ocwen, the Court concludes that the Trustee has stated a claim for breach of fiduciary duty against Greenwich though not against Ocwen.

Berkshire and Trickey also seek dismissal contending that the Trustee has not alleged knowing participation in the breach on the part of Berkshire and Trickey.  A proper pleading of aiding and abetting a breach of fiduciary duty requires knowledge of the wrong and substantial assistance or encouragement in the breach.  <u>See, e.g.</u>, <u>OODC</u>, 321 B.R. at 144 (requiring allegations of knowledge of the fiduciary's wrongful conduct and "substantial assistance or encouragement"); <u>In re Santa Fe Pac. Corp. S'holder Litig.</u> 669 A.2d 59, 72 (Del. 1995) ("A claim for aiding and abetting requires the following three elements: (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, and (3) a knowing participation in that breach . . . .").

In the Complaint, the Trustee alleges that Trickey and Berkshire did not reveal Trickey's conflict of interest.

11

(Complaint at ¶ 77.)  However, none of the facts alleged would lead to an inference that Trickey and Berkshire knew of Greenwich's wrongful conduct as a fiduciary responsible for selling the collateral in a commercially reasonable manner or that they substantially assisted Greenwich in its breach of that duty.  (Id. at ¶¶ 72-80.)

Accordingly, the Trustee has failed to state a claim against Trickey and Berkshire for aiding and abetting a breach of fiduciary duty.  Therefore, the Court will dismiss that count against Trickey and Berkshire but will allow the Trustee to amend.  Fed. R. Civ. P. 15(a) ("[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."); Circle Y, 354 B.R. at 356 (dismissing fraud claims but granting leave to amend to add specific facts concerning alleged fraud).

### 3.   Fraudulent Transfer

Berkshire and Trickey contend that the Court should dismiss the fraudulent transfer claims under the Bankruptcy Code and state law because (1) there are not sufficient allegations of wrongdoing on the part of Berkshire and Trickey, and (2) actual fraud was not stated with particularity.

The Court disagrees with Berkshire and Trickey's first point because, as discussed above, the Trustee has stated a claim

12

against them for breach of fiduciary duty.  The Court agrees,
however, that actual fraud was not stated with particularity.

    While the Court recognizes the general rule that a
bankruptcy trustee is afforded flexibility in pleading fraud, the
Court does not allow conclusory allegations and mere recitation
of statutory language.  <u>Circle Y</u>, 354 B.R. at 356 (dismissing the
fraud count because the trustee simply parroted statutory
language and asserted conclusory allegations in the complaint).
Here, the Trustee seeks avoidance of certain sums and fees paid
to the Defendants.  (Complaint at ¶ 106.)  Specifically, the
Trustee seeks recovery of $68,000 paid to Berkshire from the
Debtor's estate.  (Complaint at ¶ 72.)  In the fraudulent
transfer count, the Trustee incorporated the previous paragraphs
of the Complaint.  These are insufficient, however, because the
Trustee failed to allege the date of the payment, the nature of
the payment, or the services performed in relation to the
payment.  Therefore, the Court concludes that the Trustee does
not allege enough facts to support a claim of intentional fraud
on the part of Berkshire and Trickey.  (Complaint at ¶¶ 72-80.)

    Accordingly, the Court holds that the Trustee fails to state
a claim against Berkshire and Trickey for fraudulent transfers
under the Bankruptcy Code and state law.  Consequently, the Court
will dismiss the fraudulent transfer claims against them, but
will allow the Trustee to amend the Complaint.  Fed. R. Civ. P.

13

15(a).

        4.    Common Law Fraud

        Berkshire and Trickey argue that the Trustee has failed to
plead common law fraud with particularity.  Fed. R. Civ. P. 9(b).
The Trustee argues that he has satisfied the pleading
requirements for fraud and that the Third Circuit has no strict
Rule 9(b) pleading requirements.  See, e.g., Seville Indus. Mach.
Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)
("It is certainly true that allegations of 'date, place or time'
fulfill [the functions of Rule 9(b)'s particularity requirement],
but nothing in the rule requires them.  Plaintiffs are free to
use alternative means of injecting precision and some measure of
substantiation into their allegations of fraud.").

        The Court agrees with Berkshire and Trickey that the Trustee
has not pled fraud with sufficient particularity against them,
even considering all other allegations in the Complaint.  (See
Complaint at ¶¶ 72-80.)  Although a Trustee is afforded
liberality in pleading fraud, the Trustee here directly engaged
in the alleged underlying transaction with Berkshire and Trickey
himself.  This is not a case in which the Trustee is
reconstructing the facts of a transaction involving the pre-
petition debtor or post-petition debtor-in-possession and a third
party.  Accordingly, the Trustee is required to allege more
specific facts concerning the date and nature of payments to

                                14

Berkshire, the date that the Trustee took Trickey into his
confidence, the approximate dates of alleged misrepresentations,
and the content of the alleged communications.

