## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:                              )  Chapter 7
                                    )
AMERICAN BUSINESS FINANCIAL         )  Case No. 05-10203 (MFW)
SERVICES, INC., et al.,             )
                                    )  (Jointly Administered)
            Debtors.                )
_____ )
                                    )
GEORGE L. MILLER, TRUSTEE,          )
                                    )
            Plaintiff,              )
                                    )  Adversary No. A-06-50826 (MFW)
      v.                            )
                                    )
GREENWICH CAPITAL FINANCIAL         )
PRODUCTS, INC., OCWEN LOAN          )
SERVICING, LLC, WELLS FARGO         )
BANK, N.A., LAW DEBENTURE           )
TRUST COMPANY OF NEW YORK,          )
THE BERKSHIRE GROUP LP,             )
MICHAEL W. TRICKEY,                 )
                                    )
            Defendants.             )
_____ )


### OPINION[1]


        Before the Court is the Motion of Wells Fargo Bank, N.A. and

Law Debenture Trust Company of New York (collectively, the

"Indenture Trustees") for dismissal of the above captioned

complaint against them.  For the reasons set forth below, the

Court will grant the motion in part.

_____

        [1]  In this Opinion, the Court makes no findings of fact and
conclusions of law pursuant to Rule 7052 of the Federal Rules of
Bankruptcy Procedure, which is made applicable to adversary
proceedings under Rule 9014.  Fed. R. Bankr. P. 7052 (a)
("Findings of fact and conclusions of law are unnecessary on
decisions of motions under Rules 12 . . . .").

I.   BACKGROUND

American Business Financial Services, Inc. ("the Debtor") and its subsidiaries operated as a financial services organization that originated and serviced mortgage loans primarily to credit-impaired borrowers.  The Debtor raised capital by selling pools of these loans to special purpose entities created for securitization (the "Securitization SPEs"). The Securitization SPEs sold pools of loans to mortgage loan trusts ("Securitization Trusts").  To raise cash for the purchase of the loans, the Securitization Trusts sold notes or trust certificates secured by the trust assets to investors.  In exchange for the loans sold to the Securitization SPEs and Trusts, the Debtor received cash and certificates of beneficial interests in the Trusts that entitled it to receive certain cash flows generated by the Trusts (the "I/O Strips").  The Debtor also retained the right to service the pools of securitized loans for a fee.

On January 21, 2005, the Debtor and certain of its direct and indirect subsidiaries filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On January 24, 2005, the Debtor filed a Motion seeking debtor-in-possession financing, pursuant to which Greenwich Capital Financial Products, Inc.

("Greenwich")[2] agreed to provide a senior, secured, super-priority $500 million credit facility (the "DIP Facility") to the Debtor.  The DIP Facility was secured by substantially all the Debtor's assets, including the I/O Strips which had a book value of $391 million.  On March 10, 2005, the Court entered a Final Order approving the DIP Loan.  Under the DIP Loan Agreement, the Debtor was required to sell the fee-producing future servicing rights.

Less than a month later, on April 4, 2005, the Debtor publicly announced that a reorganization was not possible.  On the same day, the Court approved the terms and conditions of a sale of the Debtor's fee-producing future servicing rights to Ocwen Loan Servicing, LLC ("Ocwen") for approximately $21 million.  To consummate the sale, Ocwen and the Debtor executed a Servicing Rights Transfer Agreement (the "Transfer Agreement") on or about April 13, 2005, and a Servicing Agreement on May 1, 2005.

On May 13, 2005, Greenwich declared a default on the DIP Loan.  As a result, the bankruptcy case was converted to chapter 7 and George L. Miller was appointed trustee (the "Trustee").

---

[2]  Clearwing Capital, LLC and Chrysalis Warehouse Funding, LLC (collectively, "Clearwing") and The Patriot Group, LLC ("Patriot") also had a $1 million participation in the DIP Loan. As part of a settlement, their participation interests were assigned to the chapter 7 Trustee.

On July 20, 2005, the Trustee and Greenwich entered into a Conditional Consent and Undertaking (the "Consent Agreement") whereby the Trustee agreed to sell certain whole loan assets of the Debtor (which were collateral of Greenwich) pursuant to section 363 of the Bankruptcy Code.  Under the Consent Agreement, the Trustee would receive $300,000 of the sale proceeds for the benefit of the Debtor's estate.  The Trustee, on behalf of the Debtor, agreed to release Greenwich from any and all claims.  On August 19, 2005, the Court approved the Consent Agreement and the sale of the whole loan assets to Credit-Based Asset Servicing and Securitization, LLC for $29,626,846.

