IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
IN RE:                              ) Chapter 7
                                    )
AMERICAN BUSINESS FINANCIAL         ) Case No. 05-10203 (MFW)
SERVICES, INC., et al.,             )
                                    ) (Jointly Administered)
              Debtors.              )
_____        )
                                    )
GEORGE L. MILLER, TRUSTEE,          )
                                    )
              Plaintiff,            )
                                    ) Adversary No. A-06-50826 (MFW)
         v.                         )
                                    )
GREENWICH CAPITAL FINANCIAL         )
PRODUCTS, INC., OCWEN LOAN          )
SERVICING, LLC, WELLS FARGO         )
BANK, N.A., LAW DEBENTURE           )
TRUST COMPANY OF NEW YORK,          )
THE BERKSHIRE GROUP LP,             )
MICHAEL W. TRICKEY,                 )
                                    )
              Defendants.           )
_____        )
```

## OPINION[1]

Before the Court is the Motion of Michael W. Trickey ("Trickey") and the Berkshire Group, LP ("Berkshire") for dismissal of the aiding and abetting a breach of fiduciary duty and civil conspiracy counts of the above captioned amended complaint against them, with prejudice.  For the reasons set

---

[1] In this Opinion, the Court makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, which is made applicable to adversary proceedings under Rule 9014.  Fed. R. Bankr. P. 7052 (a) ("Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 . . . .").

forth below, the Court will deny the motion.

I.    BACKGROUND

American Business Financial Services, Inc. ("the Debtor") and its subsidiaries operated as a financial services organization that originated and serviced mortgage loans primarily to credit-impaired borrowers.  The Debtor raised capital by selling pools of these loans to special purpose entities created for securitization (the "Securitization SPEs"). The Securitization SPEs sold pools of loans to mortgage loan trusts ("Securitization Trusts").  To raise cash to purchase the loans, the Securitization Trusts sold notes or trust certificates secured by the trust assets to investors.  In exchange for the loans sold to the Securitization SPEs, the Debtor received cash and certificates of beneficial interests in the Trusts that entitled it to receive certain cash flows generated by the Trusts (the "I/O Strips").  The Debtor also retained the right to service the loans for a fee.

On January 21, 2005, the Debtor and certain of its direct and indirect subsidiaries filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On January 24, 2005, the Debtor filed a Motion seeking debtor-in-possession financing, pursuant to which Greenwich Capital Financial Products, Inc.

("Greenwich")[2] agreed to provide a senior, secured, super-priority $500 million credit facility (the "DIP Loan") to the Debtor. The DIP Loan was secured by substantially all the Debtor's assets, including the I/O Strips which had a book value of $391 million. On March 10, 2005, the Court entered a Final Order approving the DIP Loan. Greenwich received a $15.75 million financing commitment fee for extending the DIP Loan. Pursuant to the DIP Loan Agreement, the Debtor was required to sell the fee-producing future servicing rights.

Less than a month later, on April 4, 2005, the Debtor publicly announced that a reorganization was not possible. On that same day, the Court approved the sale of the Debtor's servicing rights to Ocwen Loan Servicing, LLC ("Ocwen") for approximately $21 million. To consummate the sale, Ocwen and the Debtor executed a Servicing Rights Transfer Agreement (the "Transfer Agreement") on or about April 13, 2005, and a Servicing Agreement on May 1, 2005.

On May 13, 2005, Greenwich declared a default on the DIP Loan. As a result, the bankruptcy case was converted to chapter 7 and George L. Miller was appointed trustee (the "Trustee").

---

[2] Clearwing Capital, LLC and Chrysalis Warehouse Funding, LLC (collectively, "Clearwing") and The Patriot Group, LLC ("Patriot") also had a $1 million participation in the DIP Loan. As part of a settlement, their participation interests were assigned to the Trustee.

On July 20, 2005, the Trustee and Greenwich entered into a Conditional Consent and Undertaking (the "Consent Agreement") whereby the Trustee agreed to sell certain whole loan assets of the Debtor (which were collateral of Greenwich) pursuant to section 363 of the Bankruptcy Code.  Under the Consent Agreement, the Trustee was to receive $300,000 of the sale proceeds for the benefit of the Debtor's estate.  The Trustee, on behalf of the Debtor, agreed to release Greenwich from any and all claims.  On August 19, 2005, the Court approved the Consent Agreement and the sale of the whole loan assets to Credit-Based Asset Servicing and Securitization, LLC for approximately $29 million.

Thereafter, Greenwich foreclosed on certain I/O Strips which it sold by public auction on June 28, 2006, pursuant to Article 9 of the Uniform Commercial Code.  The I/O Strips were sold to Ocwen[3] for $5.1 million.

