`IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re ) | Case No.:     05-10203 (MFW) |
| ) | |
| American Business Financial Products, Inc., *et* ) | Chapter 7 |
| *al*, ) | (Jointly Administered) |
| ) | |
| Debtors. ) | |
| ) | |
| ──────────────────── ) | |
| ) | Adv. No. 06-50826 |
| George L. Miller, Trustee, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| - against - ) | |
| ) | |
| Greenwich Capital Financial Products, Inc., ) | |
| Ocwen Loan Servicing, LLC, Wells Fargo ) | |
| Bank, N.A., Law Debenture Trust Company of ) | |
| New York, The Berkshire Group LP, and ) | |
| Michael W. Trickey, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ──────────────────── ) | |
| AND RELATED COUNTERCLAIMS ) | |
| ) | |

## ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT V (DECLARATORY RELIEF) OF GREENWICH CAPITAL FINANCIAL PRODUCTS, INC.'S COUNTERCLAIMS

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (DE Bar No. 2436)
Bruce Grohsgal (DE Bar No. 3583)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
Telephone: 302.652.4100
Email: ljones@pszjlaw.com

KIRKLAND & ELLIS LLP
R. Alexander Pilmer (*pro hac vice*)
David I. Horowitz (*pro hac vice*)
777 South Figueroa Street
Los Angeles, CA 90017
Telephone: 213.680.8400
Email: alexander.pilmer@kirkland.com

JONES DAY
Bennett L. Spiegel (*pro hac vice*)
555 South Flower Street
Los Angeles, CA 90071
Telephone: 213.489.3939
Email: blspiegel@jonesday.com

*Attorneys for Greenwich Capital Financial Products, Inc.*

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

NATURE AND STAGE OF PROCEEDINGS ......................................................2

SUMMARY OF ARGUMENT ..............................................................................3

COUNTER-STATEMENT OF FACTS .................................................................3

I. GREENWICH AND THE DEBTOR ENTER INTO THE DIP
LOAN AGREEMENT; TITLE TO THE RESIDUALS IS
TRANSFERRED TO GREENWICH FOR SECURITY
PURPOSES ONLY.................................................................................3

II. ABFS DEFAULTS; GREENWICH APPLIES RESIDUAL CASH
FLOW TO REDUCE ABFS'S INDEBTEDNESS.................................4

III. GREENWICH DEVELOPS A PLAN TO AUCTION CERTAIN
RESIDUALS AND PROPOSES A SECTION 363 SALE
PROCESS; MILLER INSISTS THAT GREENWICH ACCEPT
TAX LIABILITY ON THE RESIDUALS AS A
PRECONDITION TO ANY 363 SALE. ................................................5

IV. MILLER AVOIDS SUBSTANTIAL TAX LIABILITY
ASSOCIATED WITH THE RESIDUALS. ............................................6

A. Miller Files An IRS Disclosure Statement, But
Purposefully Fails To Disclose All Relevant Information
To The IRS.................................................................................6

B. Miller Justifies His Tax Position By Relying On
Unidentified Google Hits And A Textbook That Does Not
Support His Claim.....................................................................7

C. Miller Represents To The Court That Greenwich, Not
ABFS, Owns The Residuals. .....................................................9

ARGUMENT...........................................................................................................9

I. SUMMARY JUDGMENT STANDARD................................................9

II. MILLER, AS THE DEBTORS' SUCCESSOR, OWNS THE
RESIDUALS FOR ALL PURPOSES. ..................................................10

III. GREENWICH HAS STANDING UNDER THE
DECLARATORY JUDGMENT ACT AND ARTICLE III TO
BRING ITS DECLARATORY RELIEF COUNTERCLAIM. .............11

i

| | A. | Greenwich Has Been Injured-in-Fact Because It Was Prevented From Having The Residuals Sold At A Section 363 Sale And Thereafter Sued. | 12 |
| | B. | Miller's Wrongful Refusal To Accept Ownership Of The Residuals And Subsequent Lawsuit Caused Greenwich's Injury. | 13 |
| | C. | A Determination That Miller Owns The Residuals For All Purposes Will Redress Greenwich's Injury. | 14 |
| IV. | | GREENWICH MAY SEEK DECLARATORY RELIEF UNDER THE DECLARATORY JUDGMENT ACT BECAUSE IT DOES NOT SEEK A DECLARATION REGARDING FEDERAL TAX LIABILITY. | 14 |
| V. | | THE COURT HAS SUBJECT MATTER JURISDICTION OVER GREENWICH'S COUNTERCLAIM. | 16 |
| CONCLUSION | | | 17 |

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aman v. Cort Furniture Rental Corp.,*
   85 F.3d 1074 (3d Cir. 1996)....................................................................................... 9

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)...................................................................................................... 9

*Aqua Bar & Lounge, Inc. v. U.S. Dept. of Treasury I.R.S.,*
   539 F.2d 935 (3d Cir. 1976)...................................................................................... 14

*Bezanson v. U.S., I.R.S. (In re Amoskeag Bank Shares Inc.),*
   215 B.R. 1 (Bankr. D.N.H. 1997) ............................................................................ 15

*Bullock v. Latham,*
   306 F.2d 45 (2d Cir. 1962).......................................................................................... 15

*Burford-Toothaker Tractor Co. v. U.S.,*
   262 F.2d 891 (5th Cir. 1959) ..................................................................................... 10

