# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| AMERICAN BUSINESS FINANCIAL | ) | Case No. 05-10203 |
| SERVICES, INC., et al., | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| ——————————————————— | ) | |
| | ) | |
| GEORGE L. MILLER, TRUSTEE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 06-50826 |
| | ) | |
| GREENWICH CAPITAL FINANCIAL | ) | |
| PRODUCTS, INC., OCWEN LOAN | ) | |
| SERVICING, LLC, WELLS FARGO | ) | |
| BANK, N.A., LAW DEBENTURE | ) | |
| TRUST COMPANY OF NEW YORK, | ) | |
| THE BERKSHIRE GROUP, LP, | ) | |
| MICHAEL W. TRICKEY, | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————————— | ) | |

### OPINION[1]

Before the Court is the motion for summary judgment filed by
the Defendants, the Berkshire Group, LP ("Berkshire") and Michael
W. Trickey ("Trickey"), on all counts of the Trustee's Amended
Complaint.  The crux of the issues presented is whether the
relationship between the Defendants and the Trustee rose to a
level of a fiduciary.  For the reasons set forth below the Court
finds it did not and consequently will grant the motion.

---

[1]  This Opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Rule 7052 of the
Federal Rules of Bankruptcy Procedure.

## I.  BACKGROUND

American Business Financial Services, Inc. (the "Debtor") and its subsidiaries operated as a financial services organization that originated and serviced mortgage loans primarily to credit-impaired borrowers.  The Debtor raised capital by selling pools of these loans to special purpose entities created for securitization purposes (the "SPEs").  The SPEs then sold the pools of loans to mortgage loan trusts (the "Trusts").  To raise cash to purchase the loans, the Trusts sold notes or trust certificates secured by the Trusts' assets to investors.

In exchange for the loans sold to the SPEs, the Debtor received cash and certificates of beneficial interests in the Trusts that entitled it to receive certain cash flows generated by the Trusts (the "I/O Strips").  The Debtor also retained the right to service the loans for a fee.

On January 21, 2005, the Debtor and certain of its direct and indirect subsidiaries filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtor filed a motion seeking debtor-in-possession financing, pursuant to which Greenwich Capital Financial Products, Inc. ("Greenwich") agreed to provide a senior, secured, super-priority $500 million credit facility (the "DIP Facility") to the Debtor.  The DIP Facility was secured by substantially all of the Debtor's assets,

including the I/O Strips which had a reported book value of $391 million.[2]  On March 10, 2005, the Court entered a Final Order approving the DIP Facility.  Pursuant to the DIP Loan Agreement, the Debtor was required to sell its fee-producing future servicing rights.

Less than a month later, the Debtor publicly announced that a reorganization was not possible.  On that same day, the Court approved the sale of the Debtor's servicing rights to Ocwen Loan Servicing, LLC ("Ocwen") for approximately $21 million.

Shortly thereafter Greenwich declared a default on the DIP Facility.  As a result, the bankruptcy case was converted to chapter 7 and George L. Miller was appointed trustee (the "Trustee").  The Trustee and Greenwich subsequently entered into a Conditional Consent and Undertaking (the "Consent Agreement") whereby the Trustee agreed to sell certain whole loan assets of the Debtor (which were Greenwich's collateral) pursuant to section 363 of the Bankruptcy Code.  The Court approved the Consent Agreement and the sale of the whole loan assets to Credit-Based Asset Servicing and Securitization, LLC for approximately $29 million.  Under the Consent Agreement, the Trustee received $300,000 of the sale proceeds for the benefit of the Debtor's estate and agreed to release Greenwich from any and

---

[2]  The I/O Strips represented the largest single asset of the Debtor.

all claims.  Greenwich subsequently foreclosed on certain I/O Strips which it sold by public auction (the "Auction") pursuant to Article 9 of the Uniform Commercial Code to Ocwen for $5.1 million.

On September 13, 2006, the Trustee filed a Complaint against Greenwich, Ocwen, Trickey, Berkshire, and the Indenture Trustees ("ITs").  The Trustee asserted the following claims against Berkshire and Trickey: (1) fraudulent transfer avoidance and recovery under the Bankruptcy Code, (2) fraudulent transfer avoidance and recovery under state law, (3) breach of fiduciary duty, (4) aiding and abetting a breach of fiduciary duty, (5) common law fraud, (6) civil conspiracy, (7) objections to and subordination of their claims, and (8) declaratory relief.

