**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| AMERICAN BUSINESS FINANCIAL | ) | Case No. 05-10203 (MFW) |
| SERVICES, INC., et al., | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| GEORGE L. MILLER, TRUSTEE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 06-50826 (MFW) |
| | ) | |
| OCWEN LOAN SERVICING, LLC, | ) | |
| WELLS FARGO BANK, N.A., | ) | |
| LAW DEBENTURE TRUST COMPANY | ) | |
| OF NEW YORK, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

### **OPINION**[1]

Before the Court are the Motions for Partial Summary
Judgment filed by Defendant, Ocwen Loan Servicing, LLC ("Ocwen"),
on the Trustee's Amended Complaint and by the Trustee on
counterclaims asserted by Ocwen.  For the reasons set forth
below, the Court will grant Ocwen's Motion and deny the Trustee's
Motion.

---

[1] This Opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Rule 7052 of the
Federal Rules of Bankruptcy Procedure.

I.    BACKGROUND

American Business Financial Services, Inc., and its subsidiaries (collectively, the "Debtors") operated as a financial services organization that originated and serviced mortgage loans primarily to credit-impaired borrowers.  The Debtors raised capital by selling pools of these loans to special purpose entities created for securitization purposes (the "SPEs").  The SPEs then sold the pools of loans to mortgage loan trusts (the "Trusts").  To raise cash to purchase the loans, the Trusts sold notes or trust certificates secured by the Trusts' assets to investors.

In exchange for the loans sold to the SPEs, the Debtors received cash and certificates of beneficial interests in the Trusts that entitled them to receive certain cash flows generated by the Trusts after investors were repaid (the "I/O Strips").  The Debtors also retained the right to service the loans for a fee.

On January 21, 2005, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors filed a motion seeking debtor-in-possession financing, pursuant to which Greenwich agreed to provide the Debtors with a senior, secured, super-priority $500 million credit facility (the "DIP Loan").

2

Shortly thereafter the Court approved the sale of the
Debtors' future servicing rights to Ocwen and on April 13, 2005,
the Debtors, through their subsidiary entity American Business
Credit, Inc. ("ABC"), executed the Servicing Rights Transfer
Agreement (the "SRTA").  On May 1, 2005, Ocwen separately
purchased for approximately $28 million the right to receive
payment for advances the Debtors represented it had made on
behalf of the Securitization Trusts but had not yet recovered
(the "Unrecovered Advances") for approximately $28 million (the
"Purchase Price").  (D.I. 575.)

In connection with the sale of the Unrecovered Advances, the
Debtors and Ocwen entered into an Escrow Agreement whereby Ocwen
put 10% of the purchase price or $2,808,654.20 (the "Holdback")
in escrow for forty-five days.  The Holdback was to reimburse or
indemnify Ocwen for any invalid Unrecovered Advances and any
costs associated with collecting the Unrecovered Advances, with
any remaining balance due to the Debtors.  (Trustee Ex. 1 §
2.02(a); Delgado Decl. ¶ 25.)

On April 4, 2005, the Debtors publicly announced that a
reorganization was not possible and that they intended to file a
liquidating plan.  On May 13, 2005, Greenwich declared a default
on the DIP Loan, which entitled it to relief from the stay to
foreclose on its collateral.  As a result, the bankruptcy case
was converted to chapter 7 and George L. Miller was appointed

trustee (the "Trustee").  Greenwich subsequently foreclosed on some of the I/O Strips which it sold to Ocwen for $5.1 million in June 2006 by public auction pursuant to Article 9 of the Uniform Commercial Code.

In June 2005, Ocwen requested an extension of the escrow period from the Trustee because Ocwen lacked the information necessary to verify the validity and collectability of the Unrecovered Advances.  The Trustee agreed to a thirty-day extension.  As consideration for the extension, Ocwen released $1,150,000 of the Holdback to the Trustee and Ocwen kept $50,531 for certain expenses and reimbursements incurred by it in connection with the Unrecovered Advances.  Approximately $1,600,000 of the Holdback remained in Ocwen's escrow.  At that time, Ocwen did not believe the Unrecovered Advances would exceed the remaining Holdback.  (Delgado Decl. ¶ 29.)

In July 2005, the Trustee granted Ocwen another thirty-day extension.  Ocwen did not release any additional portion of the remaining Holdback to the Trustee because Ocwen had not yet completed its final reconciliation of the Unrecovered Advances. (Trustee Ex. 6 at 169-170.)