Because the Trustee failed to plead fraud with
particularity, the Court will dismiss this count, while allowing
the Trustee to amend the Complaint.  Fed. R. Civ. P. 15(a).

     5.  <u>Civil Conspiracy</u>

Berkshire and Trickey move for dismissal of the civil
conspiracy claim on the same grounds argued by Greenwich and
Ocwen in their Motions to dismiss, particularly that the Trustee
has alleged no wrongdoing and has failed to make particularized
allegations of the time period, object of the conspiracy, and
actions taken by the conspirators.

The Court rejects the argument that no underlying wrongdoing
was alleged because, as stated above, the Trustee has stated a
claim for breach of fiduciary duty against Berkshire and Trickey.
In the civil conspiracy count, the Trustee incorporates the
preceding paragraphs by reference and alleges the following:

> 142.  The Defendants conspired with each other, and others,
> in an effort to perpetrate, facilitate, and aid and abet the
> frauds and other wrongs alleged herein.

> 143.  The Defendants took substantial overt acts, as
> aforesaid, in furtherance of the conspiracy alleged
> herein and are liable for the damage and harm to the
> Debtor.

> 144.  As a result of the Defendants' conspiracy, the
> Debtor suffered the damages previously alleged.

(Complaint at ¶¶ 141-44.)

Because a plaintiff must plead civil conspiracy with particularity, the Court concludes that the Trustee has failed to state a claim for civil conspiracy against all the Defendants named in the count.  Kalmanovitz v. G. Heileman Brewing Co., 595 F. Supp. 1385, 1401 (D. Del. 1984) ("Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient.").  Accordingly, the Court will dismiss this count against Berkshire and Trickey but will allow the Trustee to amend the Complaint to add sufficient factual allegations of civil conspiracy.  Fed. R. Civ. P. 15(a).

6.  Equitable Subordination

Berkshire and Trickey argue that the equitable subordination claim against them is premature.  In the alternative, they assert that the Trustee has failed to allege inequitable conduct and a resulting injury to the other creditors or an unfair advantage to Berkshire and Trickey.

The Court does not agree.  There is no requirement of maturity for an equitable subordination claim.  Rather, a claim for equitable subordination requires only (1) inequitable conduct; (2) a resulting injury to creditors or an unfair advantage to the defendants; and (3) the remedy of equitable

16

subordination must be consistent with the provisions of the
Bankruptcy Code.  See, e.g., Citicorp Venture Capital, Ltd. v.
Comm. of Creditors Holding Unsecured Claims, 160 F.3d 982, 986-87
(3d Cir. 1998).

The Trustee has stated a claim for breach of fiduciary duty
from which the existence of inequitable conduct can be inferred.
Moreover, the Court can also infer, from the factual allegations
in the Complaint, a resulting injury to the other creditors in
the form of a devaluation of the I/O Strips which led to a loss
of additional proceeds flowing into the Debtor's estate.

Accordingly, the Court concludes that the Trustee has stated
a claim for equitable subordination.  Consequently, the Court
will not dismiss that count.

7.  Punitive Damages

Berkshire and Trickey contend that the claim for punitive
damages must be dismissed because the Trustee fails to allege
"outrageous conduct," "evil motive," or "reckless indifference to
the rights of others."  Jardel Co., Inc. v. Hughes, 523 A.2d 518,
529 (Del. 1987) (concluding that an award of punitive damages
will "be imposed only after a close examination of whether the
defendant's conduct is 'outrageous,' because of 'evil motive' or
'reckless indifference to the rights of others'.").

Because the Court must closely examine the facts of the
conduct of Berkshire and Trickey before determining whether

17

punitive damages are warranted, the Court concludes that such an examination is inappropriate at this stage.  Accordingly, the Court will not dismiss this claim for relief.

8.   Declaratory Relief

Berkshire and Trickey argue that the claim for declaratory relief is derivative of all the substantive claims alleged in the Complaint.  Therefore, to the extent the substantive claims are dismissed for failure to state a claim for relief, the Court must also dismiss the corresponding claim for declaratory relief.

The Court agrees that the claim for declaratory relief is derivative of the other asserted claims.  Consequently, to the extent the substantive claims are dismissed, the Court will also dismiss the requested declaratory relief that is derivative of those dismissed claims against Berkshire and Trickey.  See Brunette v. Humane Soc'y of Ventura County, 40 Fed. App'x 594, 598 (9th Cir. 2002).


IV.   CONCLUSION

For the foregoing reasons, the Court concludes that the Motion to Dismiss filed by Berkshire and Trickey will be granted in part.

18

An appropriate Order is attached.


Dated: February 13, 2007          BY THE COURT:

                                  Mary F. Walrath
                                  United States Bankruptcy Judge