Thereafter, Greenwich foreclosed on thirteen I/O Strips which it sold at public auction on June 28, 2006, pursuant to Article 9 of the Uniform Commercial Code.  The I/O Strips were sold to Ocwen[3] for $5.1 million.

On September 13, 2006, the Trustee filed a Complaint against Greenwich, Ocwen, Michael W. Trickey, the Berkshire Group LP, and the Indenture Trustees.  The Trustee asserts the following claims against the Indenture Trustees: (1) fraudulent transfer avoidance and recovery under the Bankruptcy Code; (2) fraudulent transfer avoidance and recovery under state law; (3) breach of fiduciary duty; (4) aiding and abetting a breach of fiduciary duty; (5)

---

[3]  Prior to the sale, Ocwen was the servicer of the I/O Strips under the Transfer Agreement.

breach of contract; (6) common law fraud; (7) civil conspiracy; (8) objections to and subordination of their claims; and (9) declaratory relief.

A Motion to dismiss the Complaint was filed by the Indenture Trustees on November 27, 2006.  The Trustee opposes the Motion. Briefing on the Motion is complete, and the matter is now ripe for decision.


II.  JURISDICTION

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) & 157(b)(1).  Many of the counts are core matters pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (E), (H), (K), & (O).


III. DISCUSSION

The Indenture Trustees move for dismissal of the claims against them under Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure, which are made applicable to adversary proceedings by Rules 7012(b) and 7009 of the Federal Rules of Bankruptcy Procedure, respectively.  Specifically, they argue that the Trustee's Complaint fails to state a claim for which relief can be granted and fails to plead fraud with particularity.

A.   <u>Standard of Review</u>

1.   <u>Rule 12(b)(6) Dismissal</u>

A Rule 12(b)(6) motion serves to test the sufficiency of the factual allegations in the plaintiff's complaint.  <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993).  To succeed on a Rule 12(b)(6) motion to dismiss, the movant must establish "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>City of Phila. v. Lead Indus. Ass'n, Inc.</u>, 994 F.2d 112, 118 (3d Cir. 1993).  "In deciding a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff."  <u>Carino v. Stefan</u>, 376 F.3d 156, 159 (3d Cir. 2004).  All reasonable inferences are drawn in favor of the plaintiff.  <u>Kost</u>, 1 F.3d at 183.  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  <u>See also</u> <u>Maio v. Aetna, Inc.</u>, 221 F.3d 472, 482 (3d Cir. 2000); <u>In re OODC, LLC</u>, 321 B.R. 128, 134 (Bankr. D. Del. 2005) ("Granting a motion to dismiss is a 'disfavored' practice.").

2.   <u>Rule 8(a)</u>

Rule 8(a) of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R.
Civ. P. 8(a).  The statement must provide the defendant with fair
notice of the claim filed against it.  See, e.g., Williams v.
Potter, 384 F. Supp. 2d 730, 733 (D. Del. 2005) ("Vague and
conclusory factual allegations do not provide fair notice to a
defendant.") citing United States v. City of Phila., 644 F.2d
187, 204 (3d Cir. 1980).

### 3.   Rule 9(b) Dismissal

Where a complaint asserts a claim for fraud, however, the
standard for pleading is higher.  The complaint must set forth
facts with sufficient particularity to apprise the defendant of
the charges against him so that he may prepare an adequate
answer.  In re Global Link Telecom Corp., 327 B.R. 711, 718
(Bankr. D. Del. 2005).  To provide fair notice the complainant
must go beyond merely parroting statutory language.  Id.  See
also In re Circle Y of Yoakum, Texas, 354 B.R. 349, 356 (Bankr.
D. Del. 2006).  A bankruptcy trustee, as a third party outsider
to the debtor's transactions, is generally afforded greater
liberality in pleading fraud.  Global Link, 327 B.R. at 717.