On September 13, 2006, the Trustee filed a Complaint against Greenwich, Ocwen, Trickey, Berkshire, and the Indenture Trustees[4] (the "Original Complaint").  The Trustee asserted the following claims against Berkshire and Trickey: (1) fraudulent transfer under the Bankruptcy Code; (2) fraudulent transfer under state law; (3) breach of fiduciary duty; (4) aiding and abetting a

---

[3] Prior to the sale, Ocwen was the servicer of the I/O Strips under the Transfer Agreement.

[4] The Indenture Trustees are Wells Fargo Bank, N.A. and Law Debenture Trust Company of New York.

breach of fiduciary duty; (5) common law fraud; (6) civil conspiracy; (7) objections to and subordination of their claims; and (8) declaratory relief.

A Motion to dismiss the Original Complaint was filed by Berkshire and Trickey on November 17, 2006.  On February 13, 2007, the Court dismissed the following counts against Berkshire and Trickey:  aiding and abetting a breach of fiduciary duty, fraudulent transfer, common law fraud, civil conspiracy, and declaratory relief (as it related to the dismissed claims). <u>Miller v. Greenwich Capital Fin. Products, Inc., et al. (In re Am. Bus. Fin. Servs., Inc.)</u>, 360 B.R. 74 (Bankr. D. Del. 2007). The Trustee was granted leave to amend the aiding and abetting a breach of fiduciary duty, fraudulent transfer, common law fraud, and civil conspiracy counts of the Original Complaint.  <u>Id.</u>

On March 13, 2007, the Trustee filed an amended complaint ("Amended Complaint").  On April 17, 2007, Berkshire and Trickey filed the instant Motion to dismiss the aiding and abetting a breach of fiduciary duty and the civil conspiracy counts against them.  The Trustee opposes the Motion.  Briefing on the Motion is complete.  The matter is now ripe for decision.

II. <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) &

157(b)(1).  Many of the counts are core matters pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (E), (H), (K), & (O).

III. <u>DISCUSSION</u>

Berkshire and Trickey move for dismissal of the claims against them under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which is made applicable to adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. Specifically, they argue that the Trustee's Amended Complaint fails to state claims for aiding and abetting a breach of fiduciary duty and civil conspiracy.

A. <u>Standard of Review</u>

1. <u>Rule 12(b)(6) Dismissal</u>

A Rule 12(b)(6) motion serves to test the sufficiency of the factual allegations in the plaintiff's complaint. <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . . [f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964 – 65 (2007). "In deciding a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff." <u>Carino v. Stefan</u>, 376 F.3d 156, 159 (3d Cir. 2004). All reasonable inferences are

drawn in favor of the plaintiff.  <u>Kost</u>, 1 F.3d at 183.  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>abrogated on other grounds by</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982). <u>See also</u> <u>Maio v. Aetna, Inc.</u>, 221 F.3d 472, 482 (3d Cir. 2000); <u>In re OODC, LLC</u>, 321 B.R. 128, 134 (Bankr. D. Del. 2005) ("Granting a motion to dismiss is a 'disfavored' practice.").

        2.   <u>Rule 8(a)</u>

Rule 8(a) of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  The statement must provide the defendant with fair notice of the claim filed against it.  <u>See, e.g.</u>, <u>Williams v. Potter</u>, 384 F. Supp. 2d 730, 733 (D. Del. 2005) ("Vague and conclusory factual allegations do not provide fair notice to a defendant.") <u>citing</u> <u>United States v. City of Phila.</u>, 644 F.2d 187, 204 (3d Cir. 1980).

    B.   <u>Motion to Dismiss</u>

        1.   <u>Aiding and Abetting a Breach of Fiduciary Duty</u>

Berkshire and Trickey move for dismissal of the aiding and abetting a breach of fiduciary duty count asserting that the Trustee has failed to allege that they knew of Greenwich's alleged wrongful intention to sell the I/O Strips in a

7

commercially unreasonable manner in breach of its fiduciary duties.  They further contend that there are no facts showing they substantially assisted or encouraged the sale because the involvement of Berkshire and Trickey ended nine months before the sale.  The Trustee responds that the facts alleged and the reasonable inferences drawn from those facts are sufficient to state a claim for aiding and abetting Greenwich's breach of duty. (See Amended Complaint at ¶¶ 116, 163-78, 232-33.)