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)...................................................................................................... 9

*First Am. Nat'l Bank of Nashville v. U.S.,*
   467 F.2d 1098 (6th Cir. 1972) ................................................................................... 10

*First Nat'l Bank in Witchita v. Comm'r,*
   19 B.T.A. 744 (1930)................................................................................................. 10

*Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.,*
   528 U.S. 167 (2000).................................................................................................... 13

*Gleason v. Norwest Mortgage, Inc.,*
   243 F.3d 130 (3d Cir. 2001).......................................................................................... 9

*Grodt & McKay Realty, Inc. v. Comm'r,*
   77 T.C. 1221 (1981).................................................................................................... 10

*Hydrometals, Inc. v. Comm'r,*
   31 T.C.M. 1260 (1972) ............................................................................................... 10

*In re Marcus Hook Dev. Park Inc.,*
   943 F.2d 261 (3d Cir. 1991)........................................................................................ 16

iii

*Indus. Trust Co. v. Comm'r,*
206 F.2d 229 (1st Cir. 1953) ................................................................ 10

*Interfaith Cmty. Org. v. Honeywell Int'l Inc.,*
399 F.3d 248 (3d Cir. 2005) ................................................................ 13

*Josey v. John R. Hollingsworth Corp.,*
996 F.2d 632 (3d Cir. 1993) .................................................................. 9

*Pitt News v. Fisher,*
215 F.3d 354 (3d Cir. 2000) ................................................................ 13

*Pub. Interest Research Group of N.J. v. Powell Duffryn Terminals, Inc.,*
913 F.2d 64 (3d Cir. 1990) .................................................................. 12

*Town & Country Food Co. v. Comm'r,*
51 T.C. 1049 (1969) .......................................................................... 10

*Travelers Cas. and Sur. Co. v. Skinner Engine Co., Inc., (In re Am. Capital Equip., LLC),*
325 B.R. 372 (W.D. Pa. 2005) ............................................................. 16

*U.S. v. Students Challenging Regulatory Agency Procedures (SCRAP),*
412 U.S. 669 n.14 (1973) .................................................................... 12

*United Surgical Steel Co., Inc. v. Comm'r,*
54 T.C. 1215 (1970) .......................................................................... 10

**Statutes**

11 U.S.C. § 363 ......................................................................... passim

11 U.S.C. § 505 ......................................................................... 2, 3, 15

28 U.S.C. § 2201, et seq .............................................................. 14, 15

**Rules**

Federal Rule of Civil Procedure 56 ........................................................ 9

## INTRODUCTION

Before Miller sued Greenwich on a theory that required the Estate to be the owner of the Residuals,[1] Miller swore—under oath, and on three separate occasions—that Greenwich, not the Estate, owned the Residuals and any tax liability resulting from that ownership. First, in tax returns he filed on ABFS's behalf, Miller represented that ABFS owed nothing on substantial Residual cash flow applied to reduce ABFS's debt to Greenwich because Residual-ownership was supposedly transferred to Greenwich as of the Conversion Date. Next, in several Monthly Operating Reports he filed with the Court, Miller stated that Greenwich "holds ownership of the I/O Strips." (*See, e.g.*, Bankr. D.I. 2689, General Notes.) Finally, in sworn testimony before this Court at the Disbursement Motion hearings, Miller testified unequivocally that "None of [the Residuals] are owned by the debtors." (*See* Aug. 14, 2007 Hr'g Tr. (Bankr. D.I. 3973) 54:1-13, 119:13-120:5.)

In a footnote in his Opening Brief, Miller acknowledges the inconsistencies between the allegations in his Amended Complaint and his sworn representations to the IRS, this Court and his constituents. (Trustee's Opening Br. at 6, n.16 ("[T]he Trustee admits that the I/O Strips are the property of the Debtor.").) But to distract the Court from his previous misrepresentations, Miller pretends there is a difference between "legal ownership" of the Residuals and "ownership for the purposes of tax liability." (*Id.*) While that might sometimes be the case, it isn't here. Under governing law, a party like Greenwich that holds collateral for *security purposes only*, does not *own* the collateral for tax purposes. It is not surprising, therefore, that Miller offers no support for his position.

Because Miller cannot demonstrate that there is a distinction between "legal" and "tax" ownership here, Miller relies on red-herring jurisdictional and standing defenses to

---

[1]  Unless otherwise defined, capitalized terms have the meaning ascribed to them in Greenwich's motions for summary judgment. (D.I. 506; D.I. 508; D.I. 620; D.I. 622.)

argue that the Court cannot decide Greenwich's straightforward counterclaim. Miller's defenses, though, are unavailing.

*First*, Greenwich has standing to seek declaratory relief regarding ownership of the Residuals. As described more fully in Greenwich's Opening Brief in Support of its Motion for Summary Judgment on Miller's Breach of Fiduciary Duty claim (D.I. 622), Greenwich's allegedly unreasonable "delay" in liquidating the Residuals was due in large part to Miller's insistence that Greenwich accept the tax liability associated with the Residuals. (*Id.* at 6-7.) A finding that the Estate owned the Residuals for all purposes would further justify the reasonableness of Greenwich's conduct. If the Estate, not Greenwich, owned the Residuals for all purposes, Miller should not have insisted that Greenwich accept tax liability as a precondition to a section 363 sale. *Second*, because Greenwich only seeks a declaration regarding *ownership* of the Residuals, not *liability*, the Declaratory Judgment Act's prohibition on declaratory relief "with respect to Federal taxes" does not apply. And even if Greenwich did seek a declaration "with respect to Federal taxes," the Court could provide relief under Bankruptcy Code section 505. *Third*, this Court has subject matter jurisdiction over Greenwich's counterclaim because the counterclaim is core.