A motion to dismiss the Complaint was filed by the Defendants.  After briefing, the Court dismissed the following counts against Berkshire and Trickey:  aiding and abetting a breach of fiduciary duty, fraudulent transfer, common law fraud, civil conspiracy, and declaratory relief (as it related to the dismissed claims).  Miller v. Greenwich Capital Fin. Prods., Inc., et al. (In re Am. Bus. Fin. Servs., Inc.), 360 B.R. 74, 84 (Bankr. D. Del. 2007).  The Trustee, however, was granted leave to amend the Complaint.  Id.

The Trustee filed an Amended Complaint, and Berkshire and Trickey filed a motion to dismiss the aiding and abetting a

4

breach of fiduciary duty and the civil conspiracy counts against them. The Court denied that motion. <u>Miller v. Greenwich Capital Fin. Prods., Inc., et al. (In re Am. Bus. Fin. Servs., Inc.)</u>, 375 B.R. 112, 120 (Bankr. D. Del. 2007).

After conducting discovery, Berkshire and Trickey filed a motion for summary judgment on the remaining claims. The Trustee opposed the motion. Briefing on the motion is complete. The matter is now ripe for decision.

II. <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this adversary proceeding. 28 U.S.C. §§ 1334(b) & 157(b)(1). Many of the counts are core and the parties raised no objection to the Court rendering a final judgment in this proceeding. 28 U.S.C. § 157(b)(2)(A), (B), (E), (H), & (O).

The Supreme Court recently held, however, that bankruptcy courts lack the constitutional authority as Article I courts to enter final judgments on state law counterclaims even if they are core proceedings. <u>Stern v. Marshall</u>, 131 S. Ct. 2594 (2011). In <u>Stern</u>, the Court held that its decision is a "narrow one" which focuses on "whether the action at issue stems from the bankruptcy itself." <u>Id</u>. at 2618. Here, the claims before this Court arose after ABFS filed bankruptcy and relate entirely to matters integral to the bankruptcy case. If not for the bankruptcy,

these claims would never exist.  Therefore, this Court concludes
that it has jurisdiction to hear this adversary proceeding as it
directly stems from the bankruptcy case.  <u>See</u> <u>In re Salander</u>
<u>O'Reilly Galleries</u>, No. 07-30005, 2011 WL 2837494, at *7 (Bankr.
S.D.N.Y. July 18, 2011) ("Nowhere in . . . <u>Stern</u> does the Supreme
Court rule that the bankruptcy court may not rule with respect to
state law . . . when deciding a matter directly and conclusively
related to the bankruptcy.").


III. <u>DISCUSSION</u>

  A.  <u>Standard of Review</u>

  The Court should grant a motion for summary judgment "if the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c).[3]

  In considering a motion for summary judgment under Rule 56,
the court must view the inferences from the record in the light
most favorable to the non-moving party.  <u>Anderson v. Liberty</u>
<u>Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>Hollinger v. Wagner Mining</u>
<u>Equip. Co.</u>, 667 F.2d 402, 405 (3d Cir. 1981).  If there does not
appear to be a genuine issue as to any material fact and on such

---

[3]  Rule 7056 of the Federal Rules of Bankruptcy Procedure
incorporates Rule 56 of the Federal Rules of Civil Procedure in
adversary proceedings.

facts the movant is entitled to judgment as a matter of law, then the court shall enter judgment in the movant's favor.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Carlson v. Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 413 (3d Cir. 1990).

The movant bears the burden of establishing that no genuine issue of material fact exists.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1986); Integrated Water Res., Inc. v. Shaw Envtl., Inc. (In re IT Grp., Inc.), 377 B.R. 471, 475 (Bankr. D. Del. 2007).  A fact is material when it could "affect the outcome of the suit." Anderson, 477 U.S. at 248.