The SRTA specified that Ocwen was to remit to the Debtors on a monthly basis all prepayment penalties collected by it relating to the Mortgage Loans, as well as any late fees collected within the first ninety days after the transfer of servicing rights

(collectively, the "Prepayment Penalties"). (Trustee Ex. 1 §
5.05(a).) In June 2005, Ocwen forwarded the Prepayment Penalties
it had received thus far to the Trustee. On July 21, 2005,
however, Ocwen informed the Trustee that it was withholding
further Prepayment Penalties until it could determine the
validity of the Unrecovered Advances. (D.I. 631 Ex. J.)

On January 19, 2006, Greenwich, the DIP lender, requested
that Ocwen forward all Prepayment Penalty amounts owed to the
Debtors directly to Greenwich, which had a security interest in
all the Debtors' assets. (D.I. 631 Ex. K.) Ocwen provided
Greenwich with data on the amount of Prepayment Penalties Ocwen
had retained. Ocwen and Greenwich agreed that Ocwen would keep
$826,964 of the Prepayment Penalties as additional security for
its claim relating to the Unrecovered Advances. Ocwen remitted
the remainder of the Prepayment Penalties, $1,584,148.62, to
Greenwich. (Trustee Ex. 27.)

On September 13, 2006, the Trustee filed a Complaint against
Greenwich, Ocwen, the Indenture Trustees for the collateralized
noteholders (the "ITs"), and others.[2] The Trustee asserted the
following claims against Ocwen: (1) turnover, (2) avoidance of

_____

[2] The Court has granted motions for summary judgment in
favor of Greenwich, Trickey, and Berkshire. <u>Miller v. Greenwich
Capital Fin. Prods., Inc, et al. (In re Am. Bus. Fin. Servs.,
Inc.)</u>, 471 B.R. 354 (Bankr. D. Del. 2012); <u>Miller v. Greenwich
Capital Fin. Prods., Inc., et al. (In re Am. Bus. Fin. Servs.,
Inc.)</u>, 457 B.R. 314 (Bankr. D. Del. 2011).

fraudulent transfers under the Bankruptcy Code and state law, (3) request for accounting, (4) breach of fiduciary duty, (5) aiding and abetting a breach of fiduciary duty, (6) breach of contract, (7) common law fraud, (8) civil conspiracy, (9) conversion, (10) objections to and subordination of Ocwen's claims, and (11) declaratory relief.  Ocwen filed a motion for partial summary judgment on the fraud, conspiracy, breach of fiduciary duty, and fraudulent transfer claims, along with the related counts for accounting, subordination, and declaratory judgment.  The Trustee filed a motion for partial summary judgment on Ocwen's indemnification, fraud, negligent misrepresentation, and unjust enrichment counterclaims.  The issues have been fully briefed and the matter is now ripe for decision.


II.  <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this adversary proceeding.  28 U.S.C. §§ 1334(b) & 157(b)(1).  Many of the counts are core and the parties have raised no objection to the Court rendering a final judgment in this proceeding on all counts.  28 U.S.C. § 157(b)(2)(A), (B), (E), (H), & (O).

In <u>Stern v. Marshall</u>, however, the Supreme Court ruled that bankruptcy courts lack the constitutional authority to decide matters relating to state law counterclaims.  131 S. Ct. 2594, 2620 (2011).  The Supreme Court held that the bankruptcy court's

power depends on "whether the action at issue stems from the bankruptcy itself." Id. at 2618.  In this case, the claims asserted by the Trustee and Ocwen (although based in part on state law) relate to the conduct of the parties during this bankruptcy case.  Therefore, the Court concludes that it has the constitutional authority to enter a final judgment on all claims because they "relate entirely to matters integral to the bankruptcy case." Am. Bus. Fin. Servs., 457 B.R. at 319.  See also In re Salander O'Reilly Galleries, 453 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) ("Nowhere in . . . Stern does the Supreme Court rule that the bankruptcy court may not rule with respect to state law . . . when deciding a matter directly and conclusively related to the bankruptcy.").

III. DISCUSSION

    A.   Standard of Review

The Court should grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[3]

In considering a motion for summary judgment under Rule 56,

---

[3]  Rule 7056 of the Federal Rules of Bankruptcy Procedure incorporates Rule 56 of the Federal Rules of Civil Procedure in adversary proceedings.

the Court must view the inferences from the record in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hollinger v. Wagner Mining Equip. Co., 667 F.2d 402, 405 (3d Cir. 1981).  If there does not appear to be a genuine issue as to any material fact and on such facts the movant is entitled to judgment as a matter of law, however, the Court must enter judgment in the movant's favor.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Carlson v. Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 413 (3d Cir. 1990).