### B.   Indenture Trustees' Motion to Dismiss

#### 1.   Common Law Fraud

The Trustee's common law fraud claim against the Indenture
Trustees is based on two alleged actions.  The Trustee alleges
that the Indenture Trustees withdrew their objection to the DIP

7

financing in exchange for a $1.4 million "bribe" from Greenwich, thereby perpetrating or at least aiding and abetting a fraud on the Court.  (Complaint at ¶¶ 32-36.)  Second, the Trustee alleges that the Indenture Trustees failed to disclose (or intentionally concealed) the conflict of interest which Trickey and Berkshire had.  (Complaint at ¶¶ 69-79.)

          a.   Misrepresentation of I/O Strips' Value

The Indenture Trustees move for dismissal of the common law fraud claim against them on several bases.  First, the Indenture Trustees assert that the Trustee has not alleged sufficiently that they made any misrepresentation or omission of fact to the Court about the value of the I/O Strips (as the Trustee alleges Greenwich did).  In fact, they note that the Trustee specifically alleges that the original indenture trustee, U.S. Bank, objected to the proposed DIP financing "on the grounds that, inter alia, . . . the I/O Strips were worth only a fraction of the amounts recorded on the books."  (Complaint at ¶ 32.)

The Trustee asserts nonetheless that the Indenture Trustees' failure to pursue their objections to the DIP financing (in exchange for the $1.4 million payment) resulted in fraud.  The Trustee argues in his brief that by joining with Greenwich to support the DIP financing motion, the Indenture Trustees made an implicit false representation to the Court regarding the value of the I/O Strips.

In response, the Indenture Trustees contend that there is nothing in the Court's record that would indicate that they "withdrew" their objections.  Rather, they contend that the Court overruled any objections in the Final DIP Order.  Further, the Indenture Trustees contend that the payment they received was additional adequate protection to which they were entitled. (Final DIP Order, at ¶¶ XII & 26-28.)

The Trustee replies that the Indenture Trustees owed fiduciary duties, including a duty to disclose, to the Debtor as secured creditors whose debt (the I/O Strips) was in default. See, e.g., Solfanelli v. Corestates Bank, N.A., 203 F.3d 197, 200 (3d Cir. 2000) (holding that a secured creditor who liquidates collateral owes fiduciary duties to the debtor).

The Court concludes that, on the record before it, it cannot determine what representations the Indenture Trustees may have made and what the payment to them was.  Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 415 (3d Cir. 2003) (concluding that the district court erred in dismissing an aiding and abetting count because "[t]he truthfulness of plaintiffs' allegations regarding the defendants' knowledge of the fraudulent nature of [the defrauder's] actions is a question of fact to be determined at trial.").  Therefore, the Court will not dismiss the fraud count on this basis.

b.   <u>Trickey's Conflict of Interest</u>

The Indenture Trustees also contend that the Trustee's fraud count relating to any alleged "conflict of interest" by Trickey should be dismissed because they had no duty to disclose that information.  <u>See, e.g.</u>, <u>In re Worldwide Direct, Inc.</u>, 334 B.R. 112, 121 (Bankr. D. Del. 2005) (concluding that the indenture trustee only owes fiduciary duties to debenture holders); <u>Abry Partners V, L.P. v. F & W Acquisition LLC</u>, 891 A.2d 1032, 1050 (Del. Ch. 2006) (providing that when stating a claim for common law fraud, a plaintiff must plead, among other things, that "the defendant falsely represented or omitted facts that the defendant had a duty to disclose").

The Court agrees that indenture trustees generally only owe fiduciary duties to note holders.  <u>Worldwide Direct, Inc.</u>, 334 B.R. at 121.  The Trustee alleges, however, that the Indenture Trustees made affirmative representations to the Trustee that Trickey and Berkshire would perform their oversight function for the benefit of the Trustee while knowing that Trickey and Berkshire had a conflict of interest.  (Complaint at ¶¶ 71 & 77.) These paragraphs clearly allege that the Indenture Trustees misrepresented Trickey's status.  Accordingly, the Court concludes that these allegations are sufficient to satisfy the requirement that the plaintiff plead that "the defendant falsely represented facts."  <u>Abry Partners</u>, 891 A.2d at 1050.

10

The Indenture Trustees also argue that the Trustee failed to allege that he was induced to act or refrain from acting or justifiably relied on any misrepresentations made by them.  Abry Partners, 891 A.2d at 1050.

The Trustee alleges in the Complaint that he requested the consent of the Indenture Trustees to hire a professional to manage and preserve the value of the I/O Strips.  (Complaint at ¶ 70.)  Further, he alleges that the Indenture Trustees denied consent and represented that they had engaged Trickey and Berkshire to manage the I/O Strips.  (Id. at ¶ 71.)  From those facts the Court can infer that the Indenture Trustees made the representations to cause the Trustee to refrain from hiring another professional to manage the collateral on behalf of the estate.  Therefore, the Court concludes that there was inducement.