In considering Greenwich's motion to dismiss the Original Complaint, the Court found that "the Trustee has stated a claim for relief by alleging that Greenwich breached its fiduciary duty [to sell the collateral in a commercially reasonable manner] by failing to protect, preserve, and maximize the value of the Debtor's property, including the I/O Strips and the cash flow and other sums."  Miller v. Greenwich Capital Fin. Products, Inc., et al. (In re Am. Bus. Fin. Servs., Inc.), 361 B.R. 747, 757 (Bankr. D. Del. 2007).  See also Solfanelli v. Corestates Bank, N.A., 203 F.3d 197, 200 (3d Cir. 2000) ("[T]he test to determine 'commercial reasonableness' should be whether the sale's every aspect is characterized by: (1) good faith, (2) avoidance of loss, and (3) an effective realization." (emphasis added)). However, the Court dismissed the aiding and abetting a breach of fiduciary duty count of the Original Complaint against Berkshire and Trickey because "none of the facts alleged would lead to an

inference that Trickey and Berkshire knew of Greenwich's wrongful conduct as a fiduciary responsible for selling the collateral in a commercially reasonable manner or that they substantially assisted Greenwich in its breach of that duty." Am. Bus. Fin. Servs., Inc., 360 B.R. at 81 ("A proper pleading of aiding and abetting a breach of fiduciary duty requires knowledge of the wrong and substantial assistance or encouragement in the breach.") citing In re OODC, LLC, 321 B.R. 128, 144 (Bankr. D. Del. 2005) (requiring allegations of knowledge of the fiduciary's wrongful conduct and "substantial assistance or encouragement"); In re Santa Fe Pac. Corp. S'holder Litig., 669 A.2d 59, 72 (Del. 1995) ("A claim for aiding and abetting requires the following three elements: (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, and (3) a knowing participation in that breach . . . .").

In the Amended Complaint, the Trustee now alleges that on June 1, 2005, Greenwich's Senior Vice President instructed Trickey to withhold the valuations of the I/O Strips as part of a scheme to obtain a release from the Trustee. The Trustee alleges that Trickey did so. (Amended Complaint at ¶ 116.) The Trustee also alleges that he took Trickey into his confidence on or about June 7, 2005, after Trickey stated that he represented the interests of the Debtor and its creditors and he was overseeing Ocwen's management and servicing of the I/O Strips to ensure the

collateral's value was protected, preserved and maximized.  The Trustee alleges that Trickey failed to disclose his conflict of interest (he was Ocwen's Chief Investment Officer).  (Id. at ¶¶ 163-78.)  The Trustee terminated his relationship with Trickey sometime after September 19, 2005, when he investigated and discovered the conflict of interest after noticing "the deteriorating condition of the I/O Strips."  (Id. at ¶¶ 171-75.)  The Trustee alleges that Greenwich advised him of its decision to foreclose on the I/O Strips in early 2006, although they were not sold at auction until June 2006.  (Id. at ¶¶ 180-81.)  The Trustee alleges that the sale of the I/O Strips was commercially unreasonable because they were sold at less than their actual value as a result of the devaluation and wasting that occurred at the hands of all the conspiring defendants.  (Id. at ¶¶ 183-89.)

The Trustee alleges that "Berkshire and Trickey knew of Greenwich's and Ocwen's wrongful conduct as fiduciaries responsible to protect and maximize the value of the Debtor's collateral and to sell the I/O Strips in a commercially reasonable manner."  (Id. at ¶ 178.)  The Trustee contends that this knowledge may be reasonably inferred from Trickey's concealment of Greenwich's lower valuation of the I/O Strips, his conflict of interest, and the misrepresentations made by him.  (Id. at ¶¶ 163-78.)

A creditor's fiduciary duty to sell collateral in a commercially reasonable manner arises at the time the creditor decides to liquidate and dispose of the collateral and continues until the collateral is sold.  When the fiduciary duty arises, the creditor must take all steps necessary to preserve the value of the collateral in anticipation of the actual sale.  See, e.g., Solfanelli, 203 F.3d at 200 (explaining that every aspect of the sale of collateral must be characterized by avoidance of loss, good faith, and an effective realization).  Here, Greenwich declared a default on the DIP Loan in May 2005.  The Trustee alleges that in early 2006, Greenwich informed him that it intended to foreclose on the I/O Strips and the actual sale took place in June 2006.  (Amended Complaint at ¶¶ 180-81.)  The Trustee may be able to establish, however, that Greenwich formed the intent to liquidate the collateral when the default was declared in May 2005 (while Trickey was still working with the Trustee).  Kost, 1 F.3d at 183 (stating that all reasonable inferences are drawn in favor of the plaintiff).  If so, then the Trustee may be able to establish that Trickey encouraged and substantially assisted Greenwich's breach of fiduciary responsibility even though Trickey did not participate in the actual sale.  (Id. at ¶¶ 163-78.)

Accordingly, the Court concludes that the Trustee has stated a claim for aiding and abetting a breach of fiduciary duty

against Berkshire and Trickey.  The motion to dismiss this count will be denied.