## NATURE AND STAGE OF PROCEEDINGS

On September 13, 2006, Miller sued Greenwich and five other defendants. He filed an Amended Complaint on March 13, 2007, (D.I. 101), asserting twelve claims against Greenwich. Greenwich filed its Answer to the Amended Complaint and Counterclaims on April 15, 2009. (D.I. 345.) Because Miller's frivolous position regarding Residual ownership directly impacts Miller's breach of fiduciary duty claim against Greenwich, Greenwich brought Counterclaim V, requesting a declaration "that until the auction sale on or about June 28, 2006 all of the I/O Strips, and since the auction sale, the remaining I/O Strips, were and always have been property of the Debtor (and Miller as successor to the Debtor) for all purposes, including tax purposes." (*Id.* at ¶ 70.)

## SUMMARY OF ARGUMENT

1.     The Estate has always owned the Residuals for all purposes, including tax purposes. As the Final DIP Order makes clear, ABFS transferred title to the Residuals to Greenwich for security purposes only.

2.     Greenwich has standing to seek a determination that the Estate owns the Residuals because a finding in Greenwich's favor would negate, in part, Miller's breach of fiduciary duty claim.

3.     The Declaratory Judgment Act's prohibition on federal tax determinations does not prevent this Court from considering Greenwich's counterclaim because Greenwich does not seek a declaration regarding tax liability. Instead, Greenwich seeks a determination of ownership of the Residuals. Moreover, even if Greenwich did seek a declaration regarding tax liability, the Court could grant relief under 11 U.S.C. § 505.

4.     Greenwich's counterclaim is a core claim or, at the very least, a related-to claim. Accordingly, this Court has subject matter jurisdiction over it.

## COUNTER-STATEMENT OF FACTS

**I.     GREENWICH AND THE DEBTOR ENTER INTO THE DIP LOAN AGREEMENT; TITLE TO THE RESIDUALS IS TRANSFERRED TO GREENWICH FOR SECURITY PURPOSES ONLY.**

The DIP Loan Agreement and Final DIP Order granted Greenwich a first priority lien on nearly all of the Debtors' assets, including the Residuals. (Final DIP Order at 5-6, ¶ 17.) ABFS owned 20 Residuals, but only 19 served as Greenwich's collateral under the DIP Loan Agreement.[2] To perfect Greenwich's security interest and allow it, when appropriate, to exercise remedies against the Residuals, the 19 Residuals serving as Greenwich's collateral were re-titled in Greenwich's name. (DIP Loan Agreement, ¶ 17 (a)(viii).) Contrary to the Trustee's representations, the parties did not intend for this re-titling to transfer tax ownership of the Residuals to Greenwich. (Trustee's Opening Br. at 3, n.5.) Nor was the re-titling intended to permit the Debtors to treat Greenwich as the

---

[2]     The Residuals were issued out of the following series of ABFS Mortgage Loan Trust securitizations: 1998-3, 1998-4, 1999-1, 1999-2, 1999-3 1999-4, 2000-1, 2000-2, 2000-3, 2000-4, 2001-1, 2001-2, 2001-3, 2001-4, 2002-1, 2002-2, 2002-3, 2002-4, 2003-1 and 2003-2. (Bankr. D.I. 366 Ex. A, Schedule D.) Greenwich had a direct lien on all but the 2003-2 residual. (*Id.*)

tax owner.  Indeed, Paragraph 17(a)(viii) of the Final DIP Order speaks plainly to this issue:

> **Titling of IOS.**  The Agent acknowledges and agrees that, *while certain of the [Residuals] is titled in the name of the Agent, such titling is solely and exclusively for the purpose of conveying to the Agent the DIP Priority Lien in the IOS* and to, among other things, enable to Agent to exercise remedies and realize upon the [Residuals].  The Agent further acknowledges and agrees that *true ownership of the [Residuals] remains with the Debtors for all purposes* and that the [Residuals] remain[] property of the Debtors' estates.

## II. ABFS DEFAULTS; GREENWICH APPLIES RESIDUAL CASH FLOW TO REDUCE ABFS'S INDEBTEDNESS.

By May 2005, ABFS had defaulted under the DIP Loan Agreement.  (Horowitz Decl. Ex. 1 (Dep. Ex. 266).)  On May 17, 2005, the case converted to Chapter 7 and Miller was appointed as Chapter 7 Trustee.  (Bankr. D.I. 831, 833, 837.)  After the case converted, certain Residuals continued to generate cash flow.  (*See, e.g.*, Greenwich Accounting attached as Ex. M to Pl.'s Am. Compl. (D.I. 101).)  In accordance with its obligations under the DIP Loan Agreement, Greenwich applied the Residual cash flow to reduce ABFS's indebtedness to Greenwich.  (*See id.*)  The Trustee and his advisors were fully aware of this fact.  (*See* Aug. 13, 2007 Hr'g Tr. (Bankr D.I. 3972) 52:22-53:3; Miller Dep. 346:16-23[3].)