Once the moving party has established a prima facie case in its favor, the party opposing summary judgment must go beyond the pleadings and point to specific facts showing there is a genuine issue of fact for trial.  See, e.g., id. at 252; Matsushita, 475 U.S. at 585-86; Michaels v. New Jersey, 222 F.3d 118, 121 (3d Cir. 2000); Robeson Indus. Corp. v. Hartford Accident & Indem. Co., 178 F.3d 160, 164 (3d Cir. 1999).  If the moving party offers only speculation and conclusory allegations in support of its motion, its burden of proof is not satisfied.  See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

B.  <u>Breach of Fiduciary Duty</u>

Delaware law requires a plaintiff in a breach of fiduciary duty claim to prove by a preponderance of the evidence that (1) a fiduciary duty existed between the parties and (2) the fiduciary breached that duty.  Dynamis Therapeutics, Inc. v. Alberto-Culver Int'l., Inc., No. 09-773-GMS, 2010 WL 3834405, at *3 (D. Del. Sept. 24, 2010).

The Trustee contends that his relationship with Berkshire and Trickey began on June 6 or 7, 2005, the day a confidentiality agreement was signed by them and the Trustee.  However, this confidentiality agreement is nothing more than a boilerplate form signed by at least nine other parties who did not have a fiduciary relationship with the Trustee.  (D.I. # 611 at Ex. M.)  See e.g., City Solutions v. Clear Channel Commc'ns., Inc., 201 F. Supp. 2d 1048, 1049 (N.D. Cal. 2002) ("[P]arties to a confidentiality agreement do not stand in a fiduciary relationship as to each other simply by virtue of the agreement.").  Therefore, the Court finds that the confidentiality agreement alone does not establish that there was a fiduciary relationship between the two parties.

Of further significance, the Trustee never filed a retention application under section 327 of the Bankruptcy Code to hire Trickey or Berkshire as the estate's agent.  11 U.S.C. 327(a) (2006) ([T]he trustee, with the court's approval, may employ one

or more . . . other professional persons . . . to represent or assist the trustee in carrying out the trustee's duties under this title.") (emphasis added).  <u>See, e.g.</u>, <u>In re Arkansas Co., Inc.</u>, 798 F.2d 645, 648 (3d Cir. 1986) (emphasizing that prior court approval of the retention of professionals is critical "as a means of ensuring 'that the court may know the type of individual who is engaged in the proceeding, their integrity, their experience in connection with work of this type, as well as their competency concerning the same.'") (<u>quoting</u> <u>In re Hydrocarbon Chemicals, Inc.</u>, 411 F.2d 203, 205 (3d Cir. 1969)).

The Trustee asserts, nonetheless, that Trickey agreed to act on behalf of the Trustee and the estate to manage the I/O Strips and to negotiate with Ocwen for an incentive agreement to enhance their value.  The Trustee avers that he budgeted $300,000 for Trickey's services and actually paid him $68,000 with Greenwich's encouragement and approval, which he contends evidences his retention of Berkshire and Trickey on behalf of the estate.

The Court finds no support for the Trustee's assertions.  As Berkshire and Trickey note, and the Trustee admits, the $68,000 paid to Berkshire and Trickey was for work done by them for the ITs (not the Trustee) from April 29 through June 5, 2005, the period before the Trustee alleges his relationship with Berkshire and Trickey arose.

The Trustee also acknowledged in his deposition that he was aware that Trickey was working for the ITs. The Trustee knew that Trickey had signed a confidentiality and consulting agreement with the ITs and, as a result, that Trickey was withholding work product from the estate. (D.I. # 611 at Ex. H, 857-58.)

The Trustee cites an email exchange between Susan Storey, a representative of the ITs, and a partner of the Trustee, William Homony, to support his contention that Berkshire and Trickey worked for the Trustee. (D.I. # 672 at Ex. 7.) An examination of the email, however, actually supports the Defendants' argument that their involvement was limited to being retained by the ITs. In the first email of the exchange, Storey requested that the Trustee pay Trickey directly despite the fact that the Trustee typically paid the ITs' fees and expenses through counsel for the ITs.[4] (D.I. # 672 at Ex. 7.)

Berkshire and Trickey, therefore, assert that their relationship with the Trustee did not even give rise to a contractual relationship, much less one imposing fiduciary duties. They argue that in the absence of any "engagement" by the Trustee, there can be no basis for alleging the existence of

---

[4] "Attached is Mike Trickey's Invoice. Historically the Debtor has paid Pryor Cashman for all fees of the Indenture Trustees. If you can pay Mike directly that would be great . . . ." (D.I. # 672 at Ex. 7.)

a fiduciary duty.  Berkshire and Trickey note that Delaware courts are very cautious in expanding situations in which they will impose fiduciary duties.  <u>See, e.g.</u>, <u>N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla</u>, 930 A.2d 92, 99 (Del. 2007) ("Delaware courts have traditionally been reluctant to expand existing fiduciary duties.") (footnote omitted).