The movant bears the burden of establishing that no genuine issue of material fact exists.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1986); Integrated Water Res., Inc. v. Shaw Envtl., Inc. (In re IT Grp., Inc.), 377 B.R. 471, 475 (Bankr. D. Del. 2007).  A fact is material when it could "affect the outcome of the suit." Anderson, 477 U.S. at 248.

Once the moving party has established its prima facie case, the party opposing summary judgment must go beyond the pleadings and point to specific facts showing there is a genuine issue of fact for trial.  See, e.g., id. at 252; Matsushita, 475 U.S. at 585-86; Michaels v. New Jersey, 222 F.3d 118, 121 (3d Cir. 2000); Robeson Indus. Corp. v. Hartford Accident & Indem. Co., 178 F.3d 160, 164 (3d Cir. 1999).  If the moving party offers only

8

speculation and conclusory allegations in support of its motion,
its burden of proof is not satisfied.  See Ridgewood Bd. of Educ.
v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

    B.  Standing

As a threshold matter, Ocwen argues that the Trustee lacks
standing to assert any claims in the Amended Complaint arising
from losses related to Ocwen's servicing of the I/O Strips.
Ocwen argues that the Debtors are merely an investor in the trust
which owned the I/O Strips and all rights to sue for damages
arising from reduced cash flows from trust property belongs to
the ITs.  (Miller Decl. Ex. B § 2.01.)  Ocwen further argues that
the Amended Sale and Servicing Agreements ("SSAs") executed as
part of the servicing rights transfer contain "no recourse"
clauses which bar any suit by certificateholders (such as the
Debtors) against the servicer.[4]  (D.I. 630 Ex. D at § 11.09.)
Therefore, Ocwen argues that the Trustee has no right to sue
Ocwen for any decrease in value based upon alleged servicing
failure.

Moreover, Ocwen contends that the Trustee has no standing to
sue under a third-party beneficiary theory based upon the
"successors and assigns" clause of the SSAs or PSAs.  While that

---

[4] As part of the transfer of servicing rights, each of the
18 individual trusts had a separate Amended Pooling and Servicing
Agreement ("PSA") or SSA executed on May 1, 2005, with 7 of the
trusts having PSAs and the other 11 having SSAs.  (Miller Decl.
¶¶ 9-10.)

clause provides a general statement that a certificateholder can claim the "benefit" of the servicing agreement, there is a specific clause identifying third-party beneficiaries which does not include certificateholders.  (Am. Compl. Ex. P §§ 11.10 & 11.13; (Miller Decl. Ex. B § 10.10.)  Applying New York law, Ocwen argues that the Court must resolve any inconsistency in the contract terms in favor of the more specific term, in this case, the third-party beneficiary clause which does not include the Debtors.  See Isaacs v. Westchester Wood Works, Inc., 278 A.D.2d 184, 185 (N.Y. App. Div. 2000); Aquirre v. City of New York, 214 A.D.2d 692, 693 (N.Y. App. Div. 1995).

The Trustee responds that he has standing based upon the Debtors' status as a direct party to the SRTA.  The Trustee notes that Ocwen's standing arguments are based solely upon the Debtors' status as a certificateholder, rather than the clear relationship between the Debtors and Ocwen as direct parties to the SRTA.  The Trustee contends that his Complaint is based on Ocwen's breach of its "responsibility [of] servicing each Mortgage Loan in accordance with each related [SSA and PSA]" under the SRTA.  (Trustee Ex. 1 § 2.01.)  Further, the Trustee argues that the language Ocwen relies upon to assert that the Debtors have assigned all rights to sue for servicing breaches under the SSAs to the ITs actually is an assignment by the depositor, Prudential Securities, not the Debtors.  (Miller Decl.

10

Ex. B § 2.01.)

The Court concludes that the Trustee has standing to assert his claims against Ocwen.  Ocwen and the Debtors were direct parties to the SRTA and therefore, the Trustee has standing to sue Ocwen for breach of that agreement.  Further, the Court concludes that the Debtors did not assign their right to sue to the ITs under the SSAa or PSAs.  Thus, the Trustee retains the right to sue Ocwen for servicing breaches under those agreements as well.