The Trustee also alleges justifiable reliance on the representations concerning Trickey's interests.  The Trustee's Complaint states that

> 72.  In reliance upon the representation of the Indenture Trustees and Greenwich, the Trustee took Trickey into his confidence, had Trickey represent and act on the Trustee's behalf in dealing with Ocwen to resolve the Trustee's concerns with respect to the proper servicing of the Mortgage Loans and I/O Strips, and paid Berkshire more than $68,000 (of a $175,000 bill) from the limited available fund of the estate.

(Complaint at ¶ 72.)  Accordingly, the Court concludes that the Trustee has alleged sufficient facts upon which the Court could

11

conclude that the Trustee justifiably relied upon the Indenture
Trustee's misrepresentations.  (Id.)

The Indenture Trustees argue nonetheless that the claim must
fail because it was not pled with particularity.  Fed. R. Civ. P.
9(b).  The Court agrees.  The Trustee has not stated who on
behalf of the Indenture Trustees made the representations, on
what dates these representations were made, or the medium used to
make the representations.  (Complaint at ¶¶ 70-79.)  The Trustee
should be aware of these facts because these alleged
representations were made to him and not to a third party.

Accordingly, the Court concludes that the Trustee has failed
to state fraud with particularity.  Consequently, the Court will
dismiss the fraud count but will allow the Trustee to amend the
claim to add more particular facts.  Fed. R. Civ. P. 15(a)  ("[A]
party may amend the party's pleading only by leave of court or by
written consent of the adverse party; and leave shall be freely
given when justice so requires.");  Circle Y, 354 B.R. at 356
(dismissing fraud claims but granting leave to amend to add
specific facts concerning alleged fraud).

2.   Aiding and Abetting Fraud

In the Complaint, the Trustee alleges that the Indenture
Trustees participated in Greenwich's fraud upon the Court
relating to the DIP financing.  (Complaint at ¶¶ 32-36.)  The
Trustee alleges that the Indenture Trustees aided and abetted the

12

fraud perpetrated on the Court by accepting a $1.4 million payment (a "bribe" according to the Trustee) from Greenwich in return for withdrawing their Objections to the proposed DIP Financing.  (Complaint at ¶¶ 31-36).

The Indenture Trustees argue that the Debtor stipulated in the Final DIP Order that it relied on no representations as to the value of the I/O Strips.  They assert that, because the Court entered the Order, the fraud claim is barred by the doctrine of the law of the case and judicial estoppel.  Teledyne Indus., Inc. v. N.L.R.B., 911 F.2d 1214, 1217-18 (6th Cir. 1990) ("Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment."); In re J.F. Hink & Son, 815 F.2d 1314, 1318 (9th Cir. 1987) ("The notion that a party in bankruptcy can be permitted to thwart a bankruptcy order which has been conceived and fostered through its participation has been vigorously rejected." (internal quotations and citations omitted)); In re Network Access Solutions Corp., 330 B.R. 67, 76 (Bankr. D. Del. 2005) (concluding that a prior determination of the Court was now the law of the case and the Court would not re-decide the same issue).

13

The Court agrees with the Indenture Trustees for a different reason.  In a companion Opinion, the Court determined that the Trustee has not stated a claim for fraud against Greenwich. Accordingly, the Court will dismiss the Trustee's claim that the Indenture Trustees aided and abetted the alleged fraud of Greenwich.

The Trustee further alleges that the Indenture Trustees aided and abetted the fraudulent conduct of Ocwen, Trickey, and Berkshire in concealing Trickey's conflict of interest. (Complaint at ¶¶ 70-79.)  In companion Opinions, the Court has dismissed all counts of fraud except the one against Ocwen.  In the Complaint, the Trustee alleges that the Indenture Trustees, Greenwich, Berkshire, Trickey, and Ocwen all misled the Trustee concerning Trickey's conflict of interest.  (<u>Id.</u>)  Accordingly, the Court may infer from those allegations that the Indenture Trustees knew of the alleged fraud and knowingly participated.

Therefore, the Court concludes that the Trustee has stated a claim against the Indenture Trustees for aiding and abetting fraud.  Consequently, the Court will not dismiss the aiding and abetting fraud count.