### 2. Civil Conspiracy

Berkshire and Trickey argue that the Trustee has failed to meet the pleading standard for civil conspiracy because there are no allegations that Berkshire and Trickey were involved in stifling competitive bidding and conducting a "sham" auction of the I/O Strips.  (Amended Complaint at ¶ 288(c).)  They further assert that there are no allegations of an agreement between Trickey and the other defendants to conceal the relationship between Trickey and Ocwen.  (Id. at ¶ 288(e).)  See, e.g., Kalmanovitz v. G. Heileman Brewing Co., 595 F. Supp. 1385, 1401 (D. Del. 1984) ("Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient.").

The Trustee responds that the pleading requirements for civil conspiracy have been met.  (Id. at ¶¶ 166, 169, 171, 183, 288.)  See, e.g., Halberstam v. Welch, 705 F.2d 472, 487 (D.C. Cir. 1983)  ("[A] conspirator can be liable even if he neither planned nor knew about the particular overt act that caused injury, so long as the purpose of the act was to advance the overall object of the conspiracy."); McLaughlin v. Copeland, 455

F. Supp. 749, 752 (D. Del. 1978) ("The gravamen of an action in civil conspiracy is not the conspiracy itself but the underlying wrong which would be actionable absent the conspiracy."); Nicolet, Inc. v. Nutt, 525 A.2d 146, 149-50 (Del. 1987) (explaining that a prima facie showing of civil conspiracy requires proof of "(1) [a] confederation or combination of two or more persons; (2) [a]n unlawful act done in furtherance of the conspiracy; and (3) [a]ctual damage.").

In the civil conspiracy count of the Original Complaint, the Trustee alleged:

> 141. Paragraphs 1 through 140 above are incorporated herein by reference, as though set forth in full.
>
> 142. The Defendants conspired with each other, and others, in an effort to perpetrate, facilitate, and aid and abet the frauds and other wrongs alleged herein.
>
> 143. The Defendants undertook substantial overt acts, as aforesaid, in furtherance of the conspiracy alleged herein and are liable for the damage and harm to the Debtor.
>
> 144. As a result of the Defendants' conspiracy, the Debtor suffered the damages previously alleged.

(Original Complaint at ¶¶ 141-44.) The Court found these allegations insufficient to state a claim upon which relief may be granted. In the Amended Complaint, the Trustee incorporates the first 284 paragraphs into the civil conspiracy count and further alleges a number of agreements or objects of conspiracy in the count, including

>  (b) an agreement to waste and convert the Debtor's property and in particular the 13 I/O Strips (all Defendants engaged in this conspiracy from the DIP Financing approval period through today);
>
>  (c) an agreement to stifle competitive bidding and to conduct a sham auction of the 13 I/O Strips (Greenwich, Ocwen, Trickey and Berkshire engaged in this conspiracy beginning in or around the declaration of default in May, 2005 and continuing until the sham auction on June 28, 2006;
>
>  . . .
>
>  (e) an agreement to conceal the Trickey/Ocwen relationship and to mislead the Trustee into engaging Trickey (all Defendants engaged in this conspiracy from the appointment of the Trustee through September, 2005);
>
>  (f) an agreement to conceal the wrongdoing of Ocwen relating to the holdback and breach of the Servicing Agreements (Ocwen, Greenwich, Trickey and Berkshire participated in this conspiracy from the appointment of the Trustee through at least the fall of 2005).

(Amended Complaint at ¶ 288.)

Berkshire and Trickey now argue, however, that the Trustee fails to allege in the civil conspiracy count itself any specific particularized overt act of Berkshire or Trickey in furtherance of the conspiracy. See, e.g., Kalmanovitz, 595 F. Supp. at 1401 (holding that civil conspiracy count must contain particularized details of specific "actions of the alleged conspirators taken to achieve [the object or] purpose" of the conspiracy).

The Court disagrees with the argument of Berkshire and Trickey.  As noted in Part B1 above, the Trustee has alleged in the Amended Complaint a number of specific actions by Berkshire and Trickey, namely that they withheld Greenwich's valuation of

14

the I/O strips from the Trustee, they misrepresented their interest in protecting the unsecured creditors, and they failed to disclose Trickey's conflict of interest. (Amended Complaint at ¶¶ 116, 163-78.) The Court concludes, therefore, that the Amended Complaint contains sufficient factual allegations of specific actions taken by Berkshire and Trickey in furtherance of the alleged conspiracy. Consequently, the Court will deny the motion to dismiss this count.

IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court will deny the Motion to Dismiss filed by Berkshire and Trickey.

An appropriate Order is attached.

Dated: September 7, 2007          BY THE COURT:

_____
Mary F. Walrath
United States Bankruptcy Judge