Likewise, after Greenwich sold 11 of the Residuals in June 28, 2006, it applied the amounts remaining after expenses to further reduce the Debtors' obligations to Greenwich.  (Greenwich Accounting (D.I. 101, Ex. M) at page marked "Sale of Residual Certificates in ABFS Mortgage Loan Trusts Closing Statement" dated June 30, 2006.)  All in all, the Residuals cash flowed at least $43 million from the Conversion Date.  (*Id.* at page marked "ABFS Residual Cash Flow Collection Summary".)

---

[3]    All deposition excerpts cited herein are attached to the Horowitz Declaration.

## III. GREENWICH DEVELOPS A PLAN TO AUCTION CERTAIN RESIDUALS AND PROPOSES A SECTION 363 SALE PROCESS; MILLER INSISTS THAT GREENWICH ACCEPT TAX LIABILITY ON THE RESIDUALS AS A PRECONDITION TO ANY 363 SALE.[4]

In early 2006, Greenwich was considering a sale of certain Residuals. (Obaditch Dep. 214:4-15.) Because Greenwich and Obsidian believed that a court-approved section 363 sale process would best maximize value, Greenwich approached Miller to seek his support. (Obaditch Dep. 214:4-15; Padrick Dep. 52:8-53:12, 95:16-17, 200:5-9.) At that time, Miller was concerned about finding a source of funds to pay any tax Jiabilities associated with the Estate's ownership of the Residuals. (Miller Dep. 141:4-12; Carroll Dep. 105:15-21; Padrick Dep. 182:10-24.)

To help address Miller's tax concerns, Greenwich proposed an arrangement whereby Obsidian (who had previously been analyzing the tax liability associated with the Residuals) would share its tax advice with Miller in exchange for Miller's agreement to a section 363 sale. (Obaditch Dep. 214:9-15.) Miller, though, refused to cooperate or accept tax liability. Instead, he informed Greenwich that he would need a "significant payment"—somewhere between a million and $2 million—plus enough additional funds carved out of the sale proceeds to pay all tax liability on the Residuals—before he would agree to a section 363 sale. (Padrick Dep. 54:4-14; 182:3-7.) Alternatively, he demanded that Greenwich accept the tax liability. (Carroll Dep. 104:13-105:7.) Miller's demand that either: (i) Greenwich provide him with an excessive payment to cover the Estate's tax liability on the Residuals; or (ii) that Greenwich assume tax liability for assets it did not own, prevented the parties from reaching an agreement on a section 363 sale. (Padrick Dep. 181:16-182:7.)

---

[4] Greenwich will not repeat in this brief all of the facts demonstrating the reasonableness of its sale of 11 Residuals on June 28, 2006. Those facts are described in detail in Greenwich's Opening Brief in Support of its Motion for Partial Summary Judgment on Claim Five. (D.I. 622.) Greenwich will, however, describe how Miller's insistence that Greenwich assume tax liability for the Residuals prevented the parties from agreeing on a section 363 sale process.

## IV.   MILLER AVOIDS SUBSTANTIAL TAX LIABILITY ASSOCIATED WITH THE RESIDUALS.

### A.   Miller Files An IRS Disclosure Statement, But Purposefully Fails To Disclose All Relevant Information To The IRS.

Unable to get Greenwich to pay an excessive carve-out or accept significant tax liability on property it held only as security, Miller decided to solve his tax problem another way: by filing a fraudulent tax return.

As part of the Debtors' tax return for the year ending June 30, 2005, Miller filed a Disclosure Statement on IRS Form 8275. (Trustee's Opening Br., Ex. B.)[5] Accountants from Miller Coffey Tate LLP assisted Miller with preparing ABFS's tax returns as well as the Form 8275. (Coffey Dep. 126:11-17; Homony Dep. 47:18-49:3.) Miller, however, made the ultimate decision about what to disclose in the Form 8275. (Miller Dep. 344:14-345:6.)

In the Form 8275, Miller stated under penalty of perjury that ABFS owed no taxes whatsoever on the cash flow received from the Residuals because ownership of the Residuals was purportedly transferred to Greenwich when the bankruptcy case converted to Chapter 7. (Trustee's Opening Br., Ex. B; Miller Dep. 343:14-16 ("I disclosed to the Internal Revenue Service who I, you know, believe owned the IO Strips.").) In other words, as Miller's tax expert confirms, Miller told the IRS that the Residuals were effectively *sold* to Greenwich as of the Conversion Date. (Polsky[6] Dep. 135:15-21 ("[T]he whole context of a disclosure statement says this was a purported secured lending transaction. They acknowledge that explicitly and treated it as a lending transaction until

---

[5]   The Disclosure Statement was attached to the Debtors' 2005 Tax Return, signed by Miller on March 15, 2006, which includes the following statement above the signature line: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete.  Declaration of preparer (other than taxpayer) is based on all information of which prepared has any knowledge." (Horowitz Decl., Ex. 2 (Excerpt of 2005 Return).)

[6]   Gregg Polsky is a professor at Florida State University College of Law retained by Miller to issue a purported rebuttal report to the Expert Report of David Nirenberg.

the conversion date, at which time they treated it as a sale."); *Id.* 136:3-5 ( "[T]he debtor treated the residual interest as being effectively transferred on the conversion date.").)