The Court agrees that Delaware courts are reluctant to create fiduciary duties in commercial relationships.  <u>See</u> <u>Wal-Mart Stores, Inc. v. AIG Life Ins. Co.</u>, 901 A.2d 106 (Del. 2006). To find a fiduciary duty, the relationship must be a dependency or "a condition of superiority of one of the parties over the other."  <u>Cheese Shop Int'l, Inc. v. Steele</u>, 303 A.2d 689, 690 (Del. Ch. 1973), <u>rev'd on other grounds</u>, 311 A.2d 870 (Del. 1973).

Acknowledging that he had no written retention agreement with Berkshire or Trickey, the Trustee nonetheless asserts that an agency relationship was created orally or by the parties' conduct.  Restatement (Second) of Agency § 26 cmt. c (1958) (stating that an agency relationship can be inferred through words or actions of the principal which indicates that the agent is working for the best interest of the principal).

Even in principal/agent relationships, however, an "agent" may only be a fiduciary when the agent is authorized to  "alter the legal relations between the principal and third persons . . .

." <u>Walmart</u>, 901 A.2d at 113 (citing Restatement (Second) Agency
§ 12 (1958)). Here, the Court cannot find anything satisfying
this standard. The Trustee admitted in his deposition that
Trickey never had the authority to act on the Trustee's behalf.
(D.I. # 611 at Ex. H, 835) ("I wouldn't say it was authority to
act on my behalf. It was allowing him access, unfettered access
to all of ABFS financial reports in the possession of Ocwen.").

Additionally, the Trustee had confidential conversations
with Ocwen which were pertinent to Trickey's responsibilities,
but which the Trustee chose not to disclose to Trickey. (D.I. #
611 at Ex. H, 801.) Consequently, the Court finds that the
Trustee's own conduct does not evidence that Berkshire and
Trickey had an agency or other fiduciary relationship with the
Trustee.

For the aforementioned reasons, the Court concludes that the
Trustee has failed to carry his burden of establishing that
Berkshire and Trickey had a fiduciary duty to him. Therefore,
the Court will grant the Defendants' motion for summary judgment
on this count.

C.   <u>Aiding and Abetting a Breach of Fiduciary Duty</u>

Under Delaware law, there are four elements of a claim for
aiding and abetting a breach of fiduciary duty: "(1) the
existence of a fiduciary relationship, (2) the fiduciary breached
its duty, (3) a defendant, who is not a fiduciary, knowingly

12

participated in a breach, and (4) damages to the plaintiff resulted from the concerted action of the fiduciary and the non-fiduciary." <u>Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.</u>, 817 A.2d 160, 172 (Del. 2002) (footnote omitted).

In his Complaint, the Trustee asserts that Greenwich had a fiduciary duty to dispose of the Debtor's collateral in a commercially reasonable manner. The Trustee contends that Greenwich sat on the I/O Strips watching their value plummet, while collecting the fees associated with the defaults. Additionally, the Trustee argues that Trickey knew of Greenwich's misleading over-valuation of the I/O Strips and did not inform the estate of his valuation, which was substantially lower. Finally, the Trustee contends that Trickey never managed Ocwen to increase the value of the I/O Strips.

Berkshire and Trickey claim that the first prong cannot be met because Greenwich did not breach any fiduciary duty at the time of their involvement in the case. They then assail the third prong of the analysis by arguing that Trickey did not act with knowledge of any breach by Greenwich, because he was acting as a consultant for the ITs. They argue that there is no evidence that Trickey had any involvement in the June 2006 Auction held by Greenwich or that Berkshire and Trickey offered any support to Greenwich to breach its fiduciary duty, if one actually existed.

### 1. Existence of a fiduciary duty

If Greenwich did not have a fiduciary duty to the estate at the time of Trickey's involvement, then the first prong of aiding and abetting a breach of fiduciary duty is not satisfied. See In re Am. Bus. Fin. Servs., 375 B.R. at 118 (in denying Berkshire's and Trickey's motion to dismiss the Amended Complaint, the Court stated that "[t]he Trustee may be able to establish, however, that Greenwich formed the intent to liquidate the collateral when the default was declared in May 2005.").