    C.  <u>Prior Opinion</u>

The Court has previously addressed the Trustee's fraudulent transfer, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraud, conspiracy, and conversion claims in its opinion granting Greenwich's motion for summary judgment.  <u>Miller v. Greenwich Capital Fin. Prods., Inc., (In re Am. Bus. Fin. Servs., Inc.)</u>, 471 B.R. 354 (Bankr. D. Del. 2012).  Specifically, the Court found that Greenwich sold the I/O Strips to Ocwen in a commercially reasonable sale.  <u>Id.</u> at 377.  The Court found no evidence of a conspiracy among the Debtors' fiduciaries, Greenwich, Ocwen, and Trickey to harm the estate.  Id. at 380. The Court found that no fraud was committed by the parties in the alleged concealment of Trickey's relationship with Ocwen.  <u>Id.</u> at 372-73.  Finally, the Court found that there was no evidence of any breach of fiduciary duty or aiding and abetting a breach of

fiduciary duty.  Id. at 377-78.

The Trustee has presented no additional evidence to support these claims against Ocwen.  Therefore, Ocwen's motion for summary judgment with regard to these claims will be granted.  To the extent that the Trustee's claims for an accounting, subordination, and declaratory judgment rely on these claims, the Court will grant summary judgment on those claims as well.

D.   Conversion Claim

Ocwen contends that the Trustee's conversion claim relating to the Holdback and the Prepayment Penalties is unsupportable. Because the Trustee never had control over the funds, Ocwen asserts that he can have no conversion claim based solely on Ocwen's alleged obligation to pay him money.  Fantozzi v. Axsys Techs., Inc., No. 07 Civ. 02667, 2008 WL 4866054,at *9-10 (S.D.N.Y. Nov. 6, 2008) (dismissing the Plaintiff's conversion action for failure to establish past control of the funds in question); Selinger Enters., Inc. v. Cassuto, 50 A.D.3d 766, 768 (N.Y. App. Div. 2008) ("The mere right to payment cannot be the basis for a cause of action alleging conversion . . . .").

The Trustee responds that he does not have to prove control to sustain his conversion claim for the Holdback and Prepayment Penalties, but need prove only ownership and a right to immediate possession of tangible funds.  Ehrlich v. Howe, 848 F. Supp. 482, 492 (S.D.N.Y. 1994) ("An action for conversion of money is

12

insufficient as a matter of law unless it is alleged that the money converted was in specific tangible funds of which claimant was the owner and entitled to immediate possession.").

The Court finds that the facts do not support the Trustee's conversion claim.  While the Trustee is correct that proving ownership and control is an alternate way to support his conversion claim, the Court finds that he has failed to show control, ownership, or an immediate right to possession of the funds in question at the time of the alleged conversion.  It was Ocwen's funds which were deposited into the escrow account and at that time the Debtors had no ownership of, or right to possess, those funds.  Although there is still a material issue of fact as to whether Ocwen owes the Trustee any portion of the Holdback, an obligation to pay a claim is not sufficient to support a claim for conversion.  Selinger, 50 A.D.3d at 768.  Similarly, the Prepayment Penalties were paid directly to Ocwen which only had an obligation to remit them to the Debtors.  At no time were those funds owned or controlled by the Debtors.  While Ocwen may owe these funds to the Trustee, that does not support a conversion claim.  The Court will therefore deny the Trustee's claim for conversion of the Holdback and Prepayment Penalties.

    E.   Ocwen's Counterclaims

        1.   Turnover

Ocwen seeks summary judgment on its turnover claim for

13

payments mistakenly made to the Trustee after entering into the SRTA.  Section 4.04 of the SRTA provides that, following the servicing transfer, the Debtors were to pay Ocwen any funds associated with the Mortgage Loans which were mistakenly remitted to the Debtors rather than Ocwen.  (Trustee Ex. 1 § 4.04.)  After Ocwen began servicing the Mortgage Loans, the Debtors received over two hundred payments totaling $210,940.19 relating to the Mortgage Loans (the "Misdirected Payments").  Ocwen provided the Trustee with a list of the Misdirected Payments it was owed with the loan number, check or wire number, date, payment amount, amount applied, and the name of the Securitization Trust that owned the Mortgage Loan.  (Faris Decl. Ex. A.)

The Trustee does not dispute that he currently holds funds mistakenly remitted to the Debtors.  However, the Trustee contends that Ocwen has failed to provide sufficient supporting documentation of the money owed to it, providing only its own self-generated list of Misdirected Payments and affidavit to show it holds the servicing rights to those loans.