### 3.   <u>Breach of Fiduciary Duty</u>

The Trustee alleges that the Indenture Trustees breached fiduciary duties owed to the Debtor and its creditors.  The Indenture Trustees argue that they were not in a fiduciary

14

relationship with the Debtor or the Trustee.

The Court concludes that the Trustee has failed to state a claim against the Indenture Trustees because they did not owe the Debtor a fiduciary duty. <u>Worldwide Direct</u>, 334 B.R. at 121 ("[A]n indenture trustee owes its fiduciary duty to the debenture holders, not the bankruptcy estate. The indenture trustee acts in the best interest of its debenture holders. . . . [T]he indenture trustee may take actions that are of only marginal or incidental benefit to the bankruptcy estate."). Consequently, the Court will dismiss the breach of fiduciary duty count against the Indenture Trustees.

> 5. <u>Aiding and Abetting a Breach of Fiduciary Duty</u>

The Indenture Trustees seek dismissal of the aiding and abetting a breach of fiduciary duty count against them on the basis that the claim is based on fraud and the Trustee has not pled particular facts regarding the breach of fiduciary duty or the knowing participation on the part of the Indenture Trustees. <u>See, e.g.</u>, <u>OODC</u>, 321 B.R. at 144 (stating that an aiding and abetting a breach of fiduciary duty claim requires proof of (1) wrongful conduct on the part of the fiduciary; (2) the defendant had knowledge of the fiduciary's wrongful conduct; and (3) the defendant substantially assisted or encouraged the fiduciary's wrongful conduct); <u>Am. Mobile Commc'ns, Inc. v. Nationwide Cellular Serv., Inc.</u>, No. 91 Civ. 3587 (LBS), 1992 WL 232058, at

15

*6 (S.D.N.Y. Sep. 3, 1992) (concluding that a claim for a breach of fiduciary duty that was based on fraud was subject to Rule 9(b)'s particularity requirements).

The Court disagrees with the Indenture Trustees.  Federal courts sitting in Delaware generally do not apply the Rule 9(b) pleading requirements to state law claims for breach of fiduciary duty.  See, e.g., In re Fruehauf Trailer Corp., 250 B.R. 168, 197-98 (D. Del. 2000).  Therefore, the Trustee is only required to meet the pleading requirements of Rule 8(a).  Fed. R. Civ. P. 8(a).

As discussed in the Greenwich Opinion, the Court concluded that the Trustee has stated a claim for breach of fiduciary duty against Greenwich relating to the sale of the I/O Strips. Nonetheless, the Trustee has not alleged that the Indenture Trustees were involved in the sale of that collateral. Therefore, the Court concludes that the Trustee has failed to state a claim against the Indenture Trustees for aiding and abetting Greenwich's breach of fiduciary duty.

As the Court concluded in the Berkshire and Trickey Opinion, the Trustee has also stated a claim for breach of fiduciary duty against Berkshire and Trickey.  The Trustee alleges in the Complaint that the Indenture Trustees aided and abetted that breach of fiduciary duty by refusing to consent to the Trustee hiring a different professional to manage the I/O Strips.

16

(Complaint at ¶¶ 70-71.)  In addition, the Trustee alleges that
the Indenture Trustees misled the Trustee concerning Trickey's
conflict of interest although the Indenture Trustees had been
aware of Trickey's relationship with Ocwen since April of 2005.
(Id. at ¶¶ 73 & 77.)  From those allegations, if true, the Court
could infer that the Indenture Trustees knowingly participated in
the breach of fiduciary duty by Berkshire and Trickey.

Accordingly, the Court concludes that the Trustee has stated
a claim for aiding and abetting a breach of fiduciary duty
against the Indenture Trustees.

### 6.  Fraudulent Transfer

The Trustee alleges that all the Defendants participated in
and/or aided and abetted fraudulent transfers of the Debtor's
property.  (Complaint at ¶ 106.)  In the Complaint the Trustee
specifically alleged that "the Indenture Trustees sold out,
agreed to accept payment of approximately $1.4 million from
Greenwich, and in return withdrew the Objections and aided and
abetted the fraud perpetrated by Greenwich on the Court."
(Complaint at ¶ 36.)  The Trustee seeks avoidance and recovery
of, among other things, "the payment of fees to the Indenture
Trustees."  (Id.)

The Indenture Trustees seek dismissal of the fraudulent
transfer claims on the grounds that (1) the express language of
the Final DIP Order bars fraudulent transfer actions; (2) the

17

payments were authorized by the Court in the Final DIP Order; and (3) actual fraud is not pled with particularity.