To support his characterization of the DIP Loan as a sale instead of a loan, Miller represented to the IRS that (1) the Residuals were re-titled in Greenwich's name as a condition precedent to the DIP Loan; (2) Greenwich "received" and "retained" the cash flow from the Residuals; and (3)"[s]ince the Conversation Date Greenwich received all the benefits of the interest-only strips." (Trustee's Opening Br., Ex. B.; *see also* Polsky Dep. 135:15-21; Miller Dep. 354:11-16; Homony Dep. 68:20-69:1.)

These representations, however, were either false or materially misleading and incomplete. Accordingly, while the IRS may have taken "no exception" to Miller's position "that Greenwich, not the Debtor, was the tax-owner of the I/O Strips" (*see* Trustee's Opening Br. at 5), it did not have the information it needed to make a proper determination. For example, although Miller represented that the Residuals were titled in Greenwich's name, he specifically *did not* disclose that such re-titling was for *security purposes only*. (*Id.*, Ex. B.) This was intentional—Miller's agents have confirmed that they were aware of this provision when they filed ABFS's tax return. (Homony Dep. 65:17-67:8; Coffey Dep. 137:24-140:7.) Next, although Miller represented that Greenwich "received and *retained*" all Residual cash flows and "received *all the benefits*" of the Residuals since the Conversion Date, he *did not* disclose that the Residual cash flows were applied to reduce ABFS's indebtedness. This, too, was intentional— Miller's partner Daniel Coffey acknowledged that the Debtors benefited from Residual cash flows because those cash flows were applied to reduce the Debtors' obligations to Greenwich. (Aug. 13, 2007 Hr'g Tr. 52:22-53:3.)

**B.    Miller Justifies His Tax Position By Relying On Unidentified Google Hits And A Textbook That Does Not Support His Claim.**

When asked at his deposition to identify the bases for his tax position, Miller testified that he relied on the advice of others at Miller Coffey Tate LLP and also

conducted independent research. (Miller Dep. 345:3-14.) William Homony of Miller Coffey Tate LLP prepared a draft of Miller's Form 8275 and researched issues regarding tax ownership of the Residuals. (Homony Dep. 48:23-49:3, 50:24-51:2.) To arrive at his tax ownership conclusion, Mr. Homony apparently relied on a textbook (likely *Federal Income Taxation of Securitization Transactions*) and unidentified information on the IRS website. (*Id.* 108:7-109:16.) Mr. Homony could not identify the specific information he relied on because he did not memorialize any of his research. (*Id.* 67:11-68:7.) Mr. Homony admitted, however, that his research failed to produce *any* support for the proposition that a secured lender *owns* the collateral it holds as security for tax purposes. (*Id.* 70:12-21.). Mr. Homony also testified that he destroyed all prior drafts of the IRS Form 8275, including drafts he discussed with Miller. (*Id.* 54:8-56:7, 63:12-64:3.)

Miller's "independent research," in turn, consisted of: (i) reading a tax treatise ("a big, thick, blue book"); (ii) getting "his CCH tax package online"; and (iii) "probably Googl[ing] a few things." (Miller Dep. 345:14-346:5.) We do not know what Miller reviewed in his "CCH tax package," or what he googled, but Miller's counsel later identified Miller's "big, thick, blue book" as *Federal Income Taxation of Securitization Transactions* by James M. Peaslee and David Z. Nirenberg. (Miller Dep. 345:14-22; Horowitz Decl., Ex. 3 (Email from Joseph Dougher dated July 23, 2008).) This treatise, however, does not support Miller's position. In fact, Greenwich retained Mr. Nirenberg, the book's co-author, as an expert in this litigation to opine on tax-ownership. After reviewing all the facts and circumstances, Mr. Nirenberg concluded that: (1) ABFS owned the Residuals for tax purposes; (2) Miller had no reasonable basis for his tax position; and (3) Miller failed to disclose all relevant facts to the IRS on his Form 8275. (Horowitz Decl., Ex. 4 (Expert Report of David Z. Nirenberg) at 4.) Mr. Nirenberg also stated that his book does *not* support Miller's conclusion that Greenwich owned the Residuals for tax purposes. (*Id.* at 51 n.69 ("This treatise does not support the conclusion that Greenwich was the tax owner of the IO Securities.").)

8

**C.    Miller Represents To The Court That Greenwich, Not ABFS, Owns The Residuals.**

Miller also represented to the Court and his constituents that Greenwich, not ABFS, owned the Residuals in several Monthly Operating Reports he filed on January 27, 2006. (Bankr. D.I. 2689, 2691-2709.) In those reports, which Miller likewise signed under penalty of perjury, Miller stated:

> *[I]t is the Trustee's position,* as of this filing, *that Greenwich Capital holds ownership of the I/O Strips* and any related tax liability resulting from said ownership.

*(See, e.g.,* Bankr. D.I. 2689, General Notes (emphasis added).) Likewise, at the Disbursement Motion hearings, Miller testified under oath that "None of [the Residuals] are owned by the debtors." (Aug. 14, 2007 H'rg Tr. (Bankr. D.I. 3973) 54:12-13, 119:25-120:5.)