In this case, the Court finds that the Trustee has established no facts suggesting that Greenwich formed an intent to liquidate the I/O Strips before Trickey's departure in mid-September 2005.[5] Without any facts evidencing that Greenwich intended to liquidate the I/O Strips during the period they were involved, Berkshire and Trickey could not aid and abet a breach of fiduciary duty.

### 2. Knowingly participated

The Trustee also offers no evidence to show that Trickey or Berkshire had any contact with Greenwich, other than as an agent working for the ITs, or that they knowingly participated or assisted in any scheme to cause the I/O Strips to lose their

---

[5] On the contrary the Trustee acknowledges, in the Plaintiff's Answering Brief in Opposition to the Motions for Partial Summary Judgment of Defendant Greenwich Capital Financial Product, Inc., that Greenwich did not have any intention to sell the I/O Strips before September 2005. (D.I. # 528 at 126-27.)

value.  Additionally, the Trustee was aware that Trickey's work-product including the valuation of the I/O Strips was confidential information between the ITs and Trickey.  The Trustee has not provided any evidence that Berkshire and Trickey shared that work product or otherwise knowingly assisted Greenwich in any capacity to defraud the estate.

For the aforementioned reasons the Court will grant the motion for summary judgment filed by Berkshire and Trickey on the aiding and abetting a breach of fiduciary duty claim.

D.    <u>Fraudulent Transfers</u>

In order to have a successful fraudulent transfer claim the Trustee must be able to show that (1) there was a transfer, (2) for less than a reasonable equivalent value, and (3) the debtor was insolvent.  <u>In re Plassein Int'l. Corp.</u>, No. 05-51472, 2008 WL 1990315 at *5 (Bankr. D. Del. May 5, 2008); Del. Code Ann. tit. 6 §§ 1304-1305 (1996).

An essential element of a claim for fraudulent transfer, under the Bankruptcy Code or Delaware law, is proof that the transferor did not receive equivalent value in exchange for the payment to the transferee.  <u>Plassein</u>, 2008 WL 1990315, at *5; <u>In re DVI, Inc.</u>, No. 03-12656 (MFW), 2008 WL 4239120, at *9 (Bankr. D. Del. Sept. 16, 2008).

The Trustee argues that the estate did not receive equivalent value in return for payments made for Trickey's

15

services. The Trustee asserts that Trickey did nothing more than go through the motions, yet collected $68,000 from the estate.

Berkshire and Trickey respond that they performed work for the ITs which was invoiced and approved by counsel for the ITs. The ITs as secured creditors were entitled to be reimbursed for their expenses by the estate under the cash collateral budget[6] approved by the Court pursuant to section 363 of the Bankruptcy Code. See In re Questex Media Grp., Inc., No. 09-13423 (MFW), 2009 WL 7215696, at *8 (Bankr. D. Del. Oct. 6, 2009). Further, Berkshire and Trickey provided the Trustee with detailed time records to support their invoices which were never challenged.

The Court finds that the Trustee's contention is not supported by the facts. The value the estate received was the ITs' consent to the use of cash collateral, which in turn was conditioned on payment of the fees incurred by the ITs. Berkshire and Trickey performed services for, and submitted invoices to, the ITs. (D.I. # 611 at Ex. N.) Additionally, by the Trustee's own admission, the $68,000 paid directly by the estate to Trickey was for services rendered for the ITs prior to the estate's alleged engagement of Berkshire and Trickey.[7] (D.I.

---

[6] The Trustee acknowledged in his deposition that the Defendants were paid from the cash collateral budget. (D.I. # 611 at Ex. H, 923-24.)

[7] The Trustee alleges that the confidentiality agreement signed on June 6, 2005, was his engagement contract with Berkshire and Trickey.

# 611 at Ex. P, 5.)

As a result, the Court concludes that the Trustee has failed
to carry his burden of establishing a fraudulent transfer.
Therefore, the Court will grant the Defendants' motion for
summary judgment on this count.