Ocwen responds that it has provided all of the relevant documentation and servicing records for the Mortgage Loans to the Trustee and that the Trustee and his accounting firm produced payment and escrow account information confirming that the Misdirected Payments were made to the Debtors in error.  (Sher Decl. ¶¶ 4-8.)  Because the Trustee does not dispute its ownership

of the Misdirected Payments, Ocwen argues that there is no
material issue of fact.

The Court agrees with Ocwen.  Ocwen has produced all of the
relevant information supporting its entitlement to the Misdirected
Payments and the Trustee does not dispute Ocwen's right to those
funds.  Therefore, there is no remaining issue of material fact.
The Court will grant Ocwen's motion for summary judgment on its
turnover claim.

### 2.   Attorneys' Fees and Costs

The Trustee seeks summary judgment on Ocwen's counterclaim
for attorneys' fees and costs associated with the Debtors' alleged
breach of the SRTA.  Ocwen argues that it has the right to
indemnification for any "actual costs, losses, expenses or damages
(including without limitation, reasonable attorneys' fees)
incurred in connection with or arising out of a material breach"
by the Debtors under section 2.02(a) of the SRTA.

The Trustee argues that pursuant to New York law, the
indemnity provision must be construed narrowly.  In order to
contradict the general and well-established rule that each party
should bear its own attorneys' fees, the Trustee asserts that the
court must find that the intent to waive that general rule is
"unmistakably clear from the language of the promise."  Hooper
Assoc. v. AGS Computers, Inc., 74 N.Y.2d 487, 491-92 (N.Y. 1989).
The Trustee further argues that unless the indemnity clause

15

explicitly refers to claims between the parties to the contract or
supports an inference that one party promised to indemnify another
party to the contract for its attorneys' fees in an action on the
contract, no agreement to indemnify can be found.  Id.  Based on
this rule, the Trustee asserts that the indemnity clause, read
within the context of the entire SRTA, pertains only to suits by
third-parties.  Specifically, the Trustee refers to section 7.04
of the SRTA, which explicitly disclaims liability between the
parties to the contract for "special" damages other than those
incurred in suits by third-parties.  (Trustee Ex. 1 § 7.04.)  The
Trustee argues that attorneys' fees are included in special
damages and therefore the express intention of the parties was not
to indemnify each other for inter-party suits based on the
contract.

Ocwen responds that the plain language of the SRTA is
"sufficiently clear" to support its indemnity claim.  Ocwen argues
that not only is there no specific language in the indemnity
clause limiting it to indemnification for third-party suits, but
that reading the contract as a whole, most of the potential
breaches giving rise to an indemnity action under section 2.02(a)
could only arise in a suit between the parties.  Thus, Ocwen
contends that the Trustee's interpretation renders those
provisions of the SRTA superfluous.  Hooper, 74 N.Y.2d at 492-93
(court reviewed the contract as a whole to determine if the

16

indemnity clause could be fairly considered as pertaining only to third-parties so as to give fair meaning to all provisions of the contract).

Ocwen further argues that the absence of any notice provision in the indemnity clause supports its argument that the clause is intended to indemnify for inter-party, rather than third-party, suits. Finally, Ocwen asserts that the presence of a second indemnity clause (in section 5.10 of the SRTA) supports its interpretation of section 2.02(a) as applying to inter-party suits because section 5.10 expressly states that it is applicable to attorneys' fees "incurred in connection with claims made by a third party." (Trustee Ex. 1 § 5.10.) Ocwen argues, therefore, that when the parties intended to limit indemnity only to suits from third-parties, they did so expressly.

The Court agrees with the <u>Hooper</u> Court that indemnity clauses must be construed strictly under New York law. In the absence of express language specifying the clear and unmistakable intent to contravene the general rule on attorneys' fees, the Court must look at the contract as a whole to ascertain the parties' intention. <u>Hooper</u>, 74 N.Y.2d at 492-93. The language of section 5.10 supports a broad interpretation of section 2.02(a). The parties' express limitation of section 5.10 to indemnity for third-party suits is evidence that the absence of such a limitation in section 2.02(a) was intentional. In addition,

17

several of the representations and warranties made by the Debtors
in the SRTA if breached would give rise to indemnity under section
2.02(a) and could only arise in a suit by Ocwen.  Thus, the Court
concludes that section 2.02(a) applies to inter-party suits.  The
Court will therefore deny the Trustee's Motion for summary
judgment on Ocwen's counterclaim for attorneys' fees and costs.