The Final DIP Order provides that the Debtor could not avoid "any rights [or obligations] arising" under the loan documents or Final DIP Order. (Final DIP Order at 42.) In addition, the Final DIP Order provided that the Indenture Trustees would receive fee reimbursements. (Id. at 18 & 54, ¶¶ XII, 26.) The determination of whether the payments were in the nature of those authorized by the Final DIP Order, however, or whether the transfers were for fair consideration are questions of fact that the Court cannot determine on a motion to dismiss. Morganroth & Morganroth, 331 F.3d at 415.

To the extent the Trustee alleges intentional fraud, however, the Court agrees with the Indenture Trustees that he has not pled it with particularity. The bare statement that the Indenture Trustees "sold out" by accepting a payment from Greenwich is insufficient to state a claim that the payment could be avoided as a fraudulent transfer.

Accordingly, the Court concludes that the Trustee has failed to state a claim against the Indenture Trustees for avoidance of a transfer based on actual fraud. Consequently, the Court will dismiss the fraudulent transfer claim to the extent it is based on actual fraud but will allow the Trustee to amend the count to add more particular facts. Fed. R. Civ. P. 15(a).

a.  <u>Constructively Fraudulent Transfer</u>

The Indenture Trustees also seek dismissal of the claim that they aided and abetted a constructively fraudulent transfer. They argue that Delaware does not recognize such a claim and that there are no viable fraudulent transfer actions against the other Defendants.  The Court rejects both of these arguments.  Although there is little case law in Delaware involving claims for aiding and abetting constructively fraudulent transfers, the Indenture Trustees failed to cite a case that stands for the proposition that Delaware does not recognize such a cause of action.  <u>See, e.g.</u>, <u>Lange v. Citibank, N.A.</u>, No. Civ. A. 19245-NC, 2002 WL 2005728, at *6 (Del. Ch. Aug. 13, 2002) (dismissing aiding and abetting fraudulent conveyance action because of no-action clause in the parties' agreement and not because Delaware does not recognize such a cause of action).  Further, as discussed in the Opinions regarding the other Motions to dismiss, the Court has not dismissed all the fraudulent transfer counts.

Accordingly, the Court will dismiss the fraudulent transfer claim to the extent it is based on actual fraud but will allow the Trustee to amend the Complaint to add more specific allegations of fact.  Fed. R. Civ. P. 15(a); <u>Circle Y</u>, 354 B.R. at 356.  The Court will not dismiss the claim that the Indenture Trustees aided and abetted a constructively fraudulent transfer.

19

7.   <u>Civil Conspiracy</u>

The Indenture Trustees argue that the Trustee fails to plead the required elements of civil conspiracy, with the requisite "particularity."  The Court agrees with the Indenture Trustees.

A plaintiff must plead civil conspiracy with particularity. <u>Kalmanovitz v. G. Heileman Brewing Co.</u>, 595 F. Supp. 1385, 1400 (D. Del. 1984) (dismissing a civil conspiracy count for failure to plead sufficient facts).

Here, the Trustee incorporates other factual allegations into the civil conspiracy count by reference but included only general, conclusory allegations of conspiracy.  (Complaint at ¶¶ 141-44.)  Because the civil conspiracy count does not contain particular facts indicating civil conspiracy, the Court will dismiss the civil conspiracy count while allowing the Trustee to amend the Complaint.  <u>Kalmanovitz</u>, 595 F. Supp. at 1400 (" A general averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient.").  <u>See also</u> Fed. R. Civ. P. 15(a).

8.   <u>Breach of Contract</u>

The Indenture Trustees move to dismiss the breach of contract claim against them because, they contend, the Trustee does not allege any specific provision of the contract that was breached.  (<u>See</u> Complaint at ¶¶ 135-36.)

The Court agrees with the Indenture Trustees.  In the breach of contract count of the Complaint, the Trustee alleges:

> 135.  The Conduct of Greenwich, Ocwen and the Indenture Trustees constitutes a breach by each such Defendant of their contractual obligations to the Debtor and the Trustee under the applicable contracts, including but not limited to the DIP Financing, Loan Agreement, and other agreements incident to the DIP Financing, the Servicing Rights Transfer Agreement, the Servicing Agreements, and the trust indentures and agreements with the Indenture Trustees.
>
> 136.  As a result of the Defendant's breach of contract, the Debtor suffered the damages previously alleged.