**ARGUMENT**

**I.    SUMMARY JUDGMENT STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment must be denied unless the moving party demonstrates that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 317 (1986); *see also Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 637 (3d Cir. 1993) ("Summary judgment is precluded if a disputed fact exists which might affect the outcome of the suit under the controlling substantive law."). The court must construe the facts, and draw reasonable inferences in the light most favorable to the party opposing summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Gleason v. Norwest Mortgage, Inc.,* 243 F.3d 130, 138 (3d Cir. 2001) (holding that at the summary judgment stage a court must "view the facts as asserted by the nonmoving party as true if they are supported by affidavits or other admissible evidentiary material"). Any doubt as to the existence of a genuine issue for trial must be resolved in the non-moving party's favor. *See Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1080-81 (3d Cir. 1996).

## II. MILLER, AS THE DEBTORS' SUCCESSOR, OWNS THE RESIDUALS FOR ALL PURPOSES.

Miller offers no support for his claim that ABFS could somehow be the legal owner, but not the "tax owner" of the Residuals here. Nor could he. First, as set forth more fully in the Nirenberg Report, the law is clear that a lender holding collateral as security does not *own* the collateral for tax purposes. (*See* Nirenberg Report at 42-46); *see also Indus. Trust Co. v. Comm'r*, 206 F.2d 229, 232 (1st Cir. 1953). And it is no matter that the Residuals were re-titled in Greenwich's name. Title does not indicate ownership when transferred to facilitate a secured lending transaction. (*See* Nirenberg Report at 34-36); *First Nat'l Bank in Witchita v. Comm'r*, 19 B.T.A. 744, 749 (1930); *First Am. Nat'l Bank of Nashville v. United States*, 467 F.2d 1098, 1100 (6th Cir. 1972).

Second, ABFS, not Greenwich, bore the economic burdens and benefits relating to the Residuals. This factor is critical in determining tax ownership. (*See* Nirenberg Report at 23-29); *Grodt & McKay Realty, Inc. v. Comm'r*, 77 T.C. 1221, 1237 (1981); *United Surgical Steel Co., Inc. v. Comm'r*, 54 T.C. 1215, 1229 (1970). When there is a loan, the transferee of an asset securing a loan should only be considered the tax owner when the transferee can benefit from the asset's appreciation and bears the risk of loss on the loan. *Hydrometals, Inc. v. Comm'r*, 31 T.C.M. 1260, 1260 (1972); *Burford-Toothaker Tractor Co. v. United States*, 262 F.2d 891, 895 (5th Cir. 1959); *Town & Country Food Co. v. Comm'r*, 51 T.C. 1049, 1057 (1969).

Here, the Debtors, not Greenwich, benefited from the Residuals because the cash flows Greenwich received were applied to reduce the Debtors' obligations to Greenwich. (Nirenberg Report at 17, n.15, 19.) Further, the Debtors, not Greenwich, stood to gain from any appreciation in Residual asset value. Indeed, Greenwich was only entitled to collect Residual cash flow until the Debtors' obligations to Greenwich were paid in full. (*Id.* at 28-29.) Had the Residuals appreciated in value or cash flowed more than was expected, the Debtors, not Greenwich, stood to gain from that appreciation once the

Debtors' obligations to Greenwich were indefeasibly satisfied. Similarly, the Debtors bore the burdens of asset depreciation—namely, the risk of loss or default on the Residuals—because the Debtors were required to repay the entire principal amount of the DIP Loan, regardless of the cash flow generated by the Residuals. (*Id*. at 26.)

In the end, there can be no legitimate dispute that the Debtors, and Miller as successor, owned the Residuals for all purposes, including tax purposes.

## III. GREENWICH HAS STANDING UNDER THE DECLARATORY JUDGMENT ACT AND ARTICLE III TO BRING ITS DECLARATORY RELIEF COUNTERCLAIM.

Because he cannot dispute that ABFS owned the Residuals for all purposes, Miller argues that Greenwich lacks standing to seek such a determination. Miller's standing argument, however, relies on a mischaracterization of Greenwich's requested relief.

Greenwich's counterclaim does not, as Miller suggests, seek a declaration regarding tax *liability*. To the contrary, Greenwich only seeks a declaration regarding *ownership*. Greenwich's Counterclaim speaks for itself: "Greenwich seeks a judicial determination that until the auction sale on or about June 28, 2006 all of the I/O Strips, and since the auction sale, the remaining I/O Strips, were and always have been property of the Debtor (and Miller as successor to the Debtor) for all purposes, including tax purposes." (D.I. 345, ¶ 70.)

Once we expose Miller's false premise, his defenses collapse. The question of which party *owned* the Residuals goes to the heart of Miller's breach of fiduciary duty claim. As described above and in Greenwich's Opening Brief regarding that claim, Greenwich and Obsidian believed that pursuing a section 363 sale with Miller's support would best maximize the sale value of the Residuals. (D.I. 622 at 6-7.) But even though a section 363 sale would have been in the Estate's best interest, Miller would not conduct such a sale unless Greenwich either: (i) paid him an excessive carve-out from the sale

11

proceeds to satisfy the Debtors' tax obligations; or (ii) accepted tax liability for the Residuals. (*Id.*) Miller's obsession with tax ownership and unreasonable insistence that Greenwich accept tax liability it did not owe prevented the parties from reaching an agreement on a section 363 sale. (*Id.*) This, in turn, delayed the sale while the parties were negotiating unsuccessfully.