E.   Aiding and Abetting a Fraudulent Transfer

Aiding and abetting a fraudulent transfer is not a valid
claim under state or federal law where a trustee is bringing the
claim.   See In re The Brown Sch., 386 B.R. 37, 52 (Bankr. D. Del.
2008) ("Delaware Courts have held that such a cause of action
[aiding and abetting a fraudulent transfer] does not exist.");
Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P, 906 A.2d 168,
203 (Del. Ch. 2006).   Furthermore, the Trustee does not offer any
evidence to support this claim.

For the abovementioned reason, the Court concludes that the
Trustee has failed to establish a claim that Berkshire and
Trickey aided and abetted a fraudulent transfer.   Therefore, the
Court will grant the motion for summary judgment on this count.

F.   Common Law Fraud

In order to establish a common law fraud claim, a plaintiff
must demonstrate each of the following elements: (1) a false
representation made by the defendant; (2) the defendant knew or
believed that the representation was false, or was made with
reckless disregard of the truth; (3) the defendant intended to

17

induce the plaintiff to act or refrain from acting on the basis of the misrepresentation; (4) the plaintiff did, in fact, act or refrain from acting on the basis of the misrepresentation; and (5) the plaintiff suffered damages as a result of such reliance. Tillman v. Pepsi Bottling Grp., Inc., 538 F. Supp. 2d 754, 783 (D. Del. 2008); Stephenson v. Capano Dev., Inc., 462 A.2d 1069, 1074 (Del. 1983).

In his Complaint, the Trustee does not allege that Berkshire and Trickey made any affirmative misrepresentation, but rather alleges that they remained silent in the face of a duty to speak. Stephenson, 462 A.2d at 1074 ("[F]raud does not consist merely of overt misrepresentations. It may also occur through deliberate concealment of material facts, or by silence in the face of a duty to speak."). According to the Trustee, Berkshire and Trickey failed to disclose their valuation of the I/O Strips, as well as Trickey's relationship as chief investment advisor to Ocwen.

There must be a duty to disclose, however, for there to be a claim of fraud for failure to disclose. See Chiarella v. United States, 445 U.S. 222, 227-28 (1980). Because the relationship between Trickey and the Trustee did not rise to the level of a fiduciary, Trickey argues that he had no duty to disclose his valuation or relationship with Ocwen to the Trustee. Trickey made the ITs, with whom he had a fiduciary relationship, aware of

18

his relationship with Ocwen. (D.I. # 611 at Ex. D, 84-5.) He testified that the ITs investigated the relationship and determined it was not a conflict. (Id.)

Because there was no fiduciary relationship between Trickey and the Trustee, the Court does not find any evidence to support the Trustee's claim that Trickey had a duty to disclose his relationship with Ocwen to the Trustee.

In addition, Berkshire and Trickey argue that the ITs through their consulting and confidentiality agreement controlled the information that Berkshire and Trickey were permitted to disclose to the Trustee. (D.I. # 611 at Ex. G.) Thus, they were not free to disclose their valuation of the I/O Strips to the Trustee. Berkshire and Trickey claim that once the ITs allowed Trickey to release the valuation to the Trustee, however, the Trustee ignored it.[8]

The Court agrees with Berkshire and Trickey. The Trustee through his own admission was aware of the Defendants' engagement by the ITs.[9] This relationship, the Trustee knew, mandated that

_____

[8] The Trustee was asked why he did not review the email he received from Trickey which contained his analysis of the I/O Strips. He responded, "I don't read every e-mail that is sent to me. I just wouldn't have enough time in the day." (D.I. # 611 at Ex. H, 864.)

[9] The Trustee in his deposition acknowledged that the Defendants had a confidentiality agreement with the ITs, which did not allow Trickey to identify the source of his valuation information or the work product behind the I/O Strips' valuation. (D.I. # 611 at Ex. H, 858.)

19

Berkshire and Trickey withhold work product from the estate. Further, even when the Trustee received Trickey's valuation, in September 2005, he did not review it. (D.I. # 611 at Ex. H, 864.) Consequently, the Court will grant the Defendants' motion for summary judgment on this count.

G. <u>Civil Conspiracy</u>

Under Delaware law, in order to establish a civil conspiracy claim a plaintiff must show "(1) [a] confederation or combination of two or more persons; (2) [a]n unlawful act committed in furtherance of the conspiracy; and (3) [a]ctual damages" to the plaintiff caused by the conspiracy. <u>Nicolet, Inc. v. Nutt</u>, 525 A.2d 146, 149-50 (Del. 1987) (citation omitted).