### 3.   Fraud and Negligent Misrepresentation

The Trustee argues that Ocwen's fraud and negligent
misrepresentation claims against the Debtors must be dismissed
because they are not independent from the Debtors' alleged
performance or non-performance under the contract.  Because Ocwen
asserts no breach of an independent common law duty of the Debtors
separate from their contractual obligation under the SRTA, the
Trustee argues that these claims must be dismissed as
impermissible attempts to convert a contract claim into a tort
claim.

Ocwen responds that it has properly pled its fraud and
negligent misrepresentation claims separately from its breach of
contract claims.  Ocwen argues that it is permitted to assert
separate contract and fraud claims for the Debtors' actions where
it can "demonstrate[] a legal duty separate from the duty to
perform under the contract [or] points to a fraudulent
misrepresentation that is collateral or extraneous to the
contract."  Merrill Lynch & Co. v. Allegheny Energy, Inc., 500

F.3d 171, 183 (2d Cir. 2007).  Ocwen contends that the Debtors had

such a separate common law duty not to provide Ocwen with false

and fraudulent information and that the Debtors' breach of that

duty is the basis for Ocwen's fraud and negligent

misrepresentation claims.  Id. at 184 (stating that a

"misrepresentation of present facts is collateral to the contract

(though it may have induced the plaintiff to sign the contract)

and therefore involves a separate breach of duty.").

The Court finds that Ocwen has sufficiently pled a separate

breach of duty, independent from the Debtors' alleged breach of

its contractual obligations, to support its claims for fraud and

negligent misrepresentation.  Merrill Lynch,  500 F.3d at 183.  In

its counterclaim, Ocwen alleges that the Debtors committed fraud

by knowingly making false representations to Ocwen regarding the

servicing data to induce Ocwen to accept a low fee and to pay an

inflated amount for the Unrecovered Advances.  This is independent

from Ocwen's allegations that the Debtors breached the contract.

Therefore, the Court will deny the Trustee's motion for summary

judgment as to the fraud and misrepresentation counterclaims.

4.    Unjust Enrichment

The Trustee asserts that Ocwen's claim for unjust enrichment

for the portion of the Holdback Ocwen paid to the Trustee must be

dismissed because it is based on an express contract.  (Trustee

Ex. 1 § 2.02(a).)  The Trustee argues that unjust enrichment is a

19

quasi-contract theory of recovery used as a remedy in the absence
of a formal contract; where an express written contract exists,
there can be no recovery under a quasi-contract theory. See MJM
Adv. v. Panasonic Indus. Co., 294 A.D.2d 265, 266 (N.Y. App. Div.
2002) ("[P]laintiffs cannot recover for unjust enrichment while
simultaneously alleging the existence of an express contract
covering the same subject matter."); Kirkwood Kin Corp. v. Dunkin'
Donuts, Inc., No. 94C-03-189-WTQ, 1997 WL 529587, at *17 (Del.
Super. Ct. Jan. 29, 1997).

Ocwen responds that its unjust enrichment claim is separate
from its breach of contract claims. Ocwen argues that it only
agreed to disburse the released funds because it was mistakenly
induced by the Debtors to believe that the remaining Holdback
would be sufficient to cover any invalid Unrecovered Advances. At
the time it released those funds, Ocwen also had no knowledge of
the lengthy and costly litigation the Trustee would pursue against
it. Ocwen argues that had it known of the shortfall of the
Holdback and the present litigation by the Trustee, it would never
have released any funds to the estate. Because the Trustee has no
right to retain the funds, Ocwen contends that they are the proper
subject of an unjust enrichment claim. Further, Ocwen argues that
the funds paid to the Trustee are no longer governed by the SRTA
because Ocwen disbursed those funds. Therefore, it contends that
its quasi-contract unjust enrichment claim to reclaim the released

Holdback is appropriate.

The Court concludes that Ocwen's assertion that it has no contractual right to reclaim the released Holdback provides a sufficient non-contractual basis for its unjust enrichment claim to survive.  Therefore, the Court will deny the Trustee's motion for summary judgment on that claim.


IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant Ocwen's Motion for Partial Summary Judgment and will deny the Trustee's Motion for Partial Summary Judgment.

An appropriate Order is attached.



Dated: August 30, 2012          BY THE COURT:



                                Mary F. Walrath
                                United States Bankruptcy Judge