(Complaint at ¶¶ 135-36.)  The Trustee has failed to allege what specific contractual provisions have been breached by the Indenture Trustees.  The Indenture Trustees cannot prepare either an adequate answer or defense if that information is not provided in the Complaint.  Menkowitz v. Pottstown Mem'l Med. Ctr., 154 F.3d 113, 124 (3d Cir. 1998) ("[A] plaintiff generally need not explicitly allege the existence of every element in a cause of action if fair notice of the transaction is given and the complaint sets forth the material points necessary to sustain recovery.").

Therefore, the Court concludes that the Trustee has failed to state a claim for breach of contract against the Indenture Trustees.  Accordingly, the Court will dismiss the count, but will allow the Trustee to amend the Complaint to specify which contractual provisions were allegedly breached.  Fed. R. Civ. P.

21

15(a).

### 9.   Equitable Subordination

The Indenture Trustees argue that the Court should dismiss the equitable subordination claim, which is an extraordinary remedy, because the Trustee fails to allege inequitable or egregious misconduct.   In re Epic Capital Corp., 307 B.R. 767, 773 (D. Del. 2004) (recognizing that "equitable subordination is an extraordinary remedy which is applied sparingly" and requires "a more egregious level of inequitable conduct" when the defendant is not an insider).

To the extent the Trustee can prove the Indenture Trustees committed the tort claims that the Court has not dismissed, the Trustee may be able to establish inequitable conduct.   OODC, 321 B.R. at 146.   In addition, the level of egregiousness of the inequitable conduct is a question of fact that the Court cannot determine on a motion to dismiss.   Id.   Accordingly, the Court concludes that the Trustee has stated a claim for equitable subordination.

### 10.   Objections to Claims

The Trustee objects to the proofs of claim that the Indenture Trustees filed on behalf of the collateralized note holders, as unsubstantiated in whole or in part.   (Complaint at ¶¶ 152-52 & 95.)   The Trustee alleges that "the Indenture Trustees provided no back-up to substantiate or support the

22

amounts claimed, and the Indenture Trustees' predecessor admitted having no such information." The Indenture Trustees argue, without citation to authority, that the objection is premature and without merit because the Debtor and now the Trustee (as the Registrar and Paying Agent of the collateralized note holders) is in sole possession of the claim information.

At this stage in the proceedings, the Court cannot determine whether the required information is in the sole possession of the Debtor or the Trustee. Accordingly, the Court concludes that the Trustee has stated a claim for relief and will not dismiss the objection at this point.

11.  Declaratory Relief

The Indenture Trustees seek dismissal of the request for declaratory relief on two bases: (1) to the extent the Trustee failed to state a claim for relief for the underlying claim, declaratory relief must fail also; and (2) the claim for declaratory relief is merely a restatement of the tort claims. The Court agrees with the Indenture Trustees' first argument. For the reasons discussed above, the Court will dismiss the declaratory relief count against the Indenture Trustees as it relates to the tort claims that the Court is otherwise dismissing.  See Brunette v. Humane Soc'y of Ventura County, 40 Fed. App'x 594, 598 (9th Cir. 2002); Sofi Classic S.A. de C.V. v. Hurowitz, 444 F. Supp. 2d 231, 249 (S.D.N.Y. 2006).

23

12.  Punitive Damages

The Indenture Trustees argue that the Court must dismiss the punitive damages count because the Trustee has not alleged that the Indenture Trustees engaged in "outrageous" conduct or had an "evil motive."  Jardel Co., Inc. v. Hughes, 523 A.2d 518, 529 (Del. 1987) (concluding that an award of punitive damages will "be imposed only after a close examination of whether the defendant's conduct is 'outrageous,' because of 'evil motive' or 'reckless indifference to the rights of others'.").

Because the Court must closely examine the facts to determine whether the Indenture Trustees engaged in outrageous conduct or acted with an evil motive or with reckless indifference, the Court concludes that such an inquiry is inappropriate for determination on a motion to dismiss. Accordingly, the Court will not dismiss the claim for punitive damages.


IV.  CONCLUSION

For the foregoing reasons, the Court concludes that the Indenture Trustees' Motion to Dismiss will be granted in part.

24

An appropriate Order is attached.


Dated: February 13, 2007          BY THE COURT:


                                  Mary F. Walrath
                                  United States Bankruptcy Judge