But although Miller himself delayed the Residual sale and prevented the parties from using a potentially superior sales method (a court-approved section 363 sale), Miller now claims that Greenwich unreasonably delayed selling the Residuals and conducted a commercially unreasonable auction. To demonstrate the reasonableness of its conduct in negotiations and the unreasonableness of Miller's conduct, Greenwich sought declaratory relief regarding Residual ownership, including ownership for tax purposes. A finding that Miller did, in fact, own the Residuals for all purposes will further justify the reasonableness of Greenwich's conduct with respect to the Residuals and demonstrate that Miller's own unreasonable conduct caused the very delay in the Residual sale he complains of. Such a finding would negate elements of Miller's breach of fiduciary duty claim while supporting Greenwich's affirmative defenses that Miller was contributorily negligent and failed to mitigate his own alleged damages in connection with the alleged "delay." Accordingly, Greenwich has standing to assert its Counterclaim.

### A.   Greenwich Has Been Injured-in-Fact Because It Was Prevented From Having The Residuals Sold At A Section 363 Sale And Thereafter Sued.

An injury "need not be large" to meet Article III's injury-in-fact prong. Indeed, an "identifiable trifle will suffice." *Pub. Interest Research Group of N.J. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 71 (3d Cir. 1990) (citing *U.S. v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973)). Moreover, an injury need not be economic; a party suffers injury when it is prevented from acting in a specified way by another's misconduct. *Id.* (holding that a plaintiff was

12

injured by a polluted body of water because he would boat on the water if it were not polluted); *see also Interfaith Cmty. Org. v. Honeywell Int'l Inc.*, 399 F.3d 248, 256 (3d Cir. 2005) (holding that plaintiffs were injured by a polluted river because they would enjoy walking by the river if it were not polluted).

Here, Miller argues that Greenwich has not been injured because it has not incurred any tax liability resulting from Miller's tax return position. But that is not the point. Greenwich does not dispute that it has not incurred any tax liability. Liability, however, is not the issue here. Instead, Greenwich has been injured because it is being sued for allegedly delaying the sale of the Residuals where a substantial portion of this alleged "delay" was attributable to the time Greenwich spent negotiating a section 363 sale process with Miller wherein Miller refused to agree to a sale unless Greenwich accepted tax liability for the Residuals. If the Residuals were sold in a section 363 sale, Greenwich could have sold the Residuals at an earlier time, in a court-approved sale, and would not have been subjected to allegations that it delayed the Residual sale or sold the Residuals in a commercially unreasonable manner.

## B. Miller's Wrongful Refusal To Accept Ownership Of The Residuals And Subsequent Lawsuit Caused Greenwich's Injury.

To establish causation, a plaintiff must only show that its alleged injury is "fairly traceable" to the defendant's conduct. *Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Even indirect causation will suffice. *See Pitt News v. Fisher*, 215 F.3d 354, 360-61 (3d Cir. 2000) (holding that the causation prong was met where a statute prohibiting alcohol producers from advertising in school newspapers indirectly caused economic harm to a college newspaper). Here, Greenwich's inability to have the Residuals sold in a section 363 sale is "fairly traceable" to Miller's unreasonable insistence that Greenwich accept ownership of the Residuals for tax purposes. The section 363 negotiations broke down because of Miller's insistence that Greenwich pay taxes on assets it held only as collateral. Had Miller accepted, as he

13

should have, tax ownership of the Residuals, the Residuals would have been sold earlier than they were in a court-approved section 363 sale.

## C. A Determination That Miller Owns The Residuals For All Purposes Will Redress Greenwich's Injury.

A determination that Miller owned the Residuals for all purposes, including tax purposes, will also redress Greenwich's injury because it will negate, in part, Miller's claim that Greenwich unreasonably delayed the sale of the Residuals. If Miller owned the Residuals for all purposes, including tax purposes, his insistence that Greenwich accept ownership as a precondition to a section 363 sale was unreasonable. Miller, therefore, would have no one but himself to blame for an allegedly delayed Residual sale.[7]

## IV. GREENWICH MAY SEEK DECLARATORY RELIEF UNDER THE DECLARATORY JUDGMENT ACT BECAUSE IT DOES NOT SEEK A DECLARATION REGARDING FEDERAL TAX LIABILITY.

Contrary to Miller's assertion, Greenwich does not seek declaratory relief regarding "its own unrealized and unspecified tax liability." (*See* Trustee's Opening Br. at 6.) Nor does Greenwich seek to "collaterally attack" the merits of the IRS's tax assessment. (*See id.* at 1.) Instead, Greenwich simply seeks a declaration of the obvious: that as between Greenwich and Miller, Miller owns the Residuals for all purposes.

The Declaratory Judgment Act's prohibition does not apply in these circumstances. *See* 28 U.S.C. § 2201 *et seq.*; *see also Aqua Bar & Lounge, Inc. v. U.S. Dept. of Treasury I.R.S.*, 539 F.2d 935, 940 (3d Cir. 1976) (holding that the federal tax exception to the Declaratory Judgment Act does not apply when the plaintiff does not contest the merits of an underlying tax assessment); *Bullock v. Latham*, 306 F.2d 45, 46-

---

[7]    Miller's mootness argument is just as inapposite as his standing argument because it assumes that Greenwich seeks a declaration regarding tax *liability*, rather than ownership. Further, the IRS *did not* and *could not* have "effectively determined that the Debtor is not the tax-owner of the I/O Strips" because, as noted above, Miller made material misrepresentations and omissions in the Debtors' tax returns. The Court is not precluded from determining who owned the Residuals simply because Miller has not paid taxes on the assets.

14

48 (2d Cir. 1962) (holding that where the sole issue is *who owned* property the federal tax

exception to the Declaratory Judgment Act does not apply, even if tax liability would

result from the ownership determination). Thus, because Greenwich only seeks a

declaration regarding ownership, rather than a declaration assessing tax liability, this

Court has jurisdiction to decide Greenwich's counterclaim.

Moreover, even if Greenwich were seeking a declaration regarding Miller's tax

*liability*, this Court could hear the claim because it implicates the Declaratory Judgment

Act's 11 U.S.C. § 505 exception. 11 U.S.C. § 505; *see also Bezanson v. U.S., I.R.S. (In*

*re Amoskeag Bank Shares Inc.)*, 215 B.R. 1, 3-4 (Bankr. D.N.H. 1997) (*aff'd in part and*

*rev'd on other grounds by Quarles v. U.S., I.R.S. (In re Amoskeag Bank Shares Inc.)*, 239

B.R. 653 (D.N.H. 1998) (holding that creditor had standing to intervene in adversary

proceeding concerning debtors' tax liability and that court had subject matter jurisdiction

under 11 U.S.C. § 505). Under 11 U.S.C. § 505, "the court may determine the amount or

legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or

not previously assessed, whether or not paid, and whether or not contested before and

adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C.

§ 505(a)(1).

Here, although the IRS did not initially assess tax liability against the Estate for

post-conversion taxes owing on the Residuals, the IRS is not, as Miller asserts,

"foreclosed as a matter of law" from assessing tax liability. (Trustee's Opening Br. at 5.)

Indeed, as even Miller's tax expert concedes, a trustee is not discharged from tax liability

when his tax return is "fraudulent, or contains a material misrepresentation." 11 U.S.C.

§ 505(b); (Polsky Dep. 121:9-122:11.) As described above, Miller mislead the IRS in his

Form 8275 Disclosure Statement by misstating certain material facts and failing to

disclose others, including that Greenwich took title to the Residuals for security purposes

only. This Court would be well within its jurisdiction to determine that Miller's tax

return was "fraudulent" or that it "contained a material misrepresentation" that would affect the assessment of taxes against the Estate.

## V. THE COURT HAS SUBJECT MATTER JURISDICTION OVER GREENWICH'S COUNTERCLAIM.

Miller's argument that this Court lacks subject matter jurisdiction over Greenwich's counterclaim also fails. As a threshold matter, Miller has already admitted in his Answer to Greenwich's counterclaim that this Court has core jurisdiction. (*See* D.I. 345 and 367, ¶ 3.) That should end the inquiry. But even if Miller's admission was not dispositive, Greenwich's counterclaim falls within this Court's core jurisdiction because it concerns a dispute over ownership of the Debtors' property that has arisen in a bankruptcy case. *See Travelers Cas. and Sur. Co. v. Skinner Engine Co., Inc., (In re Am. Capital Equip., LLC)*, 325 B.R. 372, 376-78 (W.D. Pa. 2005) (holding that a non-debtor's declaratory relief claim in an adversary proceeding was core because it was "inextricably tied to the debtor's actions . . . [during] its bankruptcy case.").[8]

Moreover, even if Greenwich's counterclaim is non-core, the Court can still decide it because it is *related to* a bankruptcy proceeding. *In re Marcus Hook Dev. Park Inc.*, 943 F.2d 261, 264 (3d Cir. 1991). A claim is related to a bankruptcy proceeding if it "could conceivably have an[] effect on the administration" of a Debtors' estate. *Id.* The Third Circuit has held that "conceivable" is the "key word in this test" and "certainty, or even likelihood, is not a requirement." *Id.* Here, whether the Debtors or Greenwich own the Residuals is directly related to the administration of the Debtors' estate. A determination that Miller's tax position was bogus directly affects the merits of his breach of fiduciary duty claim and, likewise, could affect the Debtors' tax liability to the extent the Court determines that Miller's tax return was fraudulent or contained a

---

8    Again, Miller's argument that Greenwich lacks jurisdiction because it seeks the Court to "rule on Greenwich's tax liability" fails because Greenwich does not seek a determination of its liability.

material misrepresentation. Accordingly, this Court has subject matter jurisdiction over Greenwich's counterclaim.

## **CONCLUSION**

For the foregoing reasons, Greenwich respectfully requests that the Court deny Miller's motion for summary judgment.

DATED: November 2, 2009

Respectfully submitted,

KIRKLAND & ELLIS LLP


R. Alexander Pilmer (*pro hac vice*)
David I. Horowitz (*pro hac vice*)
777 South Figueroa Street
Los Angeles, CA 90017
Telephone:    213.680.8400
Facsimile:    213.680.8500

JONES DAY
Bennett L. Spiegel (*pro hac vice*)
555 South Flower Street
Los Angeles, CA  90071
Telephone:    213.489.3939
Facsimile:    213.243.2539

        and

PACHULSKI STANG ZIEHL & JONES LLP


Laura Davis Jones (Bar No. 2436)
Bruce Grohsgal (Bar No. 3583)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:    302.652.4100
Facsimile:    302.652.4400

Attorneys for Greenwich Capital Financial Products, Inc.

17