The Trustee alleges that Berkshire and Trickey conspired with Greenwich and Ocwen to harm the Debtor by allowing Greenwich to pursue its run-off scheme, allowing Ocwen to diminish the I/O Strips' value through poor servicing, which in turn allowed Ocwen to purchase the assets at a significant discount at the June 28, 2006, Auction.

Berkshire and Trickey argue that there is no evidence of an unlawful agreement among any of the parties. Without any evidence of such an agreement or actions that constitute an agreement there cannot be a conspiracy. <u>See, e.g.</u>, <u>Encite LLC v. Soni</u>, No. 2476-CC, 2008 WL 2973015, at *11 (Del. Ch. Aug. 1, 2008) (holding that without "specific conduct" or "a reasonable

20

inference of assistance or encouragement" civil conspiracy

allegations are insufficiently plead).  Further, Berkshire and

Trickey argue that they committed no unlawful act simply because,

as the Trustee contends, they failed to disclose the I/O Strips'

valuation.

As noted above, the work product Trickey withheld — the I/O

Strips' valuation — was confidential information between Trickey

and the ITs.  Additionally, the Court finds no evidence that an

agreement between Greenwich, Ocwen, and Berkshire and Trickey

existed.  Thus, the Court finds that there is no evidence that

Trickey committed an unlawful act in combination with Greenwich

and Ocwen, by withholding the I/O Strips' valuation.  <u>See</u> <u>Smiley</u>

<u>v. Daimler Chrysler</u>, 538 F. Supp. 2d 711, 718 (D. Del. 2008)

(stating that civil conspiracy cannot stand alone, "[i]t is not

the conspiracy itself, but rather the underlying wrong that must

be actionable . . . .")

For the above reasons, the Court concludes that the Trustee

has failed to carry his burden of establishing a claim for civil

conspiracy.  Therefore, the Court will grant the Berkshire and

Trickey motion for summary judgment on this count.

    H.   <u>Objection and Subordination of Claims</u>

For an equitable subordination claim there must be a showing

of three elements: (1) engagement in some type of inequitable

conduct; (2) the misconduct resulted in injury to the creditors

or created an unfair advantage to the defendant; and (3) the equitable subordination of the claim must be consistent with the provisions of the Bankruptcy Code. See, e.g., United States v. Noland, 517 U.S. 535, 538-39 (1996); In re Mobile Steel Co., 563 F.2d 692, 700 (5th Cir. 1977).

The Trustee argues that the actions of Trickey — in failing to disclose his relationship with Ocwen and the valuation of the I/O Strips — warrants the subordination of his claim and the disgorgement of the fees paid to him by the Trustee. Cf. In re eToys, Inc., 331 B.R. 176, 193 (Bankr. D. Del. 2005) (ordering disgorgement of fees where attorney had an undisclosed conflict of interest).

Berkshire and Trickey contend that they never worked for the Trustee and have never filed any claims against the estate in the bankruptcy case. See In re World Health Alts., Inc., 385 B.R. 576, 597 (Bankr. D. Del. 2008) (dismissing an equitable subordination claim because the defendant did not file a claim against the estate).

Here, Berkshire and Trickey had a valid agreement to perform services for the ITs. Additionally, the Trustee knew there was a confidentiality agreement that did not allow Trickey to disclose his work product to the Trustee. Furthermore, the $68,000 paid by the estate to Berkshire and Trickey was for services rendered to the ITs not for any alleged services to the estate. Under the

cash collateral agreement approved by the Court, the fees of the ITs were to be paid by the estate. Therefore, the evidence does not show any inequitable conduct by Berkshire or Trickey or any other basis for disgorgement of these fees. Consequently, the Court will grant summary judgment to Berkshire and Trickey on this count.

       I.   <u>Declaratory Relief</u>

Because the Court finds that Trickey and Berkshire are entitled to summary judgment on all the substantive counts, the Court will also grant summary judgment on the declaratory judgment claim as well.

IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant the motion for summary judgment filed by Berkshire and Trickey on all claims.

An appropriate order is attached.

Dated: July 28, 2